No. 26-1212

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

D.V.D., *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## EMERGENCY MOTION FOR STAY PENDING APPEAL

———————————

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant
Attorney General*

MATTHEW P. SEAMON
*Acting Assistant Director*

MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of
Justice, Civil Division
Office of Immigration
Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

## INTRODUCTION

The Supreme Court twice stayed the district court's sweeping nationwide, classwide preliminary injunction restraining the Department of Homeland Security's (DHS's) process for "third country removals" to a country other than the one designated in an alien's removal order. *See DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) (*D.V.D. I*); *DHS v. D.V.D.,* 145 S. Ct. 2627, 2629 (2025) (*D.V.D. II*). But after dissolving that preliminary injunction, the district court immediately replaced it with equally sweeping final relief vacating DHS's policy and entering declaratory relief mirroring the earlier injunction. This Court must consider the Supreme Court's prior stay orders when determining whether to stay the district court's final judgment, *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025), and they call for the same relief here.

In trying to evade the prior stays, the district court reasoned that even if the classwide preliminary injunction was barred by 8 U.S.C. §1252(f)(1), classwide vacatur and declaratory relief are not. But that conclusion is doubly misguided. To begin, such relief is equally barred by §1252(f)(1) to the extent it restrains DHS's operation of a covered provision. And the universal vacatur of the DHS Guidance—which is how

DHS "operates" the relevant portions of 8 U.S.C. §1231(b)—along with the declaration purporting to instruct DHS how to operate those portions, undoubtedly does so. In any event, the district court did not explain why it thought §1252(f)(1) must have been the sole basis for the Supreme Court's stay, given that the stay extended even to the individual named Plaintiffs.

Furthermore, all the other jurisdictional and merits arguments that the government made to the Supreme Court apply equally here. The district court's order is irreconcilable with §2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA) and four additional subsections of §1252. These provisions collectively bar district courts from considering *all* challenges to orders of removal (including to their execution), channel claims arising from the removal process into the courts of appeals, and divest district courts of jurisdiction to hear challenges like this one.

Even setting aside the jurisdictional bars, the district court's analysis of the merits is also fatally flawed. It rejected the government's approach to utilizing country-wide assurances as to the treatment of removed aliens, instead insisting that "individualized assurances" are

required. ECF 241 at 65. But as the Supreme Court has made clear, the "Judiciary is not suited to second-guess such determinations," in either substance or scope, given their "foreign policy" ramifications. *Munaf v. Geren*, 553 U.S. 674, 702 (2008).

Moreover, DHS's procedures for removing individuals to third countries fully comply with the statute and due process. Indeed, the district court's analysis is particularly unjustifiable because many class members are aliens who have never been admitted into the United States and therefore do not have due process rights to any additional removal procedures beyond the ones the political branches have provided. *See DHS v. Thuraissigiam*, 591 U.S. 103, 138-40 (2020). The district court's latest order did not meaningfully address the government's arguments on these points except to reiterate the same misguided analysis underlying its preliminary injunction.

The district court added only two new theories supporting relief: (1) a statutory holding that §1231(b)(3) itself requires notice and an opportunity to be heard; and (2) a holding that more process is needed to ensure compliance with §1231(b)'s requirements for selecting the country of removal. But these new theories are even more erroneous than the

ones that previously failed in the Supreme Court. As to the first, §1231(b)(3) cannot be plausibly construed to impose the requirements that the district court invented. As to the second, the government's authority to select a third country specified in §1231(b) turns on foreign-policy determinations vested entirely in its discretion and as to which an individual alien has nothing relevant to contest. And as to *both*, Congress expressly said "[n]othing in [§1231] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party." 8 U.S.C. §1231(h).

The equities likewise favor a stay here, as the Supreme Court already determined by staying the district court's preliminary injunction in this very case. The district court's order creates an unworkable scheme that materially impairs the ability of the government to enforce the immigration laws. Ex. A, Rubio Decl. ¶¶6-8; Ex. B, Schultz Decl. ¶¶5-15. As was the case with the preliminary injunction, the district court's relief would cause massive operational disruption. Removing aliens to third countries often involves tight timing and sensitive diplomatic coordination. The district court's tool for delay gives aliens the ability to thwart this delicate process.

