No. 26-1212

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

D.V.D. *et al.*,

Plaintiffs-Appellees,

v.

U.S. Department of Homeland Security *et al.*,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Massachusetts

_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-
APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL**

_____

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
Northwest Immigrant Rights Project
 615 Second Avenue, Suite 400
 Seattle, WA 98104

Anwen Hughes
Human Rights First
75 Broad Street, 31st Floor
New York, NY 10004

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
Olivia Callan
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
trina@immigrationlitigation.org

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

Page

I. INTRODUCTION………………………………………………… 1

II. BACKGROUND………........................................................... 2

III. ARGUMENT…………………………………………………… 2

   A. Plaintiffs Are Likely to Prevail on the Merits……………………... 3

     1. The District Court Properly Ordered Declaratory Relief and
       Vacatur…………………………………………………………… 3

     2. The District Court Had Jurisdiction Over Plaintiffs' Claims……. 5

       a. Section 1252(g) Does Not Bar Review……………………….. 5

       b. Subsections 1252(a)(5) and (b)(9) Do Not Bar Review………. 9

       c. Subsection 1252(a)(4) and FARRA § 2242(d) Are
         Inapposite………………………………………………………... 12

     3. Plaintiffs Will Prevail on their Statutory and Due Process Claims. 15

       a. Section 1231(b) Requires Pre-Removal Notice and
         Opportunity to Present a Withholding Claim…………………. 15

       b. Defendants' Policy Is Unlawful………………………………. 18

         i. *Blanket diplomatic assurances*………………………………. 19

         ii. *The* Mathews *factors*………………………………………. 22

         iii. *Class members share the same rights*………………………. 24

   B. The Remaining Factors Favor Plaintiffs…………………………. 27

IV. CONCLUSION……………………………………………….......... 32

# I. INTRODUCTION

Defendants fail to meet the demanding standard for staying the District Court's partial summary judgment order pending appeal (Mot.). The District Court properly declared that, before removing Plaintiffs and class members to third countries—countries not identified in their removal proceedings—Defendants must first seek removal to countries designated in the removal order and then countries of citizenship; that class members are entitled to meaningful notice and opportunity to raise a country-specific claim against removal; and that Defendants' third-country-removal policy, as embodied in the March 30, 2-25 Memo and July 9, 2025 Guidance, is unlawful. ECF 241 (Order), ECF 242 (Judgment). In vacating the policy, the District Court' Order confirms existing law that Plaintiffs and class members cannot be removed to third countries where they are likely to be persecuted or tortured.

Plaintiffs are likely to prevail on their claims that Defendants' failure to provide these mandatory procedural protections violates the Immigration and Nationality Act, Foreign Affairs Reform Restructuring Act of 1998 (FARRA), Due Process Clause, and implementing regulations. The jurisdiction-limiting provisions on which Defendants rely are inapplicable. Defendants also cannot show substantial injury. Absent the Order, Plaintiffs and class members face persecution, torture, and/or death. The Court should deny the motion.

## II.    BACKGROUND

Plaintiffs' complaint challenges the U.S. Department of Homeland Security's (DHS) failure to provide any meaningful pre-third-country-removal notice and opportunity to raise claims for statutory withholding of removal and CAT protection. ECF 1. The District Court has set forth a detailed procedural history, Order 3-16, which Plaintiffs adopt. Throughout these proceedings, Defendants have conducted third-country removals—including at times in violation of the District Court's orders, Order 7—without first pursuing removal to designated countries and without any meaningful notice or opportunity to raise fear-based claims. The result is that many class members have been removed to third countries where they have no prior ties. Many are being indefinitely detained under armed guard abroad, while others have been subjected to chain refoulement to countries from which they received protection, disappeared, held incommunicado, and/or physically attacked. *See, e.g.*, ECF 232 at 4, 12-14; ECF 233-1 – 233-25.

## III.    ARGUMENT

Defendants bear the burden of showing: (1) a strong likelihood of success on the merits; (2) that they will be irreparably injured absent a stay; (3) that the stay would not substantially injure Plaintiffs and class members and (4) that the public interest favors Defendants. *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145

F.4th 39, 47 (1st Cir. 2025).

A.    **Plaintiffs Are Likely to Prevail on the Merits**

1.    **The District Court Properly Ordered Declaratory Relief and Vacatur.**

Defendants' position is that no court can ever remedy DHS' unlawful third-country policy or in any way rein in agency action—that is, Defendants argued (wrongly) that § 1252(f)(1) not only bars injunctive relief in Case Nos. 25-1631 and 25-1393, but also precludes relief under the Declaratory Judgment Act and the Administrative Procedure Act (APA). Mot. 10-12. The District Court's conclusion that § 1252(f)(1) does not bar these forms of relief, Order 75-77, is well-supported by the APA's plain text, § 1252(f)(1), and caselaw. In fact, the District Court has done precisely what the APA requires: to "hold unlawful and set aside agency action . . . not in accordance with law." 5 U.S.C. § 706(2).

Notably, Defendants did not previously dispute the availability of declaratory relief, Order 75 ("[T]his Court may declare the [March 30 Guidance] unlawful.") (citing ECF 231 at 38 (citation modified)); they only argued in a footnote that declaratory relief must be "properly crafted" not to implicate a provision covered by § 1252(f)(1). ECF 231 at 37 n.7 (citing government brief in *Biden v. Texas*, 597 U.S. 785 (2022)).

