No. 26-1212

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

D.V.D., *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————

## DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY
## MOTION FOR STAY PENDING APPEAL

———————————

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant
Attorney General*

MATTHEW P. SEAMON
*Acting Assistant Director*

MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of
Justice, Civil Division
Office of Immigration
Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

# INTRODUCTION

The district court's universal vacatur and classwide declaratory judgment are based on essentially the same reasoning the court adopted in issuing a preliminary injunction, which the Supreme Court stayed. Plaintiffs' 29-page opposition does not even mention that stay until page 28; and when it does, it incorrectly claims that the stay has no relevance because the Court "did not explain the basis" for it. But by granting a stay, the Court *necessarily* found that the government satisfied *all* of the required elements, including a likelihood of success on the merits, irreparable harm, and favorable equities. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). Those are the same elements required for a stay here. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And the Court has made clear that "[a]lthough [its] interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). This is not just a "like case"; it is the same case. As in *Noem v. National TPS Alliance*, 146 S. Ct. 23 (2025), "[a]lthough the posture of the case has changed, the parties' legal arguments and relative harms generally have

not. The same result"—a stay pending appeal—"is appropriate here." *Id.* at 24.

## ARGUMENT

The district court lacked jurisdiction over this case, misunderstood the merits, and entered overbroad relief. The merits and equities favor a stay, just as the Supreme Court already concluded at an earlier stage. Plaintiffs' arguments to the contrary are repetitive of their arguments made, and rejected, by the Supreme Court.

## I. Defendants Are Likely To Prevail on the Merits.

### A. The nationwide declaratory judgment and universal vacatur violate 8 U.S.C. §1252(f)(1).

Plaintiffs assert (at 12) that because §1252(f)(1) only includes the words "enjoin or restrain," and not "vacate or set aside," the relief ordered below complies with §1252(f)(1). But Congress need not list every conceivable action verb to make a jurisdictional bar effective. Moreover, the Supreme Court has already explained that courts "enjoin or restrain" the operation of a covered statute when they "require officials to take actions that (in the Government's view) are not required by [the statute] and to refrain from actions that (again in the Government's view) are allowed by [the statute]." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544

(2022). Here, the vacatur clearly directs officials to "refrain" from following the DHS Guidance, which is how DHS operates §1231(b) and is (in the government's view) allowed by the statute.

Similarly, the declaration that class members have the right to meaningful notice and opportunity to raise a country-specific claim against removal before removal to any third country is clearly intended to "require" officials to take actions that (in the government's view) are not required by the statute. Because the district court's relief "thus interfere[s] with the Government's efforts to operate §1231[b]," *id.*, it violates §1252(f)(1)'s prohibition on non-individualized relief. And Plaintiffs' contention that the government failed to preserve this argument fails because it is a jurisdictional limit on relief. *Id.* at 548.

## B. The district court lacked jurisdiction for several other reasons.

Plaintiffs baldly assert (at 3) that the district court did "precisely what the APA requires: to 'hold unlawful and set aside agency action . . . not in accordance with law.'" But the APA does not permit review where other "statutes preclude judicial review." 5 U.S.C. §701, and several provisions foreclose Plaintiffs' challenges.

### 1. Plaintiffs' claims are barred by §1252(g).

Section 1252(g) strips district courts of jurisdiction over "any cause or claim … arising from the decision or action" to "execute removal orders." That describes Plaintiffs' claims. Plaintiffs say (at 5-9) §1252(g) is somehow limited to "discretionary decisions" only—and does not apply here because the government does not have the discretion to break the law. But §1252(g)'s text is not limited to discretionary actions; and anyway Plaintiffs' argument would make the bar "illusory," *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021), with jurisdiction "dependent on the merits of the claim," *Aleman Gonzalez*, 596 U.S. at 554.

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 487 (1999) ("*AADC*"), is no support for Plaintiffs. Opp. 7. That decision held that §1252(g) applies to three discrete acts, including executing a removal order. It never suggested that legal challenges to those actions were reviewable—in fact, the alien plaintiff in *AADC* raised a constitutional challenge just as Plaintiffs do here. *Id.* at 479. Congress has shielded only discretionary judgments in other provisions, but it chose broader language here. *See* 8 U.S.C. §1252(a)(2)(B)(ii); *id.* §1226(e).

Plaintiffs offer no persuasive distinction of other circuits' decisions. Opp. 8-9. The aliens in those cases challenged "mandatory" obligations where each claim arose from what each described as mandatory obligations created by statute, regulation, and the Constitution prior to DHS's actions to remove them. And the plaintiffs in *Rauda v. Jennings* and *Hamama v. Adducci* sought "future discretionary action"—reopening of their proceedings—just like Plaintiffs do here. 55 F.4th 773 (9th Cir. 2022); 912 F.3d 869 (6th Cir. 2018).