As its sole (entirely non-merits) nod to the Supreme Court's prior stay, the district court stayed its judgment "until the First Circuit rules on" this motion or until March 12, 2026, "whichever occurs first." ECF 242 at 2. The government accordingly requests that this Court grant a stay by March 12, and that if it has not done so, it should grant an administrative stay until it rules on this motion and, if a stay is denied, for an additional 15 days to permit the government to seek orderly relief from the Supreme Court for a third time.

## FACTUAL BACKGROUND

The named Plaintiffs are four aliens with final orders of removal resulting from proceedings in which they were notified that they could be removed to a designated country of removal or, potentially, a third country. ECF 1, Compl. ¶1

On March 23, 2025, Plaintiffs sued on behalf of a putative class, alleging that DHS violates the Immigration and Nationality Act (INA), its regulations, and the Due Process Clause by removing aliens to a third country without first providing them with notice or an opportunity to assert a claim that they fear persecution or torture if removed to that third country.

On March 30, 2025, Defendants issued new guidance governing DHS's removal of final-order aliens to third countries (DHS Guidance). ECF 43-1. This Guidance provides that, before an alien's removal to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured. *Id.* at 1. If the United States has received such assurances, and if the U.S. Department of State (State) believes those assurances to be credible, the alien may be removed without the need for further procedures. *Id.* at 1-2.

If the United States has not received such assurances, or if State judges them not credible, DHS will inform aliens with final orders of removal pursuant to 8 U.S.C. §§1229a, 1231(a)(5), or 1228(b) of their removal to a third country. ECF 43-1 at 2.

If an alien affirmatively states a fear of removal to that third country, U.S. Citizenship and Immigration Services (USCIS) will screen the alien for eligibility for protection under 8 U.S.C. §1231(b)(3) and under CAT. *Id.* at 2. If USCIS determines that the alien would more likely than not be persecuted on a statutorily protected ground or

tortured in the country of removal, DHS will take one of three actions. *Id.* First, if "the alien was not previously in proceedings before the Immigration Court, USCIS will refer the matter to the Immigration Court in the first instance." *Id.* Second, if "the alien was previously in proceedings before the Immigration Court," DHS "may file a motion to reopen with the Immigration Court or Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under [§1231(b)(3)] and CAT for the country of removal." *Id.* Or, third, "ICE may choose to designate another country for removal." *Id.*

On April 18, 2025, the district court certified a class and issued a classwide preliminary injunction. The court certified a class of

> All individuals who have a final order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed.

ECF 64 at 23. The preliminary injunction, as clarified, provided that all removals to a country other than the country or countries designated during immigration proceedings must be preceded by, *inter alia,* written

notice of the country to which ICE seeks to remove the alien and a minimum 10-day waiting period for the alien to raise a fear-based claim. *Id.* at 46-47.

After this Court denied a stay pending appeal, Defendants obtained a stay from the Supreme Court. *D.V.D. I*, 145 S. Ct. 2153. Hours later, despite the stay, the district court purported to enforce its just-stayed injunction as to eight class members—all convicted of heinous crimes— in DHS custody. ECF 176.

Defendants moved to clarify the Supreme Court's stay, and the Supreme Court granted the motion, explaining that the "June 23 order stayed the April 18 preliminary injunction in full" and therefore the district court could not "enforce an injunction that [the] stay rendered unenforceable." *D.V.D. II,* 145 S. Ct. at 2629.

Plaintiffs moved for partial summary judgment, making substantially the same arguments as before. ECF 193. On February 20, 2026, after oral argument in the preliminary injunction appeal, this Court remanded to "facilitate more expeditious appellate review and ultimately final resolution of this case." *D.V.D. v. DHS,* 25-1393 (Feb. 20, 2026). Five days later, the district court granted partial summary

judgment and entered final judgment on those claims by vacating the DHS Guidance and entering nationwide, classwide declaratory relief that largely mirrored its earlier injunction order.

The district court's judgment relies on the same claims and substantially the same grounds as its preliminary injunction. The district court granted the government's request for a stay pending appeal "in narrow part" by staying its judgment "for up to fifteen days" to give this Court an opportunity to grant a stay. Order 3, 77.