The District Court properly found that Defendants waived this claim and also rejected it on the merits, noting that *Biden* did not adopt Defendants'

3

contention that declaratory relief is unavailable to class members. Order 75 n.101;

*see also Nielsen v. Preap*, 586 U.S. 392, 402, (2019) (stating "[w]hether the

[District] [C]ourt had jurisdiction to enter such an injunction [under section

1252(f)(1)] is irrelevant because the District Court had jurisdiction to entertain the

plaintiffs' [class-wide] request for declaratory relief"); *Brito v. Garland,* 22 F.4th

240, 251-52 (1st Cir. 2021) (holding that § 1252(f)(1) does not bar class-wide

declaratory relief).[1]

Similarly, Defendants err in asserting that vacatur of their third-country-

removal policy runs afoul of § 1252(f)(1) and "is coercive." Mot. 11. Section

1252(f)(1)'s plain text references only authority to "enjoin or restrain"—not vacate

or set aside. Thus, it is unsurprising that "all courts that have addressed the

issue"—including after *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)—"have

rejected the government's construction of the statute." *Nat'l TPS All. v. Noem*, 773

F. Supp. 3d 807, 826 (N.D. Cal. 2025); *Texas v. United States*, 40 F.4th 205, 220

(5th Cir. 2022) ("[A] vacatur does nothing but re-establish the status quo absent the

unlawful agency action .... We decline to extend *Aleman Gonzalez* to such judicial

orders ...."); *Immigrant Defs. Law Ctr. v. Noem*, 145 F.4th 972, 989-90 (9th Cir.

---

[1]     Defendants' reliance on *Hamama v. Adducci* to object to class members
using declaratory relief to seek the *individualized* injunctive relief that § 1252(f)(1)
expressly authorizes is mistaken. Mot. 12 (citing 912 F.3d 869, 880 n.8 (6th Cir.
2018)). There, no declaratory relief was ordered.

2025) ("The Fifth Circuit recently rejected the argument that § 1252(f)(1) bars relief under the APA. . . We agree with the Fifth Circuit here."); *Las Americas Immigrant Advocacy Ctr. v. DHS*, 783 F. Supp. 3d 200, 233 (D.D.C. 2025) ("Vacatur is not an injunction"). Finally, in suggesting *Brito* is no longer good law, Mot. 11, Defendants fail to engage with the District Court's detailed analysis of *Brito* or the weight of authority cited above. Order 76 & n.102.

## 2. The District Court Had Jurisdiction Over Plaintiffs' Claims.

### a. Section 1252(g) Does Not Bar Review.

Section 1252(g) covers actions "arising from" three discrete and discretionary actions: decisions or actions "to commence [removal] proceedings, adjudicate cases, or execute removal orders." The District Court held that Plaintiffs do not challenge the exercise of Defendants' prosecutorial discretion to execute their removal orders. Order 19 (citing *D.V.D. v. DHS* (*D.V.D. I*), 778 F. Supp. 3d 355, 376-77 (D. Mass. 2025). Rather, Plaintiffs challenge DHS' unlawful policy and practice: deprivation of their due process and statutory rights to notice and an opportunity to apply for protection from persecution or torture before removal to any newly designated country. The District Court correctly held that these protections are "mandatory" and that "[Plaintiffs'] assertions are collateral to Defendants' decision to execute Plaintiffs' removal, and thus not subject to section 1252(g)'s jurisdictional bar." *Id.* at 377-78; *see also* ECF 1 ¶¶6, 37-52, 102-05,

110, 113-17, 120.

Because these protections are mandatory under the INA, FARRA, implementing regulations, and the Due Process Clause, the District Court correctly held that § 1252(g) does not bar challenges to nondiscretionary decisions or actions. Order 19-20 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482, 485, 487 (1999) (§ 1252(g) is "narrow[]," "applies only to three discrete actions," and was "clearly designed to give some measure of protection to . . . discretionary determinations"); *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) (distinguishing challenges to the "discretionary decision to execute removal" from those to "the government's alleged violations of law in arresting . . . without a relevant warrant and in failing to abide by its own regulations"); *Ibarra-Perez v. United States*, 154 F.4th 989, 997-98 (9th Cir. 2025) (in the context of a third-country removal, § 1252(g) did not bar the noncitizen's claim that "he had a right to meaningful notice and an opportunity to present a fear-based claim before he was removed to [a third country]").

Defendants' attempt to distinguish *Kong* is unavailing, and they fail to even mention *Ibarra-Perez*, which finds that 1252(g) does not apply in the context of a third-country removal. In *Kong*, this Court held that § 1252(g) did not apply to the plaintiff's damages claim predicated on his post-final-removal-order arrest and re-detention, recognizing that "§ 1252(g) was passed with the understanding that

6

challenges to the legality of a petitioner's detention" were collateral to DHS'
decision to execute a removal order and were not covered. 62 F.4th at 615; *see also*
Order 19 n.25. Likewise, here, Plaintiffs' claims are separate from, and collateral
to, DHS's discretionary authority to execute removal orders.[2]

The District Court also properly concluded that "Plaintiffs' claims are policy
challenges" that do not fall within the three discrete discretionary actions covered
by § 1252(g). Order 19-22. It found that "[t]he facts of *AADC*," a selective
prosecution claim based on political affiliation requiring examination of the
prosecutor's motives and decision-making, "bear no resemblance to the policy
challenge at issue here," because no such "subjective inquiry" is required "to
determine the meanings of statutes, regulations, or the Constitution." Order 20-21
(citations omitted).