Plaintiffs' defense of the district court's second atextual exception (at 15) to §1252(g) for "policy challenges" based on *DHS v. Regents of the University of California*, 591 U.S. 1 (2020), fares no better. The distinction between a challenge under the APA for the rescission of a DHS-created benefit program (DACA) and DHS's decision here to execute removal orders under §1231(b) speaks for itself. *Regents* did not silently create a "policy challenge" exception, just as *AADC* did not create a "non-discretionary" exception. *Regents,* 591 U.S. at 19.

Plaintiffs' remaining arguments are likewise meritless. First, *Ibarra-Perez v. United States,* 154 F.4th 989 (9th Cir. 2025), concerns the Federal Torts Claims Act, conflicts with the Ninth Circuit's prior decision

in *Rauda,* and is not binding on this Court. Second, unlike the detention claims in *Kong*, Plaintiffs directly seek to *prevent their removal* absent compliance with extensive pre-removal process. Opp. 6-7; *see, e.g.*, ECF 7 at 14 ("Notice is only meaningful if it is presented sufficiently in advance to stop deportation, is in a language the person understands, and *stays removal* for a sufficient time to permit the filing of the motion.") (emphasis added); *id.* at 20 (seeking to "enjoin[] Defendants from effecting the removal of Plaintiffs").[1]

## 2. *Plaintiffs' claims are barred by §2242(d) of the Foreign Affairs Reform and Restructuring Act.*

Independently, the district court lacked jurisdiction as to Plaintiffs' CAT claims under FARRA §2242(d). Plaintiffs rely on *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991), to argue that §2242(d) only channels judicial review of *individual* CAT claims, not challenges to CAT *policies or practices*. Opp. 14. But *McNary* involved a different statute that channeled judicial review of "*a determination* respecting *an application* for adjustment of status." 498 U.S. at 491 (emphasis added). *McNary* concluded that the statute "describes a single act rather than a group of

---

[1] Plaintiffs therefore contradict themselves when they say (at n.2) they have not "sought a stay of removal."

decisions or a practice or procedure employed in making decisions," so it only channeled review of "an individual application" for protection. *Id.* at 492.

But §2242(d) uses different language. It does not apply solely to *a determination* respecting *an application* for protection under CAT. Instead, it broadly limits judicial review of both "claims raised under" CAT and "any other determination made with respect to *the application* of" the United States' "policy not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." FARRA §2242(a), (d).

### 3. Plaintiffs' claims are only reviewable, if at all, in a petition for review.

Section 1252(a)(4), (a)(5), and (b)(9) collectively demonstrate Plaintiffs' claims are only reviewable in a petition for review (PFR). If some class members' claims are not "effectively reviewable" in a PFR, that reflects (1) Congress' decision that those claims not be reviewable at all or (2) an issue with the class definition. Mot. 18. Defendants need not address the district court's extensive reasons for finding lack of effective judicial review because they do not bear on Defendants' argument. Some

class members claims may evade judicial review for any number of reasons, but because their challenges still arise from the actions specified in these statutes, they are not reviewable in the district court. To the extent this Court's decision in *Aguilar v. ICE*, 510 F.3d 1, 9-12 (1st Cir. 2007), conditions review on the availability of a PFR, that decision is contrary to the statutes' plain text.

Moreover, it is undisputed that some class members *can* obtain effective review, which renders the class overbroad. Mot. Ex. A-B. Plaintiffs' retort to this is to erroneously claim Defendants "have never challenged the class definition." But Defendants both opposed class certification (ECF No. 52) and made this point before this Court in their previous appeal.

Plaintiffs also point to immigration court decisions denying motions to reopen for class members. Opp. Ex. A-C. But those courts denied the motions in part due to this litigation, suggesting that Plaintiffs' own litigation decisions and overbroad class definition drove those decisions. *Id.*

## C. Existing Procedures Satisfy Due Process and §1231(b)(3).

Plaintiffs' analysis on the merits repeats the district court's errors, which Defendants have already addressed, and fails in its defense of those errors.

The DHS Guidance comports with the Constitution. First, as Defendants explained (at 19-23), diplomatic assurances alone are sufficient to satisfy any due process interest where they apply. Plaintiffs argue that blanket diplomatic assurances are impermissible because CAT regulations refer to determinations about "*an* alien," in the singular. Opp. 20. But while decisions about CAT protection are ultimately about an individual alien, nothing compels that every component of that determination be made on an individually tailored, case-specific basis. By the same token, nothing in the CAT regulations prevents the government from concluding that an *individual* alien will not be tortured at the behest of a particular country, based on the view that *no alien* will be tortured at the behest of that country given the strength and reliability of its assurances.