## ARGUMENT

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The district court lacked jurisdiction over this case, misunderstood the merits, and entered overbroad relief. The merits and equities favor a stay, just as the Supreme Court already concluded at an earlier stage.

## I.  Defendants Are Likely To Prevail on the Merits.

### A.  The nationwide declaratory judgment and universal vacatur violate 8 U.S.C. §1252(f)(1).

The district court's order contains multiple serious legal errors that justify an immediate stay. Most prominently, the relief issued by the district court is prohibited by 8 U.S.C. §1252(f)(1), which limits lower courts' "jurisdiction or authority to *enjoin or restrain* the operation of" covered provisions," "other than with respect to … an individual alien against whom proceedings … have been initiated." *Id.* (emphasis added). Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1231, the provision at issue here, is one such covered provision. *Aleman Gonzalez*, 596 U.S. at 544-50. The Supreme Court has construed "restrain" broadly to mean to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549.

Although not titled an "injunction," the relief issued by the district court still runs afoul of §1252(f)(1). First, vacatur (or "set-aside" relief) is barred by §1252(f)(1). Section 1252(f)(1) precludes coercive relief that compels or prohibits the Executive's operation of the covered provisions. Although vacatur of an agency decision can be a "less drastic remedy" than an injunction in some respects, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), vacatur still prohibits the agency from giving effect to its guidance. A district court therefore necessarily "restrain[s] the operation of" the covered INA provisions when it vacates agency guidance implementing them. 8 U.S.C. §1252(f)(1).

Second, although this Court has held that §1252(f)(1) does not bar classwide declaratory relief, *Brito v. Garland,* 22 F.4th 240, 251 (1st Cir. 2021), this Court decided *Brito* before the Supreme Court's decision in *Aleman Gonzalez*, which noted that §1252(f)(1)'s use of the word "restrain" could reach orders that "inhibit particular actions" as opposed to merely "stop (or perhaps compel) such acts." 596 U.S. at 549. The district court's declaratory relief at least "inhibits" DHS's actions. The declaratory judgment would allow "every single member of the class" "to "immediately seek an injunction grounded on the authority of the

declaratory judgment"—even before appellate proceedings have concluded. *Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting). That has the "practical effect" of a "class-wide injunction"—and presumably was so intended—which is what §1252(f)(1) was meant to prevent. *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018).

## B. The district court lacked jurisdiction for several other reasons.

In addition to §1252(f)(1), several other jurisdictional bars also foreclose Plaintiffs' challenges here.

### 1. Plaintiffs' claims are barred by §1252(g).

Congress stripped district courts of jurisdiction over "any cause or claim … arising from the decision or action … to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. §1252(g). Plaintiffs' claims arise entirely from actions taken to "execute removal orders," *id.*— namely, to remove them to third countries without the additional process they demand—and thus those claims "fall[] squarely within" the INA's jurisdictional bar, *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 487 (1999) ("*AADC*").

The district court ignored the numerous courts of appeals that have held that claims like Plaintiffs' seeking a stay of removal—even temporarily to assert other claims to relief—are barred by §1252(g). *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *Hamama*, 912 F.3d at 874–77 (concluding that §1252(g) stripped district court of jurisdiction over removal-based claims); *E.F.L. v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021) (upholding jurisdictional bar despite argument that petitioner was challenging DHS's legal authority, not its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (upholding jurisdictional bar because "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (upholding jurisdictional bar against constitutional claims arising from the execution of removal order).

Instead, the district court doubled down on its previous atextual interpretation of §1252(g) to include an exception for claims not challenging DHS's exercise of "discretion" and invented another exception for "policy" challenges. Order 19-20. Of course, §1252(g) contains no such exceptions. Rather, the text reaches "*any* cause or claim."