The District Court properly analogized this case to *DHS v. Regents of the
University of California*. Order 21-22. There, the Supreme Court held that
§ 1252(g)'s "narrow" construction did not bar its review of a policy challenge to
DHS' decision to end the Deferred Action for Childhood Arrivals (DACA)
program, which involved a policy to defer removal. 591 U.S. 1, 19 (2020).
Defendants cling to the Court's characterization of DACA as "more than just [sic]

---

[2]     Defendants make the unremarkable and inapposite assumption that the
*Kong* Court would have found § 1252(g) applied "if Kong had sought a stay of
removal." Mot. 14. Neither Kong nor Plaintiffs here sought a stay of removal.

a non-enforcement policy" because it conveyed benefits to recipients. Mot. 14-15.

But that characterization does not change the fact that "the defining feature of

deferred action is the decision to defer removal." 591 U.S. at 27. That *Regents* held

§ 1252(g) not to apply to a challenge involving prosecutorial discretion further

demonstrates that it cannot apply to this challenge to a policy involving mandatory

protections.

Defendants rely on inapposite, out-of-circuit cases barring review of

attempts to limit DHS' authority to execute a removal order pending some future

*discretionary* action. Mot. 13. In *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022),

*Tazu v. Att'y Gen.*, 975 F.3d 292 (3d Cir. 2020), and *Hamama v. Adducci*, *supra*,

petitioners sought to stay execution of removal orders to await adjudication of

discretionary motions to reopen. *Accord Kong*, 62 F.4th at 618 (distinguishing

*Tazu*). Similarly, in *E.F.L. v. Prim*, 986 F.3d 959 (7th Cir. 2021), and *Camarena v.*

*Dir., ICE*, 988 F.3d 1268 (11th Cir. 2021), petitioners sought stays to await

adjudication of other discretionary applications—a petition under the Violence

Against Women Act and a provisional unlawful-presence waiver, respectively.[3]

These decisions are readily distinguishable and do not undermine *Kong*, let alone

---

[3]     Moreover, *Silva v. United States*, 866 F.3d 938 (8th Cir. 2017), conflicts with
*AADC* and *Kong* and pre-dates the Supreme Court's reaffirmation of *AADC*'s
"narrow construction of § 1252(g)." *Kong*, 62 F.4th at 613 (citing *Jennings v.*
*Rodriguez*, 583 U.S. 281 (2018)).

*AADC*, 525 U.S. at 485, which limited § 1252(g) to its three discrete nondiscretionary actions.

The rest of Defendants' § 1252(g) argument attempts to reframe Plaintiffs' actual claims (seeking enforcement of their statutory, regulatory, and due process rights) as "directly seek[ing] to regulate DHS' enforcement of removal orders." Mot. 15. Defendants argue that "Plaintiffs themselves recognize that they seek to directly prevent their removal, at least temporarily, which is why they only urged an exception to §1252(g) centered around purported non-discretionary duties." *Id*. In fact, Plaintiffs repeatedly have reiterated that they are not seeking to prevent third-country removals but rather to ensure class members' rights are respected. *See, e.g.*, ECF 232 at 19; ECF 57 at 6. This Court should reject Defendants' characterization and conclude that § 1252(g) does not apply.

**b.  Subsections 1252(a)(5) and (b)(9) Do Not Bar Review.**

Defendants fail to address, let alone rebut, the District Court's lengthy analysis explaining why Plaintiffs' claims are unreviewable via petition for review (PFR) to the courts of appeals, and why the channeling provisions of 8 U.S.C. §§ 1252(a)(5) and (b)(9) therefore do not apply. *See* Order 22-31 (explaining that class members in removal proceedings cannot obtain protection from a country "nobody is trying to send them to";  DHS regulations limit protection in removal proceedings to "the proposed country of removal"; changing country conditions

9

make it "impossible" to assess future fears of persecution or torture; "indirect refoulement. . . and ever-shifting diplomatic relations" make future risk assessments unfeasible; Form I-589 asylum/withholding application does not require listing third countries not designated for removal; and neither statutory nor regulatory motions to reopen safeguard the ability to raise a third-country protection claim).

The District Court relied on Supreme Court precedent holding that § 1252(b)(9) does not bar claims that do not seek review of removal orders. *See* Order 30-31 (citing *Regents*, 591 U.S. at 19, and *Jennings*, 583 U.S. at 294); *see also Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (explaining that "[w]e thus read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process," including "claims that cannot effectively be handled through the available administrative process"); *Kong*, 62 F.4th at 613-14.

Defendants argue that "Plaintiffs hardly try to disguise their claims so as not to fall within [§§ 1252(a)(4), (a)(5), and (b)(9)'s] scope" while simultaneously acknowledging that the District Court and Plaintiffs assert that "Plaintiffs' fear-related claims are effectively unreviewable in the administrative process, particularly prior to removal." Mot. 17. Plaintiffs' arguments, *see* ECF 232 at 21-25, and the detailed reasons the District Court provided—reasons Defendants do

not even attempt to rebut—demonstrate that third-country claims fall outside the scope of these provisions.