Put another way, even when a law "requires individualized determinations," that requirement does not displace decisionmakers'

"authority to rely on rulemaking" (or, here, credible blanket assurances) "to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991); *see also*, *e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Plaintiffs otherwise present no substantial argument not already addressed in Defendants' motion.

Second, for those aliens not covered by diplomatic assurances deemed credible, the DHS Guidance provides sufficient process. Plaintiffs (like the district court) ignore the relevance to the risk of erroneous deprivations of the exacting standard for CAT protection and the relatively low likelihood that the class as a whole will meet it. Moreover, some class members are receiving the exact notice and opportunity plaintiffs have sought under the current procedures (Mot. Ex. A-B), so at a minimum, classwide relief is particularly inappropriate.

Finally, many members of the class are entitled only to those due process rights conferred by Congress. Mot. 26-29. Plaintiffs fail to meaningfully address Defendants' arguments regarding the district court's creation of an exception for rights purportedly unrelated to admission and merely repeat the district court's erroneous analysis. For

this reason, Defendants are likely to prevail in their appeal on this issue tied to the proper scope of any relief, rendering them entitled to a stay of the district court's order for this reason alone.

Plaintiffs likewise do not succeed in resuscitating the district court's attempt to ground its holding in § 1231(b).

Regarding the district court's application of constitutional avoidance to §1231(b)(3), Plaintiffs, like the district court, fail to identify any language that requires the specific notice and opportunity they seek. Section 1231(b)(2) is "subject to (b)(3)" because it must be to give effect to any withholding protection issued during an alien's proceedings. It does not entitle an alien to the notice and opportunity ordered by the district court nor to the withholding statute's implementing regulations, which are clearly designed to apply in the context of immigration proceedings. Plaintiffs' elaborate reading of the statute would seem to require DHS to place aliens in new immigration proceedings, designate a new country of removal, and permit potentially years of additional administrative proceedings and judicial review *prior* to third-country removal. This is contrary to the clear purpose of §1231(b)(2), which is to permit DHS to remove aliens to alternative countries *not* identified on their removal

orders. Plaintiffs' interpretation of the statute is thus not just atextual but *counter*-textual.

Under §1231(h), §1231(b)(2) cannot give rise to an enforceable right to challenge the government's compliance with §1231(b)(2)'s ordering of permissible countries of removal, either. Plaintiffs incorrectly claim (at 17) that *Zadvydas v. Davis*, 533 U.S. 678 (2001) rejected the government's reading of §1231(h). *Zadvydas* held only that §1231(h) permitted habeas petitioners to argue that §1231 did not *authorize* their detention; that is different from arguing that §1231 creates a *right*, as Plaintiffs do.

Their other rejoinder—that the grounds in §1231(b)(2)(C) somehow do not implicate foreign policy judgments—is unexplained and baseless. Opp. 18. The only ground Plaintiffs point out in particular is whether the foreign country is willing to accept return of its national, *id.*, but they give no reason why a court can or should be able to obtain access to diplomatic communications between countries regarding return of an alien or second-guess the Executive Branch's interpretation of such contacts between nations. *See* Mot. 32.

Last, Plaintiffs briefly suggest that the Guidance violates FARRA and "implementing regulations." Opp. 18. But the district court holding regarding FARRA was under the Due Process Clause, not pursuant to FARRA or its regulations themselves. This passing reference does not enhance Plaintiffs' likelihood of success.

## II.  The Remaining Factors Support a Stay Pending Appeal.

The Supreme Court has twice made clear that the appropriate status quo while these issues are on appeal is to allow DHS to apply its Guidance to execute third-country removals. The district court's order preventing the government, on a nationwide basis, from implementing its policies for third-country removals irreparably harms the government and contravenes the public interest. And in view of the district court's serious errors and the "government's strong interest in the orderly and expeditious management of immigration cases," *Moreta v. Holder*, 723 F.3d 31, 34 (1st Cir. 2013), the equities favor a stay pending appeal.

## CONCLUSION

The Court should grant a stay pending appeal. If the Court denies a stay, it should so rule by March 12, 2026, and it should grant a 15-day stay to permit the government to seek relief from the Supreme Court.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant Attorney General*

MATTHEW P. SEAMON
*Acting Assistant Director*

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) of 2,600 words because the motion contains 2,486 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Mary L. Larakers*
MARY L. LARAKERS

## CERTIFICATE OF SERVICE

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Mary L. Larakers*
Mary L. Larakers
Dated: March 10, 2026                    Senior Litigation Counsel