The district court's reliance on *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023), and *DHS v. Regents of the University of California*, 591 U.S. 1 (2020), to support its atextual exceptions is misplaced. This Court's decision in *Kong* was based on its determination that Kong presented an action for damages arising from his *detention,* not his *removal.* 62 F.4th at 616-17. This Court made clear that if Kong had sought a stay of his removal—as opposed to merely relief from detention—§1252(g) would have applied. *Id.* Conversely, Plaintiffs' claims here are entirely based on DHS's decision to execute their removal orders, and the procedures they seek would interfere with actions "integral to the act of executing a removal order." *Id.*

Likewise, *Regents* provides no support for the district court's invention of a broad exception for "policy challenges." *Regents* concerned

the Deferred Action for Childhood Arrivals (DACA) program—a comprehensive program, for aliens with and without final orders of removal, with various benefits including work authorization, Social Security, and Medicare. 591 U.S. at 19. Because DACA was "more than just a non-enforcement policy," and "access to these types of benefits is an interest Courts are often called upon to protect," the fact that a narrow aspect of the program related to removal orders did not mean the broader APA challenges raised there fell within §1252(g)'s scope. *Id.*

Here, Plaintiffs' challenge, to the extent it can even be characterized as a "policy challenge," directly seeks to regulate DHS's enforcement of removal orders. Indeed, Plaintiffs themselves recognize that they seek to directly prevent their removal, at least temporarily, which is why they only urged an exception to §1252(g) centered around purported non-discretionary duties. The district court erred in concluding that *Regents* permits Plaintiffs' claims, particularly where *AADC* supports the government's view that simply framing a challenge as one to a specific "policy" is insufficient to avoid section 1252(g). 525 U.S. at 472 (addressing eight aliens' challenge to an alleged INS practice of "targeting" a particular political group).

### 2. Plaintiffs' claims are barred by §2242(d) of the Foreign Affairs Reform and Restructuring Act.

Independently, the district court lacked jurisdiction as to Plaintiffs' CAT claims under FARRA §2242(d). That provision implements Article 3 of CAT and provides that "[n]otwithstanding any other provision of law, and except as provided [by regulation], no court shall have jurisdiction to review the regulations adopted to implement this section[.]" FARRA §2242(d). Likewise, FARRA confirms that "nothing in this section shall be construed as providing any court jurisdiction to consider or review *claims* raised under [CAT] or this section, or *any other determination* made with respect to the *application* of [CAT] . . . except as part of the review of a final order of removal." *Id*. (emphasis added); *see also* 8 U.S.C. §1252(a)(4) ("a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of any cause or claim under [CAT].").

Plaintiffs' suit—which challenges DHS's existing procedures for certain CAT claims—both concerns the "application" of CAT and is a "claim raised under [CAT]." Order 50 (finding a due process interest based on CAT). Thus, the district court lacked jurisdiction.

Here, the district court simply declared that "no challenge is made in this case to the FARRA regulations." Order 33. But FARRA bars judicial review of both "claims raised under" CAT *and* "any other determination made with respect to the application of" CAT. §2242(d). When the Executive sets the procedures for complying with CAT, it has made a "determination" with "respect to the application of the policy set forth in" CAT. *Id.* A challenge to that determination runs headlong into FARRA's jurisdictional bar.

### 3. *To the extent Plaintiffs' claims are reviewable at all, they are reviewable only in a petition for review.*

To the extent Plaintiffs' claims, which solely and directly relate to relief that must be sought in removal proceedings, are reviewable at all by this Court, it would be in a petition for review. 8 U.S.C. §§1252(a)(4), (a)(5), (b)(9). Plaintiffs hardly try to disguise their claims so as not to fall within these claim channeling statutes' scope. Rather, they and the district court assert that because Plaintiffs' fear-related claims are effectively unreviewable in the administrative process, particularly prior to removal, these statutes do not apply. Order 22-31 (citing *Aguilar v. USCIS*, 510 F.3d 1, 9-12 (1st Cir. 2007)). But to the extent some class

17

members' claims are effectively unreviewable for any of the district court's stated reasons—which Defendants do not concede—many others in the class receive far more than the minimum notice of third-country removal and can readily reopen their removal proceedings to assert fear claims to a third country. *See* Exs. C-D (citing *Matter of A-S-M-*, 28 I&N Dec. 282 (BIA 2021)). That variance alone renders the classwide relief (indeed, the class definition) improper. And in any event, even if a petition for review is unavailable in some cases, that simply means that Congress determined that no review is available. It is not a license to ignore the plain text of §1252.