Although they have never challenged the class definition, Defendants now suggest that classwide relief is "improper" because "many" class members "receive far more than the minimum notice of third-country removal and can readily reopen their removal proceedings to assert fear claims to a third country." Mot. 18 (citing Mot. Exs. C-D). First, Defendants' assertion of "many" is undermined by their citation to only two reopening decisions, especially when the record contains counterexamples of denied motions to reopen. *See infra* Section III.A.3. Moreover, these two isolated decisions do not cure a policy that does not require reopening.

Second, Defendants failed in their prior preliminary injunction (PI) appeal to rebut—or even challenge—the District Court's factual findings that evidence demonstrates motions to reopen "to assert fear of removal to a [nondesignated country] . . . are routinely denied as speculative," that "[f]or most [noncitizens], directly moving to reopen is simply not an option," and its recognition of "substantive and logistical barriers to filing motions to reopen." *See D.V.D. I*, 778 F. Supp. 3d at 372-74 & nn.20, 22; *see also infra* Section III.A.3 (addressing Mot. Exs. C-D).

Third, the record belies Defendants' contention that class members "receive

far more than the minimum notice of third-country removal," Mot. 18: Defendants'

policy authorizes removal with no notice or as little as 6 hours' notice, ECF 43-1,

ECF 190-1; class members sent to South Sudan "received fewer than 16 hours'

notice," ECF 135 at 6; and many others received little to no notice, ECF 233-1 to

233-25. Thus, Defendants' reliance on two outlier motions is undermined by the

record. The jurisdictional bars in §§ 1252(a)(5) and (b)(9) do not apply.

### c.    Section 1252(a)(4) and FARRA § 2242(d) Are Inapposite.

The District Court correctly concluded that neither 8 U.S.C. § 1252(a)(4) nor

§ 2242(d) of FARRA barred its review. Order 31-34. Like § 1252(a)(5) and (b)(9),

these provisions channel review of CAT claims to the courts of appeals in PFRs.

*See, e.g.*, *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020); *Ali v. Garland*, 33 F.4th 47,

54 (1st Cir. 2022). Plaintiffs' claims do not fall within the scope of § 1252(a)(4) or

the FARRA limitation because they arise *after* the conclusion of proceedings.

Indeed, "the entire thrust of this litigation is that Defendants have foreclosed

Plaintiffs' ability to create an administrative record on which CAT claims might be

based." Order 32; *see also id.* at 23-29 (detailing practical and legal impossibility

of raising "hypothetical" or "speculative" third-country claims during removal

proceedings). This holding is consistent with *Jennings* and *Aguilar*.

Moreover, Plaintiffs are not challenging any "cause or claim" arising from

or "under [CAT]," and the APA—not FARRA or CAT—provides their cause of

action. Order 31-32 (addressing 8 U.S.C. § 1252(a)(4)). Defendants' expansive reading of § 1252(a)(4) as applying "to any claim that simply relates to CAT"—is wrong. Order 32 (citing *Aguilar*, 510 F.3d at 10); *cf. Aguilar*, 510 F.3d at 17 (§ 1252 does not bar pattern or practice claims or there would be "a total denial of meaningful judicial review").

Likewise, FARRA § 2242(d) does not bar review. Order 32-24. That provision bars "jurisdiction to review the regulations adopted to implement [FARRA § 2242]." Defendants provide no authority supporting their contention, Mot. 16, that Plaintiffs' claims challenge the regulations or are, themselves, CAT claims. *See Khouzam v. Att'y Gen.*, 549 F.3d 235, 259 n.14 (3d Cir. 2008) ("[s]ince we find no reason to question the validity of the regulations," § 2242(d) does not apply).[4]

FARRA § 2242(d) also channels jurisdiction "to consider or review claims raised under [CAT or FARRA § 2242], or any other determination made with respect to the application of the policy set forth in [FARRA § 2242(a)]," to the courts of appeals under 8 U.S.C. § 1252. While this language channels review of certain CAT claims, the Court cannot "imply an intent to repeal [APA] jurisdiction from silence." *Saint Fort v. Ashcroft*, 329 F.3d 191, 201 (1st Cir. 2003); *see also*

---

[4]     Defendants' attempt to distinguish *Khouzam* by noting that the petitioner there was granted withholding, Mot. 21, ignores that many class members, like Plaintiffs M.M. and O.C.G. also have been granted withholding.

Order 33. Defendants err in averring that Plaintiffs' claims fall under FARRA § 2242(d)'s remaining clause—limiting challenges to "determination[s] made with respect to the application of [CAT]." That language addresses only "judicial review of a determination respecting an application" for CAT, *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 491-92 (1991) (quotation omitted)—for example, an agency determination that a person is ineligible for, and thus cannot raise, a CAT claim, or a determination that a CAT grant is time-limited. It does not cover "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id*. at 492. Rather, such language simply "describ[es] the process of direct review of individual denials." *Id*.; *see also Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 63-64 (1993) (permitting challenges to agency policies notwithstanding a statute limiting judicial review of individual application denials).[5]

### 3. Plaintiffs Will Prevail on their Statutory and Due Process Claims.

#### a. Section 1231(b) Requires Pre-Removal Notice and Opportunity to Present a Withholding Claim.

Defendants fail to rebut the District Court's determination that 8 U.S.C. § 1231(b) requires a "pre-removal decision about a noncitizen's risk of persecution (or worse)," and additionally requires "the noncitizen's involvement, or at least his

---

[5] Defendants also fail to note that FARRA § 2242(d) is inapplicable to withholding claims under § 1231(b)(3).