## C. Existing Procedures Satisfy Due Process and §1231(b)(3).

Even if the district court had jurisdiction, it erred in holding that Plaintiffs have a constitutional and statutory right to additional procedures, beyond DHS's Guidance, before being removed to a third country. Plaintiffs, who all have final orders of removal, already received the benefit of §1231(b)(3), commonly known as the Withholding Statute, in removal proceedings. Moreover, any liberty interest arising from FARRA or the Withholding Statute is satisfied by the process Plaintiffs

received in their removal proceedings in combination with DHS's Guidance.

### 1.   *The Government will likely succeed on plaintiffs' due process claims.*

Recognizing that some class members are ineligible for withholding of removal, the district court reached Plaintiffs' due process claims and ruled for Plaintiffs. Its analysis was flawed top to bottom. Many class members lack a right to process beyond what Congress has provided, rendering classwide relief impermissible. Additional process would be pointless for class members who are covered by diplomatic assurances the Executive Branch has deemed credible. And even if all of that were wrong, the process provided by the DHS Guidance and removal proceedings satisfies any applicable constitutional requirements.

**a.**   First, additional process would be pointless for many class members—those who will be removed subject to diplomatic assurances that the alien will not be tortured which the Executive Branch has deemed credible—because neither immigration judges nor courts can second-guess those credibility determinations. And that is precisely what Plaintiffs would necessarily seek to do in the additional procedures sought.

As noted, the DHS Guidance provides that an alien may be removed to a "country [that] has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." ECF 43-1. If State finds that country's assurances credible, "the alien may be removed without the need for further procedures." *Id*.

The Constitution requires nothing further. The Supreme Court has already held that when the Executive determines a country will not torture a person on his removal, that is conclusive. *Munaf*, 553 U.S. at 702-03. Indeed, "[u]nder *Munaf* … the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009).

*Munaf* "applies here *a fortiori*: That case involved transfer of American citizens, whereas this case involves transfer of alien detainees with no constitutional or statutory right to enter the United States." *Id*. at 517-18 (Kavanaugh, J., concurring). When the Executive decides, via diplomatic assurances, an alien will not be tortured abroad, courts may not "second-guess [that] assessment.". *Id*. at 517 (citation omitted); *see Munaf*, 553 U.S. at 703 n.6.

The district court disagreed, but it gave no sound reason for doing so. First, it insisted that the Executive Branch must make an "individualized determination" to satisfy due process, citing 8 C.F.R. §208.18(c)(2). Order 63-64. Of course, that has no bearing on what the Constitution might require. Anyway, the court was wrong. While the regulations say that an assurance must be limited to a "specific country," nothing requires an alien-by-alien determination. 8 C.F.R. §208.18(c)(1). The Secretary is free to conclude that "an alien" would not be tortured upon removal, on the ground that *no alien* would be treated that way in light of the strength and reliability of the assurances provided. *Id.*

The district court also relied on *Khouzam v. Attorney General*, 549 F.3d 235, 257 (3d Cir. 2008), but that decision is inapposite because it arose in the context of a petition for review where DHS was seeking to *terminate* an alien's withholding of removal to Egypt, an obviously distinguishing factor in a due process analysis. To the extent the termination context is not a distinguishable factor, courts may not "second-guess" the scope of the Executive's conclusion any more than its substance. *See Kiyemba*, 561 F.3d at 517-18 (Kavanaugh, J., concurring). The decision that a foreign government's categorical assurance against

torture is sufficient to be accepted for all aliens is itself a "foreign policy" judgment the Judiciary "is not suited" to question. *Munaf*, 553 U.S. at 702.

Next, the district court took issue with the assurances being "procedurally insufficient" because they do not allow even "existential challenges" that do not seek to "second-guess" the Executive's judgment. Order 67. But that objection, like the district court's other objections, does not sound in procedural due process at all. It is instead a *substantive* objection that an assurance alone provides insufficient basis for the Executive to find that an alien is not likely to be tortured. The Supreme Court has rejected attempts to "recast in 'procedural due process' terms" what is really a challenge to the "'substantive'" criteria that the government has adopted. *Reno v. Flores*, 507 U.S. 292, 308 (1993) (rejecting similar argument for "individual[ized]" procedure). For good reason: It makes no sense to require the government to provide additional process with respect to potential evidence that is immaterial under the substantive standard the government has adopted. When the Executive is satisfied based on another country's diplomatic assurances that no

alien will be tortured in the receiving country, neither an "individualized determination" nor "existential challenge" serves any rational purpose.