14

meaningful abstention." Order 48-49 (citing *Califano v. Yamasaki*, 442 U.S. 682, 693, 697 (1979)). Defendants erroneously claim that nothing in § 1231(b)(3) contemplates such protections but fail to address the import of § 1231(b)(3)(C). Mot. 29-30. Under § 1231(b)(1) and (b)(2), removal to *any* country is "subject to" § 1231(b)(3), which prohibits removal to countries where a noncitizen demonstrates their "life or freedom would be threatened" on a protected ground. This is only meaningful if noncitizens have notice and opportunity to present a fear claim. *Meachum v. Fano*, 427 U.S. 215, 226 (1976).

The District Court relied on § 1231(b)(3)(C), which "further sets the terms for how [the § 1231(b)(3)] decision is to be made." Order 48. Specifically, "the *trier of fact* shall determine whether the [noncitizen] has sustained [their] burden of proof, and *shall make credibility determinations*, in the manner described in [8 U.S.C. § 1158(b)(1)(B)(ii)-(iii)]." 8 U.S.C. § 1231(b(3)(C) (emphases added). Subsection 1158(b)(1)(B)(ii) specifies that testimony may be sufficient to sustain the burden of proof where it "is credible, is persuasive, and refers to specific facts," and that the trier of fact may weigh credible testimony along with record evidence and may require corroborating evidence. Subsection (iii) governs how the trier of fact makes credibility determinations, including by considering the noncitizen's "demeanor, candor, or responsiveness." By referencing a "trier of fact," "testimony" and consideration of "demeanor" and "responsiveness," § 1231(b)(3)

requires both a pre-removal hearing and the noncitizen's participation, as the District Court concluded. Order 49. Defendants cannot ignore Congress's specification in § 1231(b)(3)(C) of the process required to implement § 1231(b)(3)(A). *See Teles de Menezes v. Rubio*, 156 F.4th 1, 12 (1st Cir. 2025) ("Our duty, after all, is 'to construe statutes, not isolated provisions.'") (citation omitted); *King v. Burwell*, 576 U.S. 473, 492 (2015) ("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme") (citation omitted).

Moreover, to the extent there is any statutory ambiguity, the District Court's interpretation of § 1231(b)(3) is more than "plausible" and would avoid the "multitude of constitutional problems" that Defendants' reading creates. *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005). Defendants' contention that prior immigration proceedings or a motion to reopen prior proceedings satisfy § 1231(b)(3)'s mandate is baseless; class members had no notice that they needed to apply for protection from yet-to-be-named third countries at those junctures. *See supra* III.A.2.b., *infra* III.B.3.b.ii. Defendants' reference to procedural protections in the now-dissolved PI, Mot. 30-31, also is inapposite to the declaratory and set-aside relief ordered at summary judgment, particularly for withholding claims under § 1231(b)(3), which were not covered by the PI.

The District Court also correctly noted that "an argument could be made that the same constitutional-avoidance logic should apply to" class members who are ineligible for withholding under § 1231(b)(3), because their claims are "predicated either on the right to be removed to the correct country or countries, pursuant to section 1231(b)(2), its regulations, and their orders of removal, or on the right to seek CAT relief." Order 50. But the District Court did not so hold; rather, it conducted a separate constitutional analysis discussed below, so Defendants' two remaining arguments are inapposite:

First, Defendants' argument that § 1231(h) renders any liberty interest in procedures under § 1231(b) unenforceable, Mot. 31, is foreclosed by *Zadvydas v. Davis*, where the Supreme Court held that § 1231(h) merely establishes that § 1231 itself does not create a cause of action; it does not render § 1231 unenforceable where another statute permits a challenge to actions that are "without statutory authority." 533 U.S. 678, 687-88 (2001).

Second, with respect to sequencing countries of removal, Defendants erroneously assert that "the government's authority to select a third country specified in § 1231(b) turns foreign-policy determinations vested entirely in its discretion and as to which an individual [noncitizen] has nothing relevant to contest." Mot. 4. Certainly, the executive has no discretion to violate the law. And more specifically, Defendants cast too wide a net in arguing that *some* of the

exceptions found in § 1231(b)(2)(A)-(E) rely on discretionary foreign policy determinations. Mot. 31-32. Defendants' citation to § 1231(b)(2)(C)(iv), providing for situations when a country is unwilling to accept a noncitizen, "rests on factual findings," not discretion. Indeed, the majority of § 1231(b)(2)(C) provisions do not involve executive discretion.

More fundamentally, Defendants' argument is beside the point, as the District Court Order only declares that DHS must first seek removal to the designated and alternative countries and then to the country or countries of citizenship. Order 80. Notably, Defendants do not attack that aspect of the Order, nor can they, given that DHS must make decisions about removal countries in this specified sequence. *Jama v. ICE*, 543 U.S. 335, 341 (2005).