Moreover, the district court's examples of challenges that it claims do not "second guess" the diplomatic assurances, Order 68, are not present here and highlight the fact that Plaintiffs' claims are not suitable for classwide resolution. Any such claims, should they arise, directly relate to the application of CAT to a particular alien and therefore are only appropriate in a petition for review. 8 U.S.C. §1231(a)(4); *Khouzam,* 549 F.3d at 244-45.

**b.** For aliens being removed to a third country not covered by an adequate assurance, the DHS Guidance satisfies due process by providing each alien with notice and providing screening if the alien states that he fears removal there. The district court concluded those procedures were inadequate, on a classwide basis, by erroneously applying the *Mathews* balancing framework.

Previously, the district court ruled that the Constitution requires a "meaningful opportunity" to assert new claims, which it said means at least ten days for an alien to express a fear of return, a "reasonable fear" standard for screening claims, and at least fifteen days to move to reopen

immigration proceedings if he fails to establish a reasonable fear. ECF 118 at 2. The district court did not repeat those specific timing requirements in its final judgment, but did not disavow them. As before, the district court offered no basis in law for that supposedly constitutional rule, nor any sound reason that could reconcile them with the constitutionality of expedited-removal proceedings, where aliens must raise fears of removal rapidly, are often processed in a matter of hours, and receive limited judicial review. *See* 8 U.S.C. §1225(b)(1)(B)(i), (b)(1)(B)(iii)(III); 8 C.F.R. §1003.42(e); *Thuraissigiam*, 591 U.S. at 138-40.

The district court's lengthy due process analysis instead overlooks the substantial process available to aliens and mistakenly skews the balancing inquiry.

The district court improperly discounted the extensive process available to all class members. All have final orders of removal, meaning they received the panoply of procedural safeguards and protections in their prior immigration proceedings, including the opportunity to raise withholding of removal and CAT claims and voice fears as to any potential countries of removal. Moreover, they can move to reopen those

past proceedings at any time if conditions, characteristics, or country designations change. 8 C.F.R §§1003.2(c), 1003.23(b); *see* Ex. C-D; *Matter of A-S-M-*, 28 I&N Dec. 282.

The district court also skewed the balancing inquiry by concluding that the possibility that *some* class members could have "viable CAT claims" dictated process sufficient to guarantee that *all* class members must be able to present *all* CAT claims. But *Mathews* directs balancing the risks of an erroneous deprivation against other interests. The procedures for run-of-the-mill removal proceedings expressly and permissibly do not seek a 100% accuracy rate. 8 C.F.R. §§208.16(c)(2), 208.17(a) (adopting a "more likely than not" standard). And hypothetical outlier class members' claims cannot control classwide relief, because courts may order only what "would satisfy the minimum requirements of due process." *Landon*, 459 U.S. at 34-35; *see Jennings,* 583 U.S. at 318 (directing reconsideration of whether due process claims can be litigated on behalf of a Rule 23(b)(2) class at all, given significant variations material to due-process analysis).

**c.**    Last, the district court erred in holding that many aliens in the class—specifically, unadmitted aliens—have a right to more process than Congress provides.

The Supreme Court has repeatedly held that "the due process rights of an alien seeking initial entry" are no greater than "[w]hatever the procedure[s] authorized by Congress." *Thuraissigiam*, 591 U.S. at 139 citation omitted). For aliens who have never been admitted—a group which undoubtedly includes many members of the certified class—"the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (emphasis added); *accord Thuraissigiam*, 591 U.S. at 138-40.

To this end, the Supreme Court has also long applied the so-called "entry fiction" that all unadmitted aliens "are treated for due process purposes as if stopped at the border." *Id.* at 139 (citation omitted). Indeed, that is so "even [for] those paroled elsewhere in the country for years pending removal." *Id.* The Supreme Court has applied the entry fiction to aliens notwithstanding their claims to having "entered" and developed significant ties to this country. *See, e.g., Kaplan v. Tod*, 267 U.S. 228, 230

(1925) (mentally disabled girl paroled into relatives' care for nine years must be "regarded as stopped at the boundary line"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 214-15 (1953) (alien with 25 years' of lawful presence who sought to reenter enjoyed "no additional rights" beyond those granted by "legislative grace"). Compared to these cases, it follows *a fortiori* that an unlawful entrant who violates our laws and evades detection must, once found, be "treated as if stopped at the border." *Mezei*, 345 U.S. at 215; *see also Thuraissigiam*, 591 U.S. at 140 (holding that aliens who enter the United States illegally "cannot be said to have 'effected an entry'" and remain "on the threshold").