### b. Defendants' Policy Is Unlawful.

The INA, FARRA, and implementing regulations all require individualized pre-removal notice and a meaningful opportunity to apply for protection from removal to a third country. *See* 8 U.S.C. § 1231; FARRA § 2242(a); 28 C.F.R. § 200.1; 8 C.F.R. §§ 1208.16, 1208.17, 1208.18; *see also Goldberg v. Kelly*, 397 U.S. 254, 267 (1970); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *A.A.R.P. v. Trump*, 605 U.S. 91, 94-95 (2025).[6] Absent the District Court's Order, these rights

---

[6] The District Court is not alone. In the PI appeal, Plaintiffs cited some 40 district court decisions finding Defendants' third-country policy unlawful, or likely

would continue to be meaningless because DHS' third-country policy "mitigates no risk of a person's being unlawfully removed [to a non-designated country]" or outside § 1231(b)(2)'s statutory sequencing, and "extinguishes valid challenges to third-country removal by effecting removal before those challenges can be raised." Order 62, 72.

### i. *Blanket diplomatic assurances.*

Defendants' policy provides no process whatsoever to individuals whom DHS intends to remove to a country from which the United States has received blanket diplomatic assurances. ECF 43-1. The District Court correctly distinguished the cases on which Defendants rely to assert that courts cannot "second-guess" diplomatic assurances, Mot. 21-22. *See* Order 69-70 (distinguishing the "unusual and inapposite facts" of *Munaf v. Geren*, 553 U.S. 674 (2008), and *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009)).

*Munaf* involved the transfer of two criminal defendants within Iraq for prosecution, reasoning that "[t]hose who commit crimes within a sovereign's territory may be transferred to that sovereign's government for prosecution." 553

---

unlawful, and/or ordering protections prior to third-country removal. *See* Case Nos. 25-1393, 25-1631, Plaintiffs' Answering Brief at 43 n.17, 49-52 (Dec. 12, 2025); Fed. R. App. P. 28(j) Letter (Jan. 30, 2026). This number continues to increase for those fortunate enough to have counsel. *See*, *e.g.*, Order, *Benitez Pineda v. Noem*, No. 1:25-cv-02337-AJT-WBP (E.D. Va. Mar. 2, 2026); *Sophanthavong v. Bondi*, No. C25-2405-KKE, 2026 WL 638363 (W.D. Wash. Mar. 6, 2026).

U.S. at 700.[7] *Kiyemba* addressed *individualized* diplomatic assurances after an assessment of "whether a particular country is likely to torture a particular detainee." 561 F.3d at 514; *cf. id.* at 519 (Kavanaugh, J., concurring) ("more fundamentally, this is a case involving transfer of wartime [noncitizen] detainees"). Neither decision contemplates the use of categorical diplomatic assurances in immigration cases.

The District Court also correctly relied on the CAT regulation to find blanket diplomatic assurances unlawful, Order 63-65, contrary to Defendants' contention otherwise, Mot. 22. The regulation, which provides for individualized diplomatic assurances to render a person ineligible for CAT in "rare" circumstances, addresses how "*an* alien" would be treated if "*the* alien were removed to" a given country, 8 C.F.R. §§ 208.18(c)(1), 1208.18(c)(1) (emphasis added); *see also,* Order 71-72 nn.95-98; ECF 50-9 at 7. It does *not* authorize individualized assurances on withholding of removal *ever*; it addresses only CAT claims.

Defendants have not provided any basis for, or even attempted to defend, using diplomatic assurances for withholding. And with respect to CAT, Defendants fail to explain how their policy does not violate the instruction that "the Attorney

---

[7]     *Munaf* expressly declined to address FARRA because the petitioner did not raise a FARRA claim and the issue had not been fully presented. 553 U.S. at 703 & n.6; Order 69-70.

General shall determine, in consultation with the Secretary of State, whether the assurances are sufficiently reliable." 8 C.F.R. § 1208.18(c)(2). The regulations do not permit the Attorney General to abdicate responsibility to evaluate diplomatic assurances forwarded by the Secretary of State.

Likewise, the District Court appropriately relied on the Third Circuit's analysis of the process and reliability of an *individualized* diplomatic assurance in *Khouzam*. Order 65-68. The Third Circuit's review refutes Defendants' claim that challenges to diplomatic assurances on CAT in removal proceedings are akin to the determination at issue in *Munaf* that must be left to the political branches. Mot. 21-22. Defendants do not explain how the fact that *Khouzam* "arose in the context of a petition for review," Mot. 21, undermines that case's *merits* analysis directly supporting Plaintiffs' claims here, 549 F.3d at 257-58.

Finally, the District Court correctly determined that Defendants' policy precludes noncitizens from "clarify[ing]" even the existence of assurances, let alone whether they comply with CAT Article 3. Order 67-67. Defendants do not even publish which countries have provided categorical diplomatic assurances. This is not recasting a procedural due process claim into a substantive one. Mot. 22; rather, the record supports the critical nature of such challenges. *See* Order 79 (addressing noncompliant assurances from Cameroon); ECF 44 (same, from Ghana); ECF 240 (discussing S. Comm. on Foreign Relations, Minority Report, *At*

*What Cost? Inside the Trump Administration's Secret Deportation Deals* 1, 19, 27-28 (Feb. 13, 2026)).

###        ii.        *The* Mathews *factors.*

Defendants wrongly claim that the District Court failed to conduct the required due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and that, even absent diplomatic assurances, their policy provides sufficient process. Mot. 23-25. Notably, Defendants do not defend their policy's relevant particulars. Instead, they aver that, because the standard for obtaining CAT protection is high, class members are not entitled to a meaningful opportunity to present a CAT claim. Mot. 25. But "[t]his is a breathtaking argument" that turns due process analysis on its head. Order 72-73. Individuals are not entitled to procedural protections because they will ultimately prevail on substantive claims—instead, procedural protections provide the opportunity to make such claims. *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 894 (1st Cir. 2010) ("The right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." (quotation omitted)).