Congress has not provided the procedures sought by Plaintiffs and declared by the district court. Therefore, for those members of the class who have not "effected an entry" and "remain on the threshold," they have received all the due process to which they are entitled. *See id.* The district court disagreed, inventing an exception for claims that do not relate to "admission." Order 55. Contrary to the district court's conclusion, this does not "make[] sense." *Id.*

Most obviously, the district court's dichotomy is irreconcilable with *Thuraissigiam*. Thurassigiam challenged the constitutionality of

27

expedited removal procedures which precluded judicial review of not only his *admission* but also his claim for statutory withholding or CAT protection. *Thuraissigiam,* 591 U.S. at 118 (noting that Thuraissigiam sought an opportunity to apply for asylum, withholding of removal, and CAT protection). On the district court's view, the Supreme Court should have ruled for Thuraissigiam with respect to his withholding and CAT claims (or at least conducted *Mathews* balancing for those claims), even though it denied his claimed entitlement to additional procedures related to admission. Of course, the Supreme Court did no such thing.

The district court did not cite a single case from a court of appeals adopting its "collateral-to-admission" exception to the longstanding entry fiction. Courts of appeals, including this Court, have declined to extend due process beyond what Congress has provided to unadmitted aliens even when the due process claim arises out of the withholding statute or CAT. *See, e.g.*, *Enwonwu v. Gonzales,* 438 F.3d 22, 30 (1st Cir. 2006) (dismissing a substantive due process argument related to the alien's CAT claim because it would disrupt "the constitutional assignment of responsibilities among the three branches of the federal government over matters of immigration"); *Bhaktibhai-Patel v. Garland,* 32 F.4th 180, 199

(2d Cir. 2022) ("Congress's decision to preclude judicial review for withholding-only decisions raises no due process concerns with respect to illegal reentrants … who have failed to effect an entry into the country."); *Rauda,* 55 F.4th at 781 ("Congress has already balanced the amount of process available to petitioners with the executive's prerogative to remove individuals."). Accordingly, the district court erred in determining that the unadmitted aliens in the class have any due process rights beyond what Congress has provided.

### 2. *Section 1231(b) does not require greater process.*

The district court tried two ways to use §1231(b) to bolster its holding that additional process is required. Neither works.

First, the district court ruled, as a matter of constitutional avoidance, that §1231(b)(3) itself statutorily entitles class members to "notice and an opportunity to present claims for statutory withholding of removal." Order 48. But the canon is a "tool for choosing between competing *plausible* interpretations of a statutory text," *Clark v. Martinez*, 543 U.S. 371, 381 (2005), and the district court identified no text that could plausibly impose a mandatory "notice and opportunity" requirement. Section 1231(b)(3) merely says that DHS "may not remove

an alien to a country if [DHS] decides that the alien's life or freedom would be threatened in that country."

To the extent Section 1231(b)(3) can be construed to impose any procedural requirements, they were clearly satisfied by class members' prior immigration proceedings, which included the opportunity to voice fears of removal to their home country or any other country to which they may be returned."[1] Once those proceedings end, class members may move to reopen past proceedings to assert third country fear claims as appropriate. Ex. C-D; *Matter of A-S-M-*, 28 I&N Dec. 282. The DHS Guidance provides these aliens with additional process before third-country removal.

It is especially obvious that the district court was not interpreting the text of §1231(b)(2) given its past stated views of what "notice and opportunity" means in this context. ECF 118 at 2 (a "meaningful opportunity" requires specific procedures, including at least "ten days" to raise a fear-based claim after receiving written notice of a country designation and at least "fifteen days" after a negative fear screening "to

---

[1] U.S. Citizenship & Immig. Servs., Form I-589, Application for Asylum and for Withholding of Removal (2025), https://www.uscis.gov/sites/default/files/document/forms/i-589.pdf.

seek reopening"). As in *Jennings*, these procedures have no basis in the statutory text. The canon of constitutional avoidance is not "a license to graft [additional procedures] onto the text" of the statute. *Jennings*, 583 U.S. at 298.