Defendants also argue that other procedures provide sufficient process. Mot. 24-25. But neither prior removal proceedings nor motions to reopen do so. *See* Order 23-30, 60-61. Contrary to Defendants' unsupported assertion, Mot. 24-25, class members cannot raise fear-based claims to all potential countries of removal

(understood to include every country), because "an applicant is not entitled to have the agency adjudicate claims of relief that relate to a country that nobody is trying to send them to." *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) (quotation omitted); *see also* 8 C.F.R. §§ 1208.16(b), (c) (describing procedures for seeking relief from removal to the "proposed country of removal").

Moreover, such proceedings would necessarily not address claims based upon changed personal or country conditions. The statutory right to seek reopening is limited to individuals in proceedings under 8 U.S.C. § 1229a, is subject to time and number deadlines, and does not afford an automatic stay; by regulation, motions may be denied even if an individual establishes a prima facie case for relief. *See* 8 U.S.C. §§ 1229a(c)(7)(A), (c)(7)(C)(i); 8 C.F.R. §§ 1003.2(a), (f), 1003.23(b)(1)(v), (3). Individuals who do not know the country to which they may be removed are unlikely to demonstrate the requisite prima facie eligibility. Order 28-30.

Defendants counter the District Court's well-reasoned analysis with citations to two unpublished decisions in which immigration judges (IJ) granted reopening for third-country removal claims *after* DHS identified the third country. Mot. Exs. C & D. But the record establishes that class members cannot effectively or practically file motions without meaningful advance notice of the intended third-country, ECF 64 at 14 n.20; ECF 8-11 & Atts., ECF 59-9–59-12 & Att., ECF 59-

13 & Att., and that IJs have denied similar motions without considering the merits, *see* Exs. A-E.

The regulations permit a motion to reopen at any time based on changed country conditions occurring *only* in "the country of nationality or the country to which removal has been ordered," 8 C.F.R. §§ 1003.2(c)(3)(ii), 1003.23(b)(4)(i). And *Matter of A-S-M-* does not involve a motion to reopen, Mot. 25—rather, it addresses whether an IJ may adjudicate a withholding claim to a country to which "DHS stated that it intended to remove [Mr. A-S-M-]" and of which Mr. A-S-M- was a citizen. 28 I.&N. Dec. 282, 285-86 (BIA 2021).

Finally, Defendants fault the District Court for neither providing explanation nor "disavow[ing]" the specific procedural protections set forth in the PI. Mot. 23-24. But the PI is not at issue in this appeal; moreover, the District Court provided copious justification for those protections in the relevant decisions. *See* ECF 64 at 46-47; ECF 118.

### iii. *Class members share the same rights.*

The Court must reject Defendants' assertion that Plaintiffs' due process claims fail because a subset of the class, by virtue of not having been initially "admitted" into the United States, has only the due process rights that Congress provided. *See* Mot. 26-29. This argument ignores the fact that: (1) Plaintiffs' claims are based on their *statutory* entitlement to protection from removal to a

country where they would face persecution or torture; and (2) Plaintiffs are entitled to notice and an opportunity to be heard as the Supreme Court has recognized.

First, Plaintiffs' claims are based on existing statutes, regulations, and agency procedures, including first pursuing removal to the designated country, Order 42-47, and prohibiting removal to a country where their "life or freedom would be threatened" on account of certain protected grounds, Order 48-50, or where they are likely to be tortured, Order 47. Consequently, "[p]rocedural due process imposes constraints on governmental decisions" that would "deprive" Plaintiffs of these rights, *Mathews*, 424 U.S. at 332, which is "a matter of statutory entitlement for persons qualified to receive them," *Goldberg*, 397 U.S. at 262; *Meachum*, 427 U.S. at 226; *Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390, 1396 (1st Cir. 1991).

All class members are entitled to due process with respect to their claims for protection. *A.A.R.P.*, 605 U.S. at 94-95; *J.G.G.*, 604 U.S. at 673; *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Critically, while due process is flexible and "may vary depending upon status and circumstance," *Zadvydas*, 533 U.S. at 694, Plaintiffs here seek the most basic of due process protections: meaningful notice and an opportunity to be heard. *See, e.g.*, *Mathews*,

424 U.S. at 333; *Mullane*, 339 U.S. at 313-14; *Gaffney v. Silk*, 488 F.2d 1248, 1250 (1st Cir. 1973).

Defendants wrongly conflate noncitizens "seeking initial entry" with those who have entered but "have never been admitted." Mot. 26 (quotation marks omitted). But, as the Supreme Court explained in *Zadvydas*, "once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary or permanent." 533 U.S. at 693. In contrast, the case on which Defendants primarily rely, *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), involved the due process rights of a person seeking admission *into* the country who was apprehended immediately after physically entering the United States. *See* Order 53-55. In reaching its due process conclusion, the Supreme Court held that a noncitizen "in [petitioner's] position"—a noncitizen apprehended shortly after entering unlawfully—"has only those rights *regarding admission* that Congress has provided by statute." 591 U.S. at 140 (emphasis added); *see also Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892) (addressing Congress's power "to forbid the entrance of foreigners" or regulate admission); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 216 (1953)

(concerning noncitizens' "right to enter").[8] Here, Plaintiffs are not "seeking entry" or "admission," nor do they purport to invoke any such rights.