Second, the district court ruled that aliens have a due process right to challenge the government's compliance with §1231(b)(2)'s ordering of permissible countries of removal. Contrary to the district court's suggestion, §1231(b)(2) does not allow for judicial second-guessing.

Indeed, §1231(b)(2) does not create a liberty interest in the first place: It expressly does not "create any substantive or procedural right or benefit that is legally enforceable by any party against" the government. 8 U.S.C. §1231(h). Nor is there such a thing as a liberty interest in process itself. *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983). And in any event, the §1231(b) selection process is not one in which aliens have a constitutional due-process right to participate.

Section 1231(b)(2) specifies a sequence for determining to which country an alien may be removed—starting with the country designated by the alien himself (if any)—but, if certain exceptions apply, DHS may remove the alien to any third country willing to take him. 8 U.S.C.

§1231(b)(2)(A)-(E). Critically, the exceptions rest not on factual findings that an alien can contest in an adversarial proceeding, but on foreign-policy determinations within the Executive Branch's discretion that are not amenable to judicial second-guessing: *e.g.*, removal to the alien-designated country would be prejudicial to the United States"; or the home country is "not willing to accept" the alien; or it is "inadvisable" to return the alien to other enumerated countries, to name a few. 8 U.S.C. § 1231(b)(2)(C)(iv). Such determinations turn on national security and foreign policy considerations vested in the Executive's exclusive discretion and as to which the alien can raise no claim. *See Munaf,* 553 U.S. at 689. Far from being "reluctant to intrude upon th[is] authority," *id.*, the district court inserted itself into this process by holding that due process requires additional procedures beyond the DHS Guidance.

## II.    The Remaining Factors Support a Stay Pending Appeal.

As the Supreme Court has already necessarily determined, the district court's order preventing the government, on a nationwide basis, from implementing its policies for third-country removals irreparably harms the government and contravenes the public interest. *See D.V.D. I,* 145 S. Ct. 2153; *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts,

C.J., in chambers). The district court's nationwide relief also undermines the Executive Branch's constitutional and statutory authority over immigration and constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013). An injunction that prevents the Executive Branch from carrying out its broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Moreover, "[t]here is always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. With a single order, a single district court has interfered with the execution of an unknown number—perhaps thousands—of pending removal orders and risks irreparably harming the Executive's ability to negotiate the removal of aliens to third countries. *See* Ex. A at ¶¶6-8; Ex. B at ¶¶5-15. Accordingly, the district court's erroneous, overbroad, coercive order irreparably harms the government and threatens the public interest. The Court should stay it immediately.

*　　*　　*

The Supreme Court has twice made clear that the appropriate status quo while these issues are on appeal is to allow DHS to apply its Guidance to execute third-country removals. *D.V.D. I*, 145 S. Ct. 2153; *D.V.D. II,* 145 S. Ct. 2627. There is no meaningful difference between the issues presented in this appeal and the preliminary injunction appeal for purposes of the instant stay motion. This Court should stay the district court's Order for that reason alone—and at the very least grant an administrative stay to permit time for the government to seek Supreme Court review. *See id.; N.I.H. v. American Public Health Assn.,* 145 S. Ct. 2658, 2665 (2025) (Gorsuch, J., concurring).

## CONCLUSION

The Court should grant a stay pending appeal. If the Court denies a stay, it should so rule by March 12, 2026, and it should grant a 15-day stay to permit the government to seek relief from the Supreme Court.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
Deputy Assistant Attorney General

MATTHEW P. SEAMON
*Acting Assistant Director*

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
*Senior Litigation Counsel*
U.S. Department of Justice, Civil

SARAH WELCH
*Counsel to the Assistant*
*Attorney General*

Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin
Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and the Court's order granting Defendants' request to enlarge the word limit by 1,500 words, because the motion contains 6,592 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Mary L. Larakers*
MARY L. LARAKERS

# CERTIFICATE OF SERVICE

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Mary L. Larakers*
Mary L. Larakers
Senior Litigation Counsel

Dated: March 5, 2026