The applicable case is *Zadvydas*, in which the Supreme Court "held that the Due Process Clause protects [a noncitizen] subject to a final order of deportation," which includes all class members here. 533 U.S. at 693-94 (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *id.* at 695 (cases challenging procedures concerning noncitizens with final orders did not concern "the political branches' authority to control entry into the United States").

## B.     The Remaining Factors Favor Plaintiffs.

Defendants do not face irreparable harm absent a stay. Instead, the public interest and risk of substantial injury tip sharply in Plaintiffs' favor. The Order does not stop Defendants from executing removals to third countries—it declares only that DHS must follow the statutory sequence and first provide meaningful pre-removal notice and opportunity to apply for protection, and setting aside DHS'

---

[8]     Defendants' other citations, Mot. 26-29, are inapplicable and/or out-of-circuit. *Kaplan v. Tod*, 267 U.S. 228 (1925), was "focused primarily on issues of statutory construction," not constitutional analysis. *Rincon v. Hyde*, No. 25-12633-BEM, -- F. Supp. 3d --, 2025 WL 3122784, at *5 n.13 (D. Mass. Nov. 7, 2025); Order 55-56 & n.78. *Enwonwu v. Gonzales* involved a noncitizen who had entered the country, dismissed only a *substantive* due process claim, and remanded to consider a CAT claim. 438 F.3d 22, 24, 29-31, 35 (1st Cir. 2006). *Rauda* declined to hear a habeas claim given the availability of a PFR. 55 F.4th at 780. And *Bhaktibhai-Patel v. Garland,* 32 F.4th 180 (2d Cir. 2022), was wrongly decided and has been partially abrogated by *Riley v. Bondi*, 606 U.S. 259 (2025).

unlawful policy.

The Supreme Court's earlier order staying the PI did not explain the basis for its stay, let alone hold that vacating Defendants' third-country removal policy "harms the government and contravenes the public interest." Mot. 32. The Supreme Court has affirmed rulings after staying them, *see e.g.*, *Allen v. Milligan*, 599 U.S. 1, 10 (2023), and reversed rulings it declined to stay, *see, e.g.*, *United States v. Texas*, 143 S. Ct. 51 (2022) (denying stay of district court order halting DHS Secretary's enforcement priorities guidance, an order later overturned by 599 U.S. 670 (2023)). Moreover, the legal issues and factual record now.

Defendants argue that the Order prevents them from "implementing [their] policies." Mot. 32 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But the Order requires only that DHS act *in accordance with* relevant statutes, regulations, and the Due Process Clause. Nor is the Order an "unwarranted judicial interference in the conduct of foreign policy." Mot. 33 (quoting *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013)). Unlike *Kiobel*, which involved claims challenging conduct occurring abroad, 569 U.S. at 112-13, the Order declares statutory and due process rights and protections to individuals within the United States. Similarly, the Order is not "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." Mot. 33 (citation omitted). Rather, the District Court is

appropriately fulfilling its role as a check on the Executive. *See, e.g.*, *Hernandez-Lara v. Lyons*, 10 F.4th 19, 43 (1st Cir. 2021) ("[E]ven the most sensitive and critical exercises of power by the political branches can be constrained by the rights of the individual. . . . And it is precisely the role of the judiciary to define those constraints.").

Defendants' irreparable-injury claims stem from their failure to provide protections that the law requires—and which Defendants previously have recognized and courts have confirmed. Order 2 (citing sources). Defendants assert that they cannot comply with the Order because they "typically receives final confirmation from the receiving third-country" of its willingness to accept a non-citizen "only a short time before the intended removal flight." Mot. Ex. B ¶14. But nothing in the law or the Order prevents ICE from providing notice and an opportunity to seek protection *in advance* of making those arrangements.

As for the claimed diplomatic fallout, as Defendants acknowledge, "the Order itself would not set aside any resulting [third-country-removal] arrangements or mean that the United States cannot send" class members to third countries. Mot. Ex. A ¶6. If "allowing the Order to take effect will cause our foreign partners to question the legitimacy of our policies," *id.*, as a nation of laws, we and our foreign partners should respect the greater legitimacy of setting aside unlawful policies.

# IV.    CONCLUSION

The Court should deny Defendants' motion.

Respectfully submitted,


*s/ Trina Realmuto*

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
Olivia Callan
NATIONAL IMMIGRATION
    LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT
    RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

Anwen Hughes
HUMAN RIGHTS FIRST
121 W. 36th St., PMB 520
New York, NY 10018
(212) 845-5244
HughesA@humanrightsfirst.org

*Attorneys for Plaintiffs-Appellants and Class Members*

# CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Plaintiffs' motion for a commensurate enlargement of the word limit by 1,500 words (granted March 4, 2026), because it contains 6,669 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the type-face requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word for Microsoft 365 in proportionally spaced 14-point Times New Roman font.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance

# CERTIFICATE OF SERVICE

I, Trina Realmuto, hereby certify that on March 9, 2026, I caused this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the Court's appellate CM/ECF system. Defendants-Appellants' counsel are registered CM/ECF users and will be served via the Notice of Docket Activity through this Court's CM/ECF system.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance