No. 26-1212

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

D.V.D.; M.M.; E.F.D.; O.C.G.,

Plaintiffs - Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security;
TODD BLANCHE, Acting United States Attorney General; and
ANTONE MONIZ, Superintendent of the Plymouth County Correctional Facility,

Defendants - Appellants.

_____

On Appeal from the United States District Court
for the District of Massachusetts

_____

**BRIEF FOR PLAINTIFFS-APPELLEES**

_____

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT RIGHTS PROJECT
 615 Second Avenue, Suite 400
 Seattle, WA 98104


Anwen Hughes
HUMAN RIGHTS FIRST
121 W. 36th St., PMB 520
New York, NY 10018

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
Olivia Callan
NATIONAL IMMIGRATION
  LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA 02446
trina@immigrationlitigation.org

*Counsel for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

Page

ORAL ARGUMENT STATEMENT

I.  INTRODUCTION……………………………………………...    1

II.  JURISDICTION…………………………………………..    3

III.  ISSUES PRESENTED…………………………………    3

IV.  STATEMENT OF THE CASE …………………………...    3

A. Legal Background…………………………………    3

B. Procedural History………………………………...    7

V.  SUMMARY OF THE ARGUMENT……………………...    13

VI.  STANDARD OF REVIEW………………………………    19

VII.  ARGUMENT……………………………………………    19

A. The District Court Had Jurisdiction to Review Plaintiffs'
Claims and to Issue Classwide Declaratory and Set Aside
Relief…………………………………………………    19

1. Section 1252(f)(1) Bars Neither Classwide Declaratory
Relief Nor Vacatur Under the APA…………………….    19

2. The District Court Had Jurisdiction Over Plaintiffs' Claims..    25

a. *Section 1252(g) does not apply*…………………..    25

b. *Neither 8 U.S.C. § 1252(a)(5) nor (b)(9) bars review*……    30

c. *Section 1252(a)(4) and FARRA § 2242(d) are
inapposite*……………………………………    34

B.  The District Court Properly Held that the Law Requires Both
the Sequencing of Countries for Removal and an Evidentiary
Hearing to Assess Fear-Based Claims to Third Countries……..    39

C. The District Court Correctly Found Defendants' Policy
Violates Plaintiffs' Due Process Rights………………………..    46

    1. Plaintiffs are entitled to meaningful notice and opportunity
to be heard prior to any third-country removal……………...    46

    2. The March 30 and July 9 Guidance are unlawful…………...    50

        a. *Diplomatic assurances are insufficient to safeguard
Plaintiffs' rights to seek protection from persecution and
torture*..………………………………………………….    50

        b. *Defendants' "notice" and screening process is
constitutionally inadequate*..……………………………..    53

    3. All class members have the same basic due process rights….    56

    4. The District Court properly identified the due process
interest at issue……………………………………………    59

D.  The District Court Appropriately Certified the Class………….    60

VIII.    CONCLUSION……………………………………………….....    68

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.A.R.P. v. Trump*, 605 U.S. 91 (2025) .......................................................... passim

*Abdullah v. INS*, 184 F.3d 158 (2d Cir. 1999) ..............................................48

*Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019) ......................................48

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007) ........................................................ passim

*Ali v. Garland*, 33 F.4th 47 (1st Cir. 2022)........................................................35

*Alicea v. Cincinnati Inc.*, 166 F.4th 245 (1st Cir. 2026).........................................40

*Alli v. Decker*, 650 F.3d 1007 (3d Cir. 2011) ..................................... 21, 22, 23

*Andriasian v. INS*, 180 F.3d 1033 (9th Cir. 1999).............................................48

*Ardestani v. INS*, 502 U.S. 129 (1991) ...........................................................38

*Aronstein v. Mass. Mut. Life Ins. Co.*, 15 F.4th 527 (1st Cir. 2021) ......................19

*Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022).................................... 63, 68

*Biden v. Texas*, 597 U.S. 785 (2022) ........................................... 13, 19, 21

*Bonilla v. Garland*, 23 F.4th 61 (1st Cir. 2022) .............................................67

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) ................................................ passim

*Califano v. Yamasaki*, 442 U.S. 682, 693 (1979) ..................................... 43, 59

*California v. Grace Brethren Church*, 457 U.S. 393 (1982)..................................21

*Camarena v. Dir., ICE*, 988 F.3d 1268 (11th Cir. 2021)......................................28

*Clark v. Martinez*, 543 U.S. 371 (2005) ............................................... 43, 62

*Connor B. ex rel. Vigurs v. Patrick*, 774 F.3d 45 (1st Cir. 2014).................... 63, 68

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799 (2024).67

*Cruz-Medina v. Noem*, 806 F. Supp. 3d 536 (D. Md. 2025) ..................................55

*D.A. v. Noem*, 800 F.Supp.3d 43 (D.D.C. 2025) ............................................51

*D.V.D. v. DHS (D.V.D. I)*, 778 F. Supp. 3d 355 (D. Mass. 2025).................... 25, 34

*DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) ...........................................................11

*DHS v. DVD*, 145 S.Ct. 2627 (2025) ..............................................................11

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020)...................... 14, 27, 29, 32

*DHS v. Thuraissigiam*, 591 U.S. 103 (2020).......................................... 57, 58

*E.F.L. v. Prim*, 986 F.3d 959 (7th Cir. 2021) .....................................................28

*Escobar v. Garland*, 122 F.4th 465 (1st Cir. 2024).............................................50

*G.P. v. Garland*, No. 21-2002, 2023 WL 4536070 (1st Cir. July 13, 2023)...........54

*Gaffney v. Silk*, 488 F.2d 1248 (1st Cir. 1973) ...............................................54

*Garcia-Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009) .................................63

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ............................................ passim

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ............................................. 47, 49, 54

*Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020) .............................................38

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018)..............................................28

*Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989) ......................................67

*Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021)............................................54

*Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025)..........................28, 31

*Immigrant Defenders Law Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025) ...............24

*INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999)..........................................................5

*INS v. St. Cyr*, 533 U.S. 289 (2001)......................................................................27

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ...................................... 26, 28, 32, 37

*Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) ..................................................58

*Kaplan v. Tod,* 267 U.S. 228 (1925)......................................................................58

*Khouzam v. Att'y Gen.*, 549 F.3d 235 (3d Cir. 2008) ......................................36, 52

*Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009) .........................................51, 52

*Kong v. United States*, 62 F.4th 608 (1st Cir. 2023)...................................... passim

*Kossov v. INS*, 132 F.3d 405 (7th Cir. 1998) .........................................................48

*Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724 (W.D. Wash. Nov. 17, 2025) ....................................................................................................... 55, 64

*Landon v. Plasencia*, 459 U.S. 21 (1982)...............................................................58

*Las Americas Immigrant Advocacy Ctr. v. DHS*, 783 F. Supp. 3d 200 (D.D.C. 2025) ..................................................................................................................24

*Leng May Ma v. Barber*, 357 U.S. 185 (1958) .......................................................57

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..............................................65

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................................................56, 63

*McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991) ...........................................36

*Meachum v. Fano*, 427 U.S. 215 (1976)................................................................59

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .... 19, 47, 54, 63

*Mullane v. U.S. Dep't of Just.*, 113 F.4th 123 (1st Cir. 2024)................................19

*Munaf v. Geren*, 553 U.S. 674 (2008) .............................................................51, 52

*Nasrallah v. Barr*, 590 U.S. 573 (2020) ........................................................ passim

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ............................................................................................................................24

*Ng Fung Ho v. White*, 259 U.S. 276 (1922)...........................................................59

*Nishimura Ekiu v. United States*, 142 U.S. 651 (1892) ..........................................58

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021)........................................................52

*Paye v. Garland*, 109 F.4th 1 (1st Cir. 2024) .......................................................50

*Payne v. Cent. Pac. Ry. Co.*, 255 U.S. 228 (1921)................................................44

*Perez-Lastor v. INS*, 208 F.3d 773 (9th Cir. 2000).................................................47

*Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022)..................................................28

*Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021)..........................................................65

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ............ passim

*Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43 (1993) ..............................................36

*Reno v. Flores*, 507 U.S. 292 (1993) ....................................................................47

*Sadychov v. Holder*, 565 F. App'x 648 (9th Cir. 2014)..........................................32

*Sagastizado-Sanchez v. Noem*, 802 F.Supp.3d 992 (S.D. Tex. 2025) ...................... 55
*Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir. 2003) ..................................... 36
*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) ......................... 58
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................... 45, 65
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ...................... 26
*Steffel v. Thompson*, 415 U.S. 452, 467 (1974) ................................... 22, 23
*Tazu v. Att'y Gen.*, 975 F.3d 292 (3d Cir. 2020) ...................................... 28
*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022) ................................... 24
*Texas v. United States*, 515 F. Supp. 3d 627 (S.D. Tex. 2021) ........................... 42
*Trump v. J.G.G.*, 604 U.S. 670 (2025) ...................................... 47, 54, 59, 63
*United States v. Am. Ry. Express Co.*, 265 U.S. 425 (1924) ............................... 40
*United States v. Fausto*, 84 U.S. 439 (1988) ......................................... 34
*Velasques Rincon v. Hyde*, 801 F.Supp.3d 101 (D. Mass. 2025) .......................... 58
*Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341 (E.D. Cal. Nov. 6, 2025) ............................................................... 55
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................. 18, 61
*Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950) ..................................... 58
*Zadvydas v. Davis*, 533 U.S. 678 (2001) ....................................... passim

## STATUTES

5 U.S.C. § 706 ...................................................................... 42, 46
6 U.S.C. § 557 ....................................................................... 4, 40
8 U.S.C. § 1103(a)(1) .................................................................. 4
8 U.S.C. § 1158(b)(1)(B)(ii) ........................................................... 41
8 U.S.C. § 1158(b)(1)(B)(iii) .......................................................... 41
8 U.S.C. § 1225(b)(1) .............................................................. 20, 66
8 U.S.C. § 1228(b) ............................................................... passim
8 U.S.C. § 1229a .................................................................. passim
8 U.S.C. § 1229a(c)(7) ................................................................ 15
8 U.S.C. § 1229a(c)(7)(A) ............................................................. 33
8 U.S.C. § 1229a(c)(7)(C)(i) ........................................................... 33
8 U.S.C. § 1229a(c)(7)(C)(ii) .......................................................... 33
8 U.S.C. § 1231(a)(5) ............................................................. passim
8 U.S.C. § 1231(b)(1) ............................................................. passim
8 U.S.C. § 1231(b)(1)(A) ............................................................... 4
8 U.S.C. § 1231(b)(1)(B) ............................................................... 4
8 U.S.C. § 1231(b)(1)(C) ............................................................... 4
8 U.S.C. § 1231(b)(1)(C)(iv) ........................................................... 4
8 U.S.C. § 1231(b)(2) ............................................................. passim
8 U.S.C. § 1231(b)(2)(C)(iv) .......................................................... 44

8 U.S.C. § 1231(b)(2)(D) ....................................................................39
8 U.S.C. § 1231(b)(2)(E)(vi) ...........................................................39
8 U.S.C. § 1231(b)(3) ................................................................ passim
8 U.S.C. §1231(b)(3)(A) ......................................................................5
8 U.S.C. § 1231(b)(3)(C) ........................................................ 6, 40, 41, 49
8 U.S.C. § 1231(h) ............................................................................42
8 U.S.C. § 1252(a)(5) ................................................................ passim
8 U.S.C. § 1252(b). ............................................................................49
8 U.S.C. § 1252(b)(4)(A) ..................................................................31
8 U.S.C. § 1252(b)(9) ................................................................ passim
8 U.S.C. § 1252(f)(1) ................................................................. passim
8 U.S.C. § 1252(g) ...................................................................... passim
8 U.S.C. § 1252(e) ........................................................ 18, 20, 21, 66
8 U.S.C. § 1252(e)(1)(B) ..................................................................20
28 U.S.C. § 1291 ..................................................................................3
28 U.S.C. § 1331 ..................................................................................3
Foreign Affairs Reform Restructuring Act of 1998, Pub. L. 105-277, Div. G,
    § 2242, 112 Stat. 2681 (1998) (FARRA).................................... passim
    FARRA § 2242(a) ..................................................................... passim
    FARRA § 2242(d) ..................................................................... passim
Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 102, 107 ........................41

## REGULATIONS

8 C.F.R. § 208.16 ..........................................................................5, 40
8 C.F.R. § 208.16(a).................................................................. 5, 41, 49
8 C.F.R. § 208.16(b) ..........................................................................40
8 C.F.R. § 208.16(c)(2) ............................................................ 40, 41, 49
8 C.F.R. § 208.16(c)(3) ............................................................ 40, 41, 49
8 C.F.R. § 208.16(c)(4) ......................................................................41
8 C.F.R. § 208.17 .................................................................... 40, 41, 66
8 C.F.R. § 208.18 ..............................................................................66
8 C.F.R. § 208.18(c)(1) .....................................................................50
8 C.F.R. § 208.31(e) ..........................................................................41
8 C.F.R. § 208.31 ................................................................................6
8 C.F.R. § 238.1(b)(2)(ii) ....................................................................6
8 C.F.R. § 238.1(f)(2) ..........................................................................6
8 C.F.R. § 238.1(f)(3) ..........................................................................6
8 C.F.R. § 241.8(e) ..............................................................................6
8 C.F.R. § 292.5(a).............................................................................48
8 C.F.R. § 1003.2(a)...........................................................................33

8 C.F.R. § 1003.2(f) .................................................................................33
8 C.F.R. § 1003.2(c)(3)(ii) .......................................................................33
8 C.F.R. § 1003.23(b)(1)(v) .....................................................................33
8 C.F.R. § 1003.23(b)(3).........................................................................33
8 C.F.R. § 1003.23(b)(4)(i) ......................................................................33
8 C.F.R. § 1208.16 .............................................................................5, 40
8 C.F.R. § 1208.16(a) ........................................................................ 41, 49
8 C.F.R. § 1208.16(b) ........................................................................ 32, 40
8 C.F.R. § 1208.16(c) ..............................................................................32
8 C.F.R. § 1208.16(c)(2) ........................................................ 32, 40, 41, 49
8 C.F.R. § 1208.16(c)(3)......................................................... 32, 40, 41, 49
8 C.F.R. § 1208.16(c)(4) ...........................................................................49
8 C.F.R. § 1208.17 ...................................................................... 40, 41, 66
8 C.F.R. § 1208.17(b)(1)...........................................................................49
8 C.F.R. § 1208.17(b)(2)...........................................................................66
8 C.F.R. § 1208.18 ...................................................................................66
8 C.F.R. § 1208.18(c)(1) ...........................................................................50
8 C.F.R. § 1208.31 .............................................................................6, 40
8 C.F.R. § 1208.31(e) ...............................................................................41
8 C.F.R. § 1240.1(a)(1)(iii) .......................................................................40
8 C.F.R. § 1240.10(f) ...........................................................................6, 39
8 C.F.R. § 1240.12(d) ...........................................................................3, 15
28 C.F.R. § 200.1 ......................................................................................5
Procedures for Credible Fear Screening and Consideration of Asylum,
    Withholding of Removal, and CAT Protection Claims by Asylum Officers, 87
    Fed. Reg. 18078, 18092 (Mar. 29, 2022)..........................................55

## RULES

Rule 23 ....................................................................................................60
Rule 23(b)(2)................................................................... 18, 23, 63, 67
Fed. R. Civ. P. 23 Advisory Committee's Note to 1996 amendment ....................23

## OTHER AUTHORITIES

Deng Machol, *South Sudan Repatriates Mexican Man Deported from U.S. in July*,
    Associated Press (Sept. 6, 2025)........................................................11
Eileen Sullivan et al., *Trump Wants to Make Deportation Deals. Autocrats Are
    Ready to Listen*, N.Y. Times (Apr. 4, 2026).......................................50
Gerald Imray, *Court Rules in Favor of 4 Men Deported by the US to Africa and
    Denied Lawyer Meetings for 9 Months*, AP News (Apr. 10, 2026) ....................51

Hum. Rts. First & Refugees Int'l, *Third Country Deportation Watch: South Sudan* (last updated Mar. 11, 2026) ..............................................................11

Limitations on the Detention Authority of the Immigration and Naturalization Service, 27 Op. O.L.C. 58, 76 n.11 (Feb. 20, 2003) ............................................39

Oversight of the USA PATRIOT Act: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 10, 42 (2005) ..................................................................52

Priscilla Alvarez, *Why the Trump Administration Is Struggling to Deport Migrants to Unfamiliar Countries*, CNN (Apr. 12, 2026) ..................................................12

Transcript of Oral Argument at 20-21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) (No. 19-897) ..............................................................................17

Transcript of Oral Argument at 33, *Riley v. Bondi*, 606 U.S. 259 (2025) (No. 23-1270) ........................................................................................17

U.N. Committee Against Torture General Comment No. 4 on the Implementation of Art. 3 of the Convention in the Context of Art. 22, U.N. Doc. CAT/C/GC/4 (Sept. 4, 2018)................................................................................ 41, 49

U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, art. 3, 1465 U.N.T.S. 85 ...............4, 41

U.N. Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150........................................................................................ 40

U.N. Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223 .40

*"You Have Arrived in Hell": Torture and Other Abuses Against Venezuelans in El Salvador's Mega Prison*, Hum. Rts. Watch & Cristosal (Nov. 12, 2025) ..........51

Ximena Bustillo, *The White House Is Deporting People to Countries They're Not From. Why?* NPR (June 1, 2025)..................................................................46

x

## ORAL ARGUMENT STATEMENT

This case presents urgent and important questions of law of first impression regarding Defendants' third-country removal policy. Pursuant to Local Rule 34.0(a), given the gravity and far-reaching implications of these issues, Plaintiffs respectfully submit that the scheduled oral argument will assist the Court in its resolution of the questions of law that this appeal presents.

x

## I.    INTRODUCTION

The District Court properly held that, before removing Plaintiffs and class members to a third country—i.e., a country not identified in prior removal proceedings—Defendants must comply with statutory mandates designed to prevent removal to places where individuals may face persecution or torture. Specifically, the District Court declared that: (1) Defendants must follow the statutory sequence for removal set forth in 8 U.S.C. § 1231(b)(1)-(2) by first pursuing removal to countries identified in the removal order and then countries of citizenship; (2) Defendants must provide meaningful notice and a meaningful opportunity to raise country-specific fear claims; and (3) Defendants' third-country-removal policy, as embodied in the March 30, 2025 Memo and July 9, 2025 Guidance, is unlawful. Addendum (Add.) 3-83, 84-85. In the short time that Defendants' policy has been in effect, there have been well over 15,000 deportations to third countries—a number as alarming as it is indefensible. By vacating this policy, the District Court confirmed Defendants' obligations to protect Plaintiffs and class members from removal to countries where they may face persecution or torture.

Contrary to Defendants' claims, the decision does not intrude on executive discretion or foreign policy. Instead, it enforces mandatory statutory and constitutional protections—including the Immigration and Nationality Act (INA),

1

the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), implementing regulations, and the Fifth Amendment—by preventing Defendants from implementing a policy that strips individuals of meaningful notice and opportunity to raise mandatory-protection claims. Nor did the District Court exceed jurisdictional limits. The statutes Defendants invoke—8 U.S.C. § 1252(a)(4)-(5), (f)(1), (g), and FARRA § 2242(d)—do not bar review or relief where, as here, Defendants' policy fails to provide mandatory procedural protections that must precede removal. The decision respects foreign-policy prerogatives, as it does not second-guess the substance of diplomatic assurances. It simply declares that the Department of Homeland Security (DHS) must ensure that class members are given meaningful notice and an opportunity to raise fear-based claims before any third-country removal, including by following the statutory sequence for identifying third countries. The Court should affirm the District Court's statutory and due process analysis as to all class members, affirm declaratory relief and vacatur under the Administrative Procedure Act (APA), and uphold class certification. Without affirmance, Plaintiffs and class members will continue to face a substantial risk of persecution, torture, or death—harms the record shows they have already repeatedly endured.

## II.     JURISDICTION

The District Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

## III.     ISSUES PRESENTED

- Whether the District Court had jurisdiction to issue classwide declaratory relief and to vacate Defendants' third-country removal policy.

- Whether the District Court properly exercised jurisdiction over Plaintiffs' claims.

- Whether the District Court correctly held that Defendants' third-country removal policy violates 8 U.S.C. § 1231(b)(1)-(3), 8 C.F.R. § 1240.12(d), FARRA § 2242, implementing regulations, and due process.

- Whether the District Court properly certified the class.

## IV.     STATEMENT OF THE CASE

### A.     Legal Background

When DHS executes a removal order, it is not free to choose any destination country. The INA sets the order of removal and, along with FARRA, bars removal to countries where a noncitizen faces persecution or torture. Paragraphs (b)(1) and (b)(2) of 8 U.S.C. § 1231 govern the countries to which DHS is authorized to

3

remove noncitizens.[1] The statutory scheme sets forth "four consecutive removal commands." *Jama v. ICE*, 543 U.S. 335, 341 (2005). DHS must attempt to remove the individual first to the country identified in removal proceedings, then their country of origin, next a country to which they have a lesser connection, and finally, if removal to any of those countries is "impracticable, inadvisable, or impossible," DHS may remove a person to another country "whose government will accept" them. *Id*. (quoting 8 U.S.C. § 1231(b)(2)). For noncitizens placed in removal proceedings upon arrival in the United States, the designated country is the one from which they departed, or, alternatively, where they have a connection. 8 U.S.C. § 1231(b)(1)(A) -(C). Another country is permitted only if removal to each of those countries "is impracticable, inadvisable, or impossible." *Id*. § 1231(b)(1)(C)(iv).

But the first sequential step, in both (b)(1) and (b)(2), is the qualification ("Subject to paragraph (3)") barring removal to *any* country where "life or freedom would be threatened." Two key forms of protection exist: withholding of removal, 8 U.S.C. § 1231(b)(3), and Article 3 of the Convention Against Torture (CAT).

---

[1]    Congress delegated enforcement of final removal orders and related immigration laws to the DHS Secretary. 8 U.S.C. § 1103(a)(1). References to the Attorney General pertain to the DHS Secretary for carrying out removals, and to the Attorney General—through immigration judges (IJs) and the Board of Immigration Appeals (BIA)—for selecting countries designated for removal and for decisions about fear-based claims. *See* 6 U.S.C. § 557.

The statute's paragraph (3), which restricts such removal, reads:

> *Notwithstanding paragraphs (1) and (2)*, the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

*Id*. § 1231(b)(3)(A) (emphasis added); *see also Jama*, 543 U.S. at 348.[2] Separately, the Convention Against Torture (CAT), implemented in 1998 through FARRA, Pub. L. 105-277, Div. G, § 2242, 112 Stat. 2681 (1998), restricts Defendants' authority to effect removal to a country under (b)(1) or (b)(2). Through FARRA, Congress instructed that the U.S. government may not "expel, extradite, or otherwise effect the involuntary return of *any person* to a country" where they likely would face torture. Pub. L. 105-277, Div. G, § 2242(a), 112 Stat. 2681, 2681-822 (1998) (emphasis added) (codified as statutory note to 8 U.S.C. § 1231). Congress directed that CAT be implemented through regulations, *id.* § 2242(b), 112 Stat. at 2681-822. *See generally* 8 C.F.R. §§ 208.17-.18, 1208.17-.18; *see also* 28 C.F.R. § 200.1 (mandating that a Title V removal order cannot violate CAT).

The statute and regulations require that noncitizens receive meaningful notice and an opportunity to present a fear-based claim. In proceedings under 8 U.S.C. § 1229a, the IJ "shall notify" the individual of their designated country of

---

[2]    Withholding of removal is mandatory for noncitizens who can show they are more likely than not to face persecution in the designated country. 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. §§ 208.16, 1208.16.

removal, and "shall also identify for the record" all alternative countries to which the person may be removed. 8 C.F.R. § 1240.10(f). DHS officers issuing reinstatement orders under 8 U.S.C. § 1231(a)(5) must provide notice of a designated country. *See* 8 C.F.R. § 241.8(e) (referring to "the country designated in [the reinstatement] order"). Likewise, DHS officers issuing removal orders under 8 U.S.C. § 1228(b) "shall designate the country of removal[.]" 8 C.F.R. § 238.1(f)(2); *id.* § 238.1(b)(2)(ii).

Consistent with these statutory and regulatory mandates, DHS must provide those who express such fear an opportunity to demonstrate a reasonable fear of persecution or torture to an asylum officer, and those who pass this threshold are eligible to apply for withholding under 8 U.S.C. § 1231(b)(3) and/or CAT protection in withholding-only proceedings. *See* 8 C.F.R. §§ 241.8(e), 238.1(f)(3); *id.* §§ 208.31, 1208.31. In those hearings, the "trier of fact shall determine whether the [noncitizen] has sustained [their] burden of proof, and shall make credibility determinations …." 8 U.S.C. § 1231(b)(3)(C); *see also* FARRA § 2242(a), (d) (channeling review of CAT "determination[s]" to federal appellate courts); 8 C.F.R. §§ 208.16(a)(1), (c) (providing for IJ hearings of CAT claims), 1208.16(a)(1), (c) (same).

6

## B.    Procedural History

In March 2025, Plaintiffs sued, challenging DHS's failure to provide meaningful notice and an opportunity to raise claims for withholding of removal and CAT protection prior to removal to a third country. Appx.30-67. Plaintiffs D.V.D., M.M., and E.F.D. fear deportation to a third country. Appx.81 ¶13; Appx.84 ¶13; Appx.87 ¶16. At the time of filing, DHS had deported Plaintiff O.C.G. to Mexico without notice—two days after the IJ granted him withholding of removal to Guatemala—despite evidence he feared persecution in Mexico after being raped and held hostage there. Appx.89-91. Mexican authorities then sent O.C.G. to Guatemala. Appx.34 ¶13; Appx.90 ¶10; Appx.251-67.

Plaintiffs also moved for a TRO, PI, and class certification. Dkt. 4, 6. In response, Defendants claimed *no* notice or opportunity to make a fear-based claim was required. Appx.603:2-18; Dkt. 40 at 4. On March 28, the District Court issued a TRO requiring written notice and a meaningful opportunity to present a CAT claim prior to any third-country removal. Dkt. 34, 40. Defendants appealed and moved to stay the TRO, but this Court denied the motion. *D.V.D. v. DHS*, No. 25-1311 (1st Cir. Apr. 7, 2025).

Two days after the TRO, Defendants issued "Guidance Regarding Third Country Removals" (March 30 Memo). Appx.117-18. It allows removal to a third country without notice or process if DHS has received "credible" "diplomatic

7

assurances that [noncitizens] will not be persecuted or tortured." *Id.* For all other countries, the Memo instructs DHS to inform the person of the intended third country. Appx.118. It does not require DHS to advise the person of their right to apply for protection. Only if a noncitizen "affirmatively states" fear will DHS refer them to an asylum officer for a screening that generally occurs within 24 hours. *Id.* If the individual fails to establish that it is "more likely than not" they would be persecuted or tortured, DHS will remove them. *Id.* If the individual meets this standard, the officer will refer individuals not previously in removal proceedings to an IJ; for all others, U.S. Immigration and Customs Enforcement (ICE) will "consider" filing a motion to reopen or select another third country. *Id.*

On March 31, at least four alleged class members were removed to El Salvador, via Naval Station Guantánamo Bay (NSGB), without receiving the TRO's protections. *See* Dkt. 49 at 18-19, 86, 72, 72-1. A second flight with class members departed April 13. *See* Dkt. 81. Defendants claimed no violation occurred because the Department of Defense (DoD) carried out the removals. Dkt. 72 at 3.[3]

---

[3]    A corroborated whistleblower complaint alleges that high-level officials conspired to violate the TRO. *See* Press Release, U.S. S. Comm. on the Judiciary, *Senate Judiciary Democrats Request Hearing with Whistleblower Erez Reuveni* (July 10, 2025), https://www.judiciary.senate.gov/press/dem/releases/durbin-releases-documents-corroborating-justice-department-whistleblowers-allegations-against-embattled-trump-judicial-pick-emil-bove.

At an April 10 hearing, Defendants confirmed their position that removal is lawful even without notice or where individuals have an uncontroverted fear of death. Appx.609:9-16; Appx.608:5-23. On April 18, the District Court issued a decision granting class certification and a preliminary injunction (PI). Appx.166-213. It made factual findings regarding Defendants' third-country removal policy, Appx.171-72, and Plaintiffs' inability to raise third-country claims in removal proceedings or through reopening, Appx.176-184. The court then certified the following class:

> All individuals who have a final removal order issued in proceedings under [8 U.S.C. §§ 1229a, 1231(a)(5), or 1228(b)] (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

Appx.188, Appx.213. It also issued a PI, ordering that, prior to any third-country removal, noncitizens and their counsel (if any) receive written notice of the country of removal in a language the noncitizen understands, and a reasonable fear interview to assert a claim for CAT protection. Appx.211-12. The PI also required DHS to move to reopen proceedings if the individual demonstrated a reasonable fear, and provided 15 days for the noncitizen to move to reopen proceedings if they did not. Appx.212.

On April 30, in response to the earlier removal of alleged class members to

El Salvador by DoD via NSGB, the District Court modified the PI to clarify that Defendants cannot "cede custody or control" in a way that prevents access to the PI's protections. Dkt. 86.

On May 7, DHS attempted to remove thirteen non-Libyan class members to Libya. *See* Dkt. 89; Appx.214-24. Plaintiffs filed an emergency TRO motion. Dkt. 89. The District Court held that the anticipated removals would violate the PI. Dkt. 91. DHS returned the individuals to ICE custody. *See* Appx.219 ¶¶34-35; Appx.223 ¶12.

On May 20, DHS initiated removal of eight class members to South Sudan. Plaintiffs filed another emergency TRO motion. Dkt. 111. The District Court ordered Defendants to maintain custody and explain how they complied with the PI. Dkt. 116. Declarations and testimony demonstrated that Defendants provided fewer than 24 hours' notice of removal, outside of business hours, and on a form written in English. *See* Appx.248; Appx.622:9-21; Dkt. 132-2 ¶¶8-10. Each class member refused to sign the notice, but DHS did not treat the refusal as an expression of fear. Dkt. 130-2 ¶10. The court concluded that Defendants' actions violated the PI, clarified that a "meaningful opportunity" to seek CAT protection requires a minimum of ten days between notice and removal, and issued a remedial order. Appx.248-50; Dkt. 119.

Defendants appealed the PI and moved to stay it; this Court denied that

motion. *D.V.D. v. DHS*, No. 25-1393 (1st Cir. May 16, 2025). On May 27, Defendants applied for an emergency stay of the PI with the Supreme Court, which the Court granted without explanation on June 23, rendering the PI unenforceable. *DHS v. D.V.D.*, 145 S. Ct. 2153, 2153 (2025).

Plaintiffs moved to enforce the remedial order. Dkt. 174. The District Court denied the motion as "unnecessary," stating the order remained in effect. Dkt. 176. Defendants then sought clarification from the Supreme Court, which the Court granted. *DHS v. D.V.D.*, 145 S. Ct. 2627 (2025). DHS subsequently deported the eight class members to South Sudan. Six remain detained in a guarded complex in sweltering heat with little electricity. *See* Hum. Rts. First & Refugees Int'l, *Third Country Deportation Watch: South Sudan* (last updated Mar. 11, 2026), https://www.thirdcountrydeportationwatch.org/south-sudan; Appx.283-84, Appx.290-95.[4]

On July 9, 2025, ICE issued guidance regarding DHS's March 30 Memo. Appx.269-70. It is identical to the March 30 Memo except that, in cases where diplomatic assurances do not exist, an officer will serve a "Notice of Removal" with language interpretation. *Id*. DHS may effectuate removal 24 hours after

---

[4]     Mexico arranged return of its national. *See* Deng Machol, *South Sudan Repatriates Mexican Man Deported from U.S. in July*, Associated Press (Sept. 6, 2025), https://apnews.com/article/south-sudan-us-mexico-deportations-924ebd609d65efc6681f4bb59b6cc94e.

11

serving notice; however, in exigent circumstances, removal may occur after six hours' notice if ICE provides access to counsel. *Id.*

Because the PI was not in effect, Plaintiffs sought an indicative ruling to dissolve it, which the District Court granted, and this Court later allowed. Dkt. 191, 192, 212; *D.V.D. v. DHS*, Nos. 25-1393, 25-1631 (1st Cir. Feb. 28, 2026); Appx.510.

Meanwhile, Plaintiffs moved for partial summary judgment, asking the District Court to set aside DHS's third-country removal policy and declare their rights to meaningful notice and opportunity to seek protection. *See* Dkt. 193, 194. Defendants opposed and moved to dismiss. *See* Dkt. 231. During this period, and to date, Defendants have removed class members to third countries without notice or opportunity to contest removal, resulting in detention by foreign governments, chain refoulement (deportation to a third country that then deports the individual to the country from which they won protection), disappearance, and abuse. *See, e.g.,* Dkt. 232 at 4, 12-14; Appx.278-453. DHS conducted an estimated 15,000 third-countries deportations (13,000 to Mexico alone) in 2025. *See* Priscilla Alvarez, *Why the Trump Administration Is Struggling to Deport Migrants to Unfamiliar Countries*, CNN (Apr. 12, 2026), https://www.cnn.com/2026/04/12/politics/trump-deportations-third-countries-stephen-miller.

The District Court granted summary judgment to Plaintiffs in part, issuing

factual findings regarding the illegality of Defendants' third-country removal policy, Add.5-18, declaring that class members are entitled to meaningful notice and opportunity to raise country-specific protection claims and that DHS must first seek removal to designated countries; and declaring that the March 30 Memo and July 9 Guidance are unlawful, setting them aside under the APA. Add.82-83.

## V.   SUMMARY OF THE ARGUMENT

The District Court correctly exercised jurisdiction, granted appropriate relief, and resolved Plaintiffs' claims on a classwide basis.

Section 1252(f)(1) addresses only injunctions and as such does not preclude classwide declaratory relief or vacatur under the APA. This Court has held that § 1252(f)(1) does not bar classwide declaratory relief, *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021), and neither *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), nor *Biden v. Texas*, 597 U.S. 785 (2022), disturbs that holding. In addition, *Brito*'s textual analysis applies with equal force to APA vacatur: § 1252(f)(1) says nothing about setting aside agency action, and vacatur is a distinct remedy that operates on the agency action itself, not on the officials who implement it.

The District Court properly exercised jurisdiction over Plaintiffs' claims. First, Plaintiffs' claims fall outside 8 U.S.C. § 1252(g), which applies only to three discrete discretionary actions—commencing proceedings, adjudicating cases, or executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*),

13

525 U.S. 471, 482-83 (1999); *Kong v. United States*, 62 F.4th 608, 617-18 (1st Cir. 2023). Plaintiffs do not challenge the execution of removal orders, but instead challenge Defendants' failure, embodied in their third-country removal policy, to provide mandatory statutory and constitutional protections—namely, meaningful notice and an opportunity to seek protection before removal to a third country. Because these protections are mandated by the INA, FARRA, and the Due Process Clause, they are not discretionary. Moreover, they do not prevent Defendants from executing removal orders, but instead specify procedures required when selecting the removal country. Challenges to the procedures' denial are collateral to the execution of removal orders, and § 1252(g) does not bar jurisdiction over Plaintiffs' policy-based, non-discretionary claims. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020).

Second, 8 U.S.C. § 1252(a)(5) and (b)(9) neither bar review nor require Plaintiffs to raise their claims via petitions for review (PFRs). Plaintiffs only challenge DHS's post-proceeding designation and removal to a third country— claims that arise after removal proceedings conclude and thus are not part of removal orders reviewable on a PFR under § 1252(a)(5). And, as courts have recognized, § 1252(b)(9) does not bar claims that do not seek review of removal orders. *Regents*, 591 U.S. at 19; *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). This is true in part because, as the District Court correctly found, the record

14

evidence demonstrated that Plaintiffs cannot raise the claims at issue here via a PFR because Defendants do not identify third countries until after the conclusion of proceedings. Moreover, motions to reopen are subject to numerous procedural, substantive, and practical barriers that curtail their availability. *See, e.g.*, 8 U.S.C. § 1229a(c)(7).

Third, for many of the same reasons, the channeling provisions of FARRA § 2242(d) and 8 U.S.C. § 1252(a)(4) also do not bar review. These provisions apply only to claims seeking review of individual CAT determinations or challenges to CAT regulations, and Plaintiffs raise neither. Instead, Plaintiffs seek to enforce existing statutory and regulatory protections and do not raise claims "under" CAT or challenge the validity of its implementing regulations. Nor do they contest any specific determination regarding CAT eligibility; rather, they bring post-removal-order collateral challenges to the broader agency policy and practices that prevent them from accessing CAT protections at all. Because Plaintiffs' claims are brought under the APA and target a systemic barrier rather than individual determinations, the District Court correctly exercised jurisdiction.

On the merits, the District Court correctly declared that DHS must follow a specific statutory sequence in 8 U.S.C. § 1231(b)(1)-(2) and 8 C.F.R. § 1240.12(d) prior to any third-country removal—first, the country designated by the individual, then their country of citizenship, and only thereafter other countries with personal

15

connections—before considering removal to an unrelated third country to which class members have no connection. The District Court also correctly held that the sequencing provisions explicitly restrict the selection of any country where an individual could face persecution or torture. The INA mandates that individuals are entitled to notice and an evidentiary hearing before an immigration judge (IJ) to present withholding claims. The District Court also could have concluded, and this Court now should conclude, that FARRA, the CAT regulations, and U.N. treaties require an evidentiary hearing to present CAT claims prior to any third-country removal. Similarly, the District Court's procedural due process analysis should apply equally to all class members, entitling them to meaningful notice and opportunity to be heard and ensuring uniform application of these protections.

As to due process, the District Court correctly declared that class members are entitled to meaningful notice and opportunity to be heard. These are the classic requirements of due process, and the Supreme Court has held time and time again that they apply in immigration proceedings. Here, however, Defendants' policy provides no real process at all. Their assertion that courts cannot review Defendants' use of blanket diplomatic assurances fails because they rely on inapposite caselaw and ignore both the statutory and regulatory language requiring individualized proceedings and hearings.

Moreover, in the rare cases diplomatic assurances are proper, they must be

16

individualized. Defendants' effort to cast doubt on the District Court's reasoning about the constitutional insufficiency of their remaining process also misses the mark, for it is contrary to established procedural due process principles. The District Court declared class members are entitled to no more than what the Supreme Court repeatedly has affirmed applies, and in fact, no more than what the Solicitor General's Office has twice told the Supreme Court is required. *See* Transcript of Oral Argument at 20-21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) (No. 19-897); Transcript of Oral Argument at 33, *Riley v. Bondi*, 606 U.S. 259 (2025) (No. 23-1270); *see also* Add.4; Appx.167 n.2.

Defendants' assertion that some class members lack procedural due process rights is contrary to settled law, as the Supreme Court has held "that the Due Process Clause protects [a noncitizen] subject to a final order of deportation," which includes all class members here. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) (citation omitted). Moreover, even under Defendants' erroneous theory that due process rights are limited to the procedures Congress provides, the District Court correctly held that Congress provided statutory protections protected by the Due Process Clause. Defendants also err in claiming that the District Court misidentified the liberty interest here. Instead, it is Defendants who misapprehend established case law by asserting that class members' due process right not to be tortured or persecuted does not entail any right to an effective process.

17

Finally, the District Court properly certified the class because Plaintiffs challenge a uniform policy—Defendants' failure to provide meaningful notice and an opportunity to present fear-based claims before third-country removal—that inflicts a common procedural injury on all class members. Such procedural injuries are capable of resolution "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Defendants' focus on individualized differences misses the point: the legality of a systemwide policy that withholds meaningful notice and process presents a single, common question applicable to the entire class. This is true for both Plaintiffs' statutory claims under the INA and FARRA—which Defendants largely ignore—and their due process claims that courts routinely adjudicate on a classwide basis when, as here, the alleged violation is procedural and systemic.

Defendants' remaining objections likewise fail. Differences among class members, such as immigration status and ultimate eligibility for relief, do not defeat commonality because all are subject to the same deficient procedures. Likewise, 8 U.S.C. § 1252(e) does not apply, as the class definition excludes expedited removal orders. The named Plaintiffs have standing because they share the same risk of unlawful third-country removal without adequate process, and the inclusion of future class members is proper in a Rule 23(b)(2) action seeking forward-looking relief from an ongoing policy.

Accordingly, the Court should affirm the District Court's judgment.

## VI.    STANDARD OF REVIEW

The Court reviews a district court decision granting summary judgment de novo. *Mullane v. U.S. Dep't of Just.*, 113 F.4th 123, 130 (1st Cir. 2024). The Court "construe[s] the evidence 'in the light most congenial to the nonmovant'" and affirms absent a genuine issue of material fact, where the movant is entitled to judgment as a matter of law. *Id.* (citation omitted). The Court reviews class-certification decisions for abuse of discretion. *Aronstein v. Mass. Mut. Life Ins. Co.*, 15 F.4th 527, 533-34 (1st Cir. 2021).

## VII.    ARGUMENT

### A.    The District Court Had Jurisdiction to Review Plaintiffs' Claims and to Issue Classwide Declaratory and Set Aside Relief.

#### 1.    Section 1252(f)(1) Bars Neither Classwide Declaratory Relief Nor Vacatur Under the APA.

The District Court correctly held that § 1252(f)(1) bars neither classwide declaratory relief nor APA vacatur of the March 30 Memo and July 9 Guidance. Add.77-79, 83. Defendants rest principally on *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), and *Biden v. Texas*, 597 U.S. 785 (2022), but those decisions support the District Court's analysis and undermine Defendants' arguments. Certainly, neither decision disturbs this Court's holding in *Brito v. Garland* that § 1252(f)(1) does not preclude classwide declaratory relief. 22 F.4th at 252.

Further, *Brito*'s reading of § 1252(f)(1)'s limited scope applies with equal

19

force to whether the District Court had authority to vacate Defendants' policy under the APA. Indeed, no court of appeals has accepted Defendants' overbroad reading of § 1252(f)(1), which would leave many noncitizens "with no practical remedy whatsoever against clear violations by the Executive Branch." *Aleman Gonzalez*, 596 U.S. at 572 (Sotomayor, J., dissenting in part).

Nor does 8 U.S.C. § 1252(e) alter that conclusion or have "any significance." Stay Order at 1. As Defendants acknowledge, Br. 36-37, their § 1252(f)(1) argument does not rely on § 1252(e), and the latter provision does not apply here. Section 1252(e) is limited to challenges "pertaining to" expedited removal orders under § 1225(b)(1), which the Memo expressly excludes, Add.1 n.1, and the certified class does not encompass, Appx.188. Although Defendants point to individuals with reinstatement orders predicated on prior expedited removals, this case does not challenge those underlying orders; instead, it challenges the procedures governing third-country removals under §  1231(b) for individuals with orders under 8 U.S.C. §§ 1228(b), 1229a, and 1231(a)(5). Section 1252(e)(1)(B)'s bar on class actions applies only to actions brought under that subsection, which this case was not.

As this Court held in *Brito*, § 1252(f)(1) does not bar classwide declaratory relief. *See Brito*, 22 F.4th at 250-52. Relying on the provision's title, "Limit on injunctive relief," and its operative verbs, "enjoin or restrain," the Court concluded

20

that "[n]othing about that text suggests that it bars declaratory relief." *Id*. at 251.

The Court also pointed to § 1252(e)(1)(A)'s express bar on "declaratory,

injunctive, or other equitable relief" to confirm that "Congress knows how to

prohibit declaratory relief when it so chooses." *Id*. Critically, *Brito* directly

addressed—and rejected—the applicability of *California v. Grace Brethren*

*Church*, 457 U.S. 393 (1982), the Tax Injunction Act decision that Defendants

invoke. Br. 31-32. *Brito* explained that *Grace Brethren* and its progeny rest on

federalism concerns inapplicable to § 1252(f)(1). 22 F.4th at 252 ("Because section

1252(f)(1) concerns federal courts' ability to enjoin the operation of *federal* law, it

does not implicate federalism concerns."); *see also Alli v. Decker*, 650 F.3d 1007,

1014 (3d Cir. 2011) (distinguishing *Grace Brethren* because the Tax Injunction

Act bars courts from "*enjoin*[ing], *suspend*[ing] *or restrain*[ing]" tax collection).

Defendants acknowledge *Brito*'s holding but contend that *Aleman Gonzalez*

renders it invalid. Br. 34-35. Defendants' core premise is that *Brito* failed to

consider whether the term "restrain" might reach declarations that are "sufficiently

coercive as to have the same 'practical effect' as an injunction." Br. 34-35. To

begin, this contention is misleading. The *Aleman Gonzalez* Court pointedly

declined to consider whether § 1252(f)(1) reaches "any other form of relief that is

'practically similar to an injunction,' including class-wide declaratory relief." 596

U.S. at 551 n.2. Shortly thereafter, in *Biden v. Texas*, the Court explained that in

21

*Nielsen v. Preap*, 586 U.S. 392 (2019), it had already made clear that declaratory relief remains available under § 1252(f)(1) even if classwide injunctive relief is barred. The Court reached the merits in *Biden v. Texas* because the district court retained jurisdiction to consider declaratory relief, regardless of any issue with the injunction. *See* 597 U.S. at 800-01 & n.4.

In addition, *Brito did* conclude that a declaratory judgment "does not, in itself, coerce any party or enjoin any future action," and found that its non-coercive nature "legally and materially" distinguishes it from an injunction. 22 F.4th at 251. *Aleman Gonzalez* did not address, much less upend, the well-established understanding of declaratory relief as "a milder alternative to the injunction remedy" that "is not ultimately coercive." *Steffel v. Thompson*, 415 U.S. 452, 467, 471 (1974).

Defendants also attempt to characterize the declaratory judgment here as coercive because it "contemplates a *follow-on injunction*"—i.e., "invites every single member of the class . . . to immediately seek an injunction grounded on the authority of the declaratory judgment." Br. 31 (quoting *Alli*, 650 F.3d at 1020 n.2 (Fuentes, J., dissenting)). But § 1252(f)(1) itself preserves courts' authority to enter injunctive relief "with respect to . . . an individual [noncitizen] against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1). As the Supreme Court recognized in *Aleman Gonzalez,* this provision makes clear that the bar to

22

classwide injunctive relief "does not extend to individual cases." 596 U.S. at 550 (quoting *AADC*, 525 U.S. at 481-82).

Nor does the ability of class members to seek individual injunctions under § 1252(f)(1) violate Rule 23(b)(2). Rule 23(b)(2) is written in the disjunctive, providing for either injunctive *or* declaratory relief. Defendants distort the Advisory Committee Note to assert that any declaratory relief "should be equivalent to an injunction," Br. 33, but as the Note plainly states, it need only "*serve*[] *as a basis for* later injunctive relief," Fed. R. Civ. P. 23 Advisory Committee's Note to 1996 amendment (emphasis added); *see also Steffel*, 415 U.S. at 461 n.11 (explaining that a "declaratory judgment might serve as the basis for issuance of a later injunction to give effect to the declaratory judgment"). Indeed, courts have understood the interaction between § 1252(f)(1) and Rule 23(b)(2) to permit "class members [to] pursue individual injunctions after issuance of a classwide declaration." *Alli*, 650 F.3d at 1015.

Defendants separately contend that § 1252(f)(1) bars vacatur because it "restrain[s]" the operation of § 1231(b). Br. 35-36. First, this conclusion is foreclosed by the same textual reasoning in *Brito* with respect to declaratory relief: § 1252(f)(1) says nothing about vacatur or setting aside agency action under the APA. And Defendants' argument rests on a conceptual misunderstanding of vacatur, a remedy that acts upon the agency action, not on the officials who

23

implement it. *See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." (citation omitted)). The Supreme Court and the courts of appeals consistently have recognized that vacatur is "a less drastic remedy" than an injunction. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Accordingly, every court of appeals to consider § 1252(f)(1) after *Aleman Gonzalez* has rejected Defendants' position. The Fifth Circuit found, two weeks after *Aleman Gonzalez*, that § 1252(f)(1) does not bar APA vacatur of a DHS memorandum on removal priorities, reasoning that "a vacatur does nothing but re-establish the status quo absent the unlawful agency action" and "neither compels nor restrains further agency decision-making." *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). The Ninth Circuit agreed in *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 989-90 (9th Cir. 2025); *see also Las Americas Immigrant Advocacy Ctr. v. DHS*, 783 F. Supp. 3d 200, 232-33 (D.D.C. 2025) ("Vacatur is not an injunction.").

For these reasons, § 1252(f)(1) does not strip the District Court's authority to issue classwide declaratory relief or vacatur under the APA.

24

**2.** **The District Court Had Jurisdiction Over Plaintiffs' Claims.**

**a.** *Section 1252(g) does not apply.*

Section 1252(g) covers actions "arising from" three discrete, discretionary actions: decisions or actions "to commence [removal] proceedings, adjudicate cases, or execute removal orders." But Plaintiffs do not challenge DHS's discretionary decision to execute their removal orders or even the decision to remove them to a third country. Rather, Plaintiffs challenge DHS's unlawful policy and practice of depriving them of their rights to notice and an opportunity to apply for protection from persecution or torture before removal to any newly designated third country. Appx.30 ¶¶6, 37-52, 102-06, 110, 113-17, 120-22; Dkt. 232 at 19; Dkt. 57 at 6. The District Court correctly held that these protections are "mandatory" and that "[Plaintiffs'] assertions are collateral to Defendants' decision to execute Plaintiffs' removal, and thus not subject to section 1252(g)'s jurisdictional bar." Add.21 (citing *D.V.D. v. DHS* (*D.V.D. I*), 778 F. Supp. 3d 355, 377-78 (D. Mass. 2025)).[5]

Defendants err in their reliance on *Aleman Gonzalez* and *Steel Co. v.*

---

[5]    Defendants aver that because the class definition covers an individual subject to, or at risk of, third-country deportation, each class member is challenging the execution of "his removal order." Br. 38-39. But no class member has a removal order *to* a third country. Nor does the class definition alter the nature of Plaintiffs' entitlement to statutory protections in advance of removal to a third country. Defendants concede that "[s]tatutory withholding and CAT protection

*Citizens for a Better Environment*, 523 U.S. 83 (1998). Br. 39-40. Section 1252(g)'s bar does not depend on whether the challenged conduct is ultimately lawful, but on the challenged action's nature. That is a threshold, categorical inquiry, not a merits determination. *See Jennings v. Rodriguez*, 583 U.S. 281, 293-95 (2018) (plurality of Alito, J.) (determining first the type of claim at issue, rather than the merits, to assess whether § 1252(b)(9) barred review). Because Plaintiffs challenge the process by which third countries are selected and the procedures for raising fear-based claims *before* removal, their claims fall outside § 1252(g) and do not depend on the merits.

The mandatory, i.e., non-discretionary, nature of Plaintiffs' claims also demonstrates why § 1252(g) does not apply. Add.21-22 (citing *AADC*, 525 U.S. at 482, 485, 487 (Section 1252(g) is "narrow[]," "applies only to three discrete actions," and was "clearly designed to give some measure of protection to . . . discretionary determinations")). In *AADC*, the Supreme Court expressly held that § 1252(g) does not bar challenges to mandatory, nondiscretionary decisions or actions. Despite § 1252(g)'s seemingly broad language, its reach is "much narrower" when considered against the statutory and historical context. 525 U.S. at

---

affect only where, not whether, [a noncitizen] may be removed." Br. 11; *see also id*. 38-39. Plaintiffs agree, which further shows that a court order upholding statutory rights for withholding and CAT protection *prior to* a third-country removal does not implicate discretion to execute removal orders.

482. In reconciling the various interacting provisions at issue, the Supreme Court concluded that Congress only sought to channel and otherwise insulate from litigation the immigration authorities' "exercise of [their] *discretion*" with respect to the three specified actions. *Id*. at 483-84 (emphasis added). "Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations," the Court held. *Id*. at 485. Throughout its decision, the Court repeatedly emphasized that § 1252(g)'s focus was on shielding discretionary executive actions with respect to the three specified acts. *Id*. at 482-85, 487.

Defendants reject this reading, claiming that Congress could have employed the word discretion, but did not do so. Br. 40. But this position is irreconcilable with the Supreme Court's interpretation of § 1252(g)'s text and history in *AADC*, *see, e.g.*, 525 U.S. at 487 (referring to § 1252(g) as a "discretion-protecting provision"); *id*. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."). It is also irreconcilable with precedent affirming § 1252(g)'s narrow scope and focus on discretionary decisions. *See*, *e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311 n.34 (2001) (describing § 1252(g) as "appl[ying] only to three types of discretionary decisions by the Attorney General—specifically, to commence proceedings, to adjudicate cases, or to execute removal orders"); *Regents*, 591 U.S. at 19 (noting § 1252(g) is

27

"narrow"); *cf. Jennings*, 583 U.S. at 294 (plurality of Alito, J.) ("We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General."); *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) (distinguishing challenges to the "discretionary decision to execute removal" from those to "the government's alleged violations of law in arresting . . . without a relevant warrant and in failing to abide by its own regulations"); *accord Ibarra-Perez v. United States*, 154 F.4th 989, 997-98 (9th Cir. 2025) (holding § 1252(g) did not bar the noncitizen's claim that "he had a right to meaningful notice and an opportunity to present a fear-based claim before he was removed to [a third country]").[6]

The District Court also correctly found that "Plaintiffs' claims are policy challenges" that do not fall within the three discrete discretionary actions covered by § 1252(g). Add.21-24. It rightly reasoned that "[t]he facts of *AADC*," a selective-prosecution claim based on political affiliation that required examining a

---

[6]    Defendants rely on inapposite, out-of-circuit cases barring review of attempts to limit *when*, not *whether*, DHS could execute removal orders to designated countries. Dfs. Br. 40-41. In *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), *Tazu v. Att'y Gen.*, 975 F.3d 292 (3d Cir. 2020), and *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), petitioners sought to stay removal to await adjudication of motions to reopen. *Accord Kong*, 62 F.4th at 618 (distinguishing *Tazu*). Similarly, in *E.F.L. v. Prim*, 986 F.3d 959 (7th Cir. 2021), and *Camarena v. Dir., ICE*, 988 F.3d 1268 (11th Cir. 2021), petitioners sought stays to await adjudication of a discretionary petition under the Violence Against Women Act and a discretionary unlawful-presence waiver, respectively.

prosecutor's motives, "bear no resemblance to the policy challenge at issue here," because no such "subjective inquiry" is required "to determine the meanings of statutes, regulations, or the Constitution." Add.22-23 (citations omitted).

As a policy challenge, this case is akin to *DHS v. Regents of the University of California*, as the District Court found. Add.23-24. There, the Supreme Court held that § 1252(g)'s "narrow" construction did not bar its review of a policy challenge to DHS's decision to end the Deferred Action for Childhood Arrivals (DACA) program. 591 U.S. at 19. That DACA also conveyed substantive immigration benefits does not change the fact that "the defining feature of deferred action is the decision to defer removal." *Id*. at 27. *Regents'* holding that § 1252(g) did not apply to a policy challenge involving prosecutorial discretion further demonstrates that § 1252(g) does not apply here, where Plaintiffs allege violations of mandatory protections.

Defendants' attempt to distinguish *Kong* is unavailing. Br. 42. There, this Court held that § 1252(g) did not apply to the plaintiff's damages claim predicated on his post-final-removal-order arrest and re-detention, recognizing that "§ 1252(g) was passed with the understanding that challenges to the legality of a petitioner's detention" were collateral to DHS's decision to execute a removal order and were not covered. 62 F.4th at 615; *see also* Add.21 n.25. Likewise, here, Plaintiffs' claims are separate from, and collateral to, DHS's discretionary authority to

29

execute removal orders.[7]

Compliance with the INA, FARRA, the implementing regulations, and the Constitution is not discretionary or optional. Thus, § 1252(g) does not bar Plaintiffs' claims.

### b.    *Neither 8 U.S.C. § 1252(a)(5) nor (b)(9) bars review.*

Sections 1252(a)(5) and (b)(9) do not bar jurisdiction, nor do they channel Plaintiffs' claims through petitions for review (PFR). Br. 46-50. Those provisions are inapplicable because Plaintiffs' claims pertain to DHS's failure to provide meaningful notice and opportunity to be heard on a fear-based claim about a third country, i.e. a country selected by DHS *after* the conclusion of removal proceedings.

The District Court explained both why, legally, Plaintiffs' claims need not be raised through a PFR and why, practically, they *cannot* be. *See* Add.24-33 (explaining inter alia, that: (i) class members in removal proceedings cannot obtain protection from a country "nobody is trying to send them to" and DHS regulations limit protection to "the proposed country of removal"; (ii) changing country conditions  make it "impossible" to assess future fears of persecution or torture; (iii) "indirect refoulement. . . and ever-shifting diplomatic relations" make future

---

[7]    Defendants make the unremarkable assumption that the *Kong* Court would have found § 1252(g) applied "if Kong had sought a stay of removal." Br. 42. Neither Kong nor Plaintiffs here sought a stay of removal.

risk assessments unfeasible; (iv) the asylum/withholding application (Form I-589) does not require listing third countries; and (v) motions to reopen do not safeguard the ability to raise third-country protection claims).

Defendants' argument rests on the premise that Plaintiffs seek "judicial review of an order of removal entered or issued," 8 U.S.C. § 1252(a)(5), but that is incorrect. Plaintiffs challenge only DHS's post-removal-proceeding process for third-country removals. Because Plaintiffs' claims arise entirely after removal proceedings conclude, they are not part of an "order of removal" reviewable only on PFR. *Id.*; *see also id.* § 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"); *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) (explaining that final removal orders include only rulings by the IJ or BIA affecting the removal order's validity). Third-country removal challenges concern actions "taken after [the] removal proceedings before the IJ and BIA had ended" and thus "neither [§ 1252(a)(5) nor (b)(9)] applies." *Ibarra-Perez*, 154 F.4th at 1000.

Defendants suggest review is barred because third-country removal claims "aris[e] from an[] action taken" to remove Plaintiffs from the United States. 8 U.S.C. § 1252(b)(9); Br. 47. But the District Court correctly rejected that argument, relying on Supreme Court precedent holding that § 1252(b)(9) does not bar claims that do not seek review of removal orders. *See* Add.32-33 (citing

31

*Regents*, 591 U.S. at 19, and *Jennings*, 583 U.S. at 294); *see also Aguilar*, 510 F.3d at 11 (holding that § 1252(b)(9) does not reach "claims that are independent of, or collateral to, the removal process"—particularly those "that cannot effectively be handled through the available administrative process"); *Kong*, 62 F.4th at 613-14 ("the phrase 'arising from' is not 'infinitely elastic'" (citation omitted)). Defendants effectively ask this Court to abandon its prior holding that "1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar*, 510 F.3d at 11; *see* Br. 48 (acknowledging that "*Aguilar* interpreted these provisions as conditional on the availability of meaningful judicial review in a petition for review," but claiming that "the text of the statute does not support such a reading in this case").

As the District Court found, and contrary to Defendants' assertions, Br. 48, Plaintiffs had no opportunity to present protection claims in the underlying proceedings because DHS did not identify a third country until *after* the final removal orders were issued. *See* Add.25-33. Class members simply are not entitled to adjudication of claims regarding countries "nobody is trying to send them to." *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014) (quotation omitted); *see also* 8 C.F.R. §§ 1208.16(b), (c) (describing procedures for seeking relief from removal to the "proposed country of removal"); *see also* Add.29-30 (refuting Defendants' contention that the I-589 application requires making a fear-based

32

claim for non-identified countries).

Moreover, class members cannot address claims based on changed personal or country conditions in their underlying removal proceedings. Motions to reopen are limited to individuals in proceedings under 8 U.S.C. § 1229a, subject to time bars and number limits, do not provide an automatic stay, and may be denied even if an individual establishes a prima facie case for relief. *See* 8 U.S.C. §§ 1229a(c)(7)(A), (c)(7)(C)(i); 8 C.F.R. §§ 1003.2(a), (f), 1003.23(b)(1)(v), (3). Without knowing the country to which DHS may seek to remove them, individuals cannot establish prima facie eligibility for reopening. Add.30-32. And the statute permitting a motion to reopen at any time based on changed country conditions applies *only* to "the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. §§ 1003.2(c)(3)(ii), 1003.23(b)(4)(i).

Defendants rely on two extra-record unpublished immigration court decisions, submitted for the first time to this Court with their stay motion, in which IJs granted reopening *after* DHS identified the third country. Appx.592-96. Critically, Defendants did not previously attempt to rebut—or even challenge—the District Court's factual findings that motions to reopen are "routinely denied as speculative," are "simply not an option" for most class members, and present "substantive and logistical barriers to filing." *See D.V.D. I*, 778 F. Supp. 3d at 372-

33

74 & nn.20, 22. Indeed, the record establishes that class members cannot effectively or practically file motions without meaningful advance notice of the intended third-country, Appx.179 n.20; 94-99, 136-58. IJs continue to deny similar motions without considering the merits, *see* Pls.-Appellees' Opp'n to Dfs.-Appellants' Emergency Stay Mot. Exs. A-E.

Finally, Defendants' reliance on *United States v. Fausto* is misplaced. Br. 50. *Fausto* involved the Civil Service Reform Act of 1978, a statutory scheme where Congress clearly intended to preclude judicial review altogether for certain claims like the plaintiff's claims. 484 U.S. 439, 446-47, 454-55 (1988). But here, § 1252(b)(9) is a channeling provision, not a bar, and does not apply where claims cannot be meaningfully raised through a PFR. *Accord Aguilar*, 510 F.3d at 10-11. To the contrary, § 1252 reflects Congress's intent to permit judicial review of decisions denying withholding of removal or protection under CAT.

In sum, Defendants fail to meaningfully counter the District Court's findings that Plaintiffs cannot legally or practically raise their claims via PFR, and that § 1252(a)(5) and (b)(9) do not bar jurisdiction.

### c.      *Section 1252(a)(4) and FARRA § 2242(d) are inapposite.*

The District Court correctly concluded that neither 8 U.S.C. § 1252(a)(4) nor § 2242(d) of FARRA barred review. Add.33-36. Like § 1252(a)(5) and (b)(9), these provisions channel review of CAT claims to the courts of appeals in PFRs.

*See, e.g.*, *Nasrallah*, 590 U.S. at 582; *Ali v. Garland*, 33 F.4th 47, 54 (1st Cir. 2022). Plaintiffs' claims do not fall within these provisions. They are inapplicable to withholding claims under § 1231(b)(3) and inapposite to Plaintiffs' CAT-related claims because Plaintiffs seek *only* the statutory protections afforded by FARRA § 2242(a) with respect to third countries identified after removal proceedings concluded.

First, Plaintiffs' claims fall outside these provisions because Plaintiffs do not raise "any cause or claim under [CAT]" or "under [FARRA § 2242]." 8 U.S.C. § 1252(a)(4); FARRA § 2242(d). That is, Plaintiffs do not challenge any individual denial of CAT protection. Moreover, if "under CAT" were read that broadly it would preclude review of all claims that seek to enforce procedural, constitutional, or statutory limits on government action. Section 1252(a)(4) confirms that Congress intended some avenue for judicial review of denied CAT claims; here, Defendants would deny class members even the opportunity to present such claims, much less obtain review of them.

Second, Plaintiffs do not challenge "the regulations adopted to implement [CAT]." FARRA § 2242(d); Add.35-36. They seek to enforce them. Defendants provide no authority supporting their contention that Plaintiffs "seek additional procedures with respect to CAT beyond those prescribed . . . in the applicable regulations" and thus "necessarily" challenge the regulations. Br. 45. The District

35

Court properly rejected this unsubstantiated theory. Add.35-36; *see also Khouzam v. Att'y Gen.*, 549 F.3d 235, 258-59 & n.14 (3d Cir. 2008) ("[s]ince we find no reason to question the validity of the regulations," § 2242(d) does not apply)). It is irrelevant that CAT is a "non-self-executing treaty," Br. 44, because FARRA § 2242(d) is not implicated where "no challenge is made . . . to the FARRA regulations." *Saint Fort v. Ashcroft*, 329 F.3d 191, 201 (1st Cir. 2003); *see also Nasrallah*, 590 U.S. at 580.

Third, Plaintiffs do not challenge "any other determination made with respect to application of the policy [in FARRA § 2242(a)]." Defendants err in averring that Plaintiffs' claims fall under this clause. Br. 46. That language addresses only "judicial review of a determination respecting an application" for CAT protection, *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 491-92 (1991) (citation modified)—for example, an agency determination that a person is ineligible for, and thus cannot raise, a CAT claim, or a determination that a CAT grant is time-limited. It does not cover "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id*. at 492. Rather, such language simply "describ[es] the process of direct review of individual denials." *Id*.; *see also Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 63-64 (1993) (permitting challenges to agency policies notwithstanding a statute limiting judicial review of individual application denials).

36

Plaintiffs' claims could not have been raised earlier and thus are not "reviewable '*as part of* the review of a final order of removal' under 8 U.S.C. § 1252." *Nasrallah*, 590 U.S. at 582 (emphasis added) (quoting FARRA § 2242(d)). As the District Court aptly stated, "the entire thrust of this litigation is that Defendants have foreclosed Plaintiffs' ability to create an administrative record on which CAT claims might be based." Add.34; *see also id*. at 25-31 (detailing practical and legal impossibility of raising "hypothetical" or "speculative" third-country claims during removal proceedings). This holding is consistent with *Jennings* and *Aguilar*. *Jennings*, 583 U.S. at 295-96 (plurality of Alito, J.) (recognizing that limitation on review in § 1252(b)(9) must be read in light of whether meaningful judicial review remains available); *Aguilar*, 510 F.3d at 17 (holding that § 1252 does not bar pattern or practice claims or there would be "a total denial of meaningful judicial review").

Defendants suggest that the District Court's *prior enforcement* of CAT protections somehow transforms Plaintiffs' claims to arise "under CAT." Br. 43. But this ignores that the APA—not FARRA or CAT—provides Plaintiffs' cause of action, as the District Court found. Add.34. Defendants' suggested "better" reading of § 1252(a)(4), Br. 44, as applying "to any claim that depends on CAT or FARRA for relief," is simply wrong. It would grant Defendants license to violate congressional intent by refouling noncitizens "in danger of being subjected to

37

torture, regardless of whether the person is physically present in the United States." FARRA § 2242(a).[8] Likewise, that Congress made it incumbent on the "head of the appropriate agencies [to] prescribe regulations to implement the obligations [of CAT]," Br. 45, does not give the executive authority to ignore those regulations.

In sum, Plaintiffs' claims fall outside § 1252(a)(4) and FARRA § 2242(d) because they do not seek review of any CAT determination, challenge any CAT regulation, or assert entitlement to CAT protection. Instead, they bring a collateral APA challenge to agency policy and practice that make it impossible to invoke CAT protections at all. Because those practices arise after removal proceedings and cannot be reviewed through a PFR, Defendants' position would result in the complete foreclosure of judicial review—an outcome the Supreme Court has repeatedly rejected.

The District Court therefore correctly exercised jurisdiction over Plaintiffs' claims.

---

[8]    Defendants' reliance on *Ardestani v. INS*, 502 U.S. 129, 135 (1991), to broaden the reading of "under" is misplaced. Br. 44. *Ardestani* involved a fee-shifting statute, not a jurisdictional statute, and thus did not implicate the longstanding principle that limitations on judicial review must be construed narrowly. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (reaffirming the "strong presumption in favor of judicial review").

**B.**      **The District Court Properly Held that the Law Requires Both the Sequencing of Countries for Removal and an Evidentiary Hearing to Assess Fear-Based Claims to Third Countries.**

The District Court properly concluded that Congress, in safeguarding noncitizens from removal to countries where they may face persecution or torture, requires DHS to follow a specific sequence when executing removal orders. Add.44-47. DHS must first attempt removal to the country designated by the individual during proceedings (or by the IJ if none is chosen). 8 U.S.C. § 1231(b)(2)(A), (C); 8 C.F.R. § 1240.10(f). If that is not possible, DHS must turn to a country of which the person is a national or citizen. 8 U.S.C. § 1231(b)(2)(D). Only if those options fail may DHS consider a limited set of additional countries tied to the individual's past connections, such as birthplace or prior residence. *Id.* § 1231(b)(2)(E)(i)–(v). Removal to a country with little or no connection to the individual is permitted *only* when all other options are "impracticable, inadvisable, or impossible." *Id.* § 1231(b)(2)(E)(vi); *Jama*, 543 U.S. at 341-42; Limitations on the Detention Authority of the Immigration and Naturalization Service, 27 Op. O.L.C. 58, 76 n.11 (Feb. 20, 2003).

Likewise, the District Court properly recognized that the withholding provision and accompanying regulations require notice and an opportunity to present fear-based claims before an IJ prior to removal to a new country, and that

39

DHS's policy denies that opportunity. Add.50-52.[9] Although the District Court concluded that there "is less direct, affirmative textual support" for IJ hearings on CAT claims, Add.51, and thus went on to assess procedural due process, Plaintiffs presented textual support below, *see* Dkt. 194 at 13-14, which this Court is free to consider. *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435-36 (1924) (an appellee need not cross-appeal to support a decree on any ground in the record, even if it relies on matters the court overlooked or ignored); *Alicea v. Cincinnati Inc.*, 166 F.4th 245, 253 (1st Cir. 2026) (in reviewing grant of summary judgment, court "may affirm on any ground supported by the record").

Specifically, protection determinations must follow an evidentiary IJ hearing, *see* 8 U.S.C. § 1231(b)(3)(C); 8 C.F.R. §§ 208.16(b), (c)(2)-(c)(3), 1208.16(b), (c)(2), (c)(3), consistent with U.S. treaty obligations, *see* U.N. Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150; U.N. Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223;

---

[9] Defendants claim that the District Court "did not identify *any* text in Section 1231(b)(2) or 1231(b)(3) to create an entitlement," Br. 51-52, but removal authority under both provisions is "subject to [§ 1231(b)(3), the withholding provision]," as the District Court held. Add.50-51. And, contrary to Defendants' claim that "*the [government]*" writ large gets to decide whether a class member's "life or freedom" is threatened, Br. 53 (alterations in original), Congress assigned that responsibility to "the Attorney General" who has delegated this function to the IJs and BIA. *See* 8 C.F.R. §§ 208.16-.17, 1208.16-.17, 1208.31, 1240.1(a)(1)(iii). Congress never transferred the authority to make fear-based determinations to DHS or the DHS Secretary. *See* 6 U.S.C. § 557.

Refugee Act of 1980, Pub. L. 96-212, § 203(e), 94 Stat. 102, 107 (codified as amended at 8 U.S.C. § 1231(b)(3)); U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, 1465 U.N.T.S. 85, 114; FARRA § 2242(a); U.N. Committee Against Torture General Comment No. 4 on the Implementation of Art. 3 of the Convention in the Context of Art. 22, ¶12, U.N. Doc. CAT/C/GC/4 (Sept. 4, 2018) (General Comment) ("[T]he person at risk . . . should never be deported to another State where he/she may subsequently face deportation to a third State . . . where . . . he/she would be in danger of . . . torture."). The INA requires IJs to assess credibility and burden of proof in withholding cases. 8 U.S.C. §§ 1231(b)(3)(C), 1158(b)(1)(B)(ii)-(iii). Only IJs have authority to conduct such hearings. *Id*. § 1229a; *see also* 8 C.F.R. §§ 208.16(a), 1208.16(a), 208.16(c)(4).

Likewise, FARRA envisions that IJs will issue CAT decisions by channeling review of individual CAT "determination[s]" to the PFR process. FARRA § 2242(d). The regulations also require resolution of CAT claims through factfinding procedures at IJ hearings. *See* 8 C.F.R. §§ 208.16(c)(2)-(3), 1208.16(c)(2)-(3) (burden of proof, testimony, and evidence); *id*. §§ 208.17, 1208.17 (procedures for CAT protection). Even in DHS proceedings, reasonable fear claims must be referred to an IJ for full adjudication of the person's withholding or CAT claim. *Id*. §§ 208.31(e), 1208.31(e).

Defendants' claim that 8 U.S.C. § 1231(h) prohibited the District Court from declaring class members' rights, Br. 52, is unavailing. In *Zadvydas*, the Supreme Court held that § 1231(h) merely establishes that § 1231 itself does not create a cause of action; it does not render § 1231 unenforceable where another statute, here the APA, permits a challenge to agency actions that are "without statutory authority." 533 U.S. at 687-88; *see also Texas v. United States*, 515 F. Supp. 3d 627, 634 (S.D. Tex. 2021) (holding that "§ 1231(h) does not preclude Texas from challenging § 1231(a)(1)(A) under 5 U.S.C. § 706"). Defendants' argument that § 1231(h) bars claims regarding failure to comply with § 1231(b)'s sequencing requirements, *see* Br. 55-56, is similarly flawed.

In answer to the Court's second question regarding resolution of claims based solely on § 1231(b)(3)'s statutory analysis, Stay Order at 2, the law discussed above demonstrates that class members who are ineligible to apply for withholding and only eligible to apply for CAT are similarly entitled to notice and an evidentiary hearing to present their fear-based claims under the INA and FARRA. However, Plaintiffs submit that the Court also should affirm the District Court's procedural due process holding with respect to all class members because the Fifth Amendment provides a separate and sufficient basis for requiring meaningful notice and opportunity to be heard before removal to a country where an individual fears persecution or torture. Affirming on due process grounds would

ensure uniform application of these procedural protections and avoid leaving the District Court's due process analysis unresolved, which may impact subsequent review.

Defendants also err in making the remarkable claim that § 1231(b)(3) does not apply to third-country removals, Br. 54, notwithstanding that all of (b)(1) and (2) are "[s]ubject to paragraph (3)," 8 U.S.C. § 1231(b)(1), (b)(2). That position conflicts with the well-established rule that courts "cannot justify giving the *same* statutory provision a different meaning" based on the identity of the party invoking the statute's protections. *Clark v. Martinez*, 543 U.S. 371, 380 (2005). The District Court explained in detail why the statute *must* be read to require pre-removal notice and decision regarding a noncitizen's fear-based claim. Add.50-52; *see also supra*, Section VII.C. Moreover, as the District Court recognized, the statute is entitled to "the proper assumption of 'congressional solicitude for fair procedure, absent explicit statutory language to the contrary,'" Add.51 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 693 (1979)).[10] Ultimately, Defendants provide no authority for the logical outcome of their position, which is that despite the statute's plain text, third-country removals are not "[s]ubject to paragraph (3)," i.e., the withholding statute.

---

[10]    Defendants also expressly argue against the specific protections set forth in the PI in this case, Br. 55, but the District Court did not impose those protections and that decision is not before the Court.

43

Defendants also erroneously assert that third-country selection, and thus compliance with sequencing, "turn[s] on discretionary, foreign-policy, and national security considerations vested in the Executive's exclusive discretion." Br. 56-57. However, the executive has no discretion to violate statutory requirements. *See, e.g.*, *Payne v. Cent. Pac. Ry. Co.*, 255 U.S. 228, 236 (1921). Under 5 U.S.C. § 706, courts reviewing APA claims "shall decide all relevant questions of law, [and] interpret constitutional and statutory provisions," even if the agency did not articulate an interpretation. Here, the mandatory protections provided by sequencing are a legal question and an interpretation of § 1231(b)(2) and (b)(3). Because Defendants' policy applies only after sequencing occurs, proper sequencing is necessarily part of the agency action challenged. Because sequencing is an inherent component of statutory compliance, the District Court correctly declared that DHS must first seek removal to the designated and alternative countries and then to the country or countries of citizenship, as the statute mandates. Add.82; *see also Jama*, 543 U.S. at 341.[11]

Contrary to Defendants' assertion, Br. 58, Plaintiffs *do* challenge DHS's failure to comply with the sequencing requirements and thus have standing to raise

---

[11]   Defendants overstate their argument that exceptions in § 1231(b)(2)(A)-(E) depend on discretionary foreign-policy determinations. Br. 56. Section 1231(b)(2)(C)(iv), addressing a country's unwillingness to accept a noncitizen, rests on factual findings, not discretion, and most § 1231(b)(2)(C) provisions do not involve executive discretion.

this claim. Plaintiffs challenge Defendants' failure to comply with the statutory requirements of § 1231(b)(1)-(2), which include the sequencing requirements. *See* Appx.39-41 (providing the "statutory process for designating countries to which noncitizens may be removed"); Appx.58-59 (raising an APA challenge to Defendants' "policy and practice," as, inter alia, "short of statutory rights, and violat[ive of] the INA, . . . and implementing regulations"); Appx.62 (seeking declaratory relief for statutory, regulatory, and constitutional violations). DHS's failure to follow statutory sequencing both leads to improper third-country removals and impairs Plaintiffs' ability to raise fear-based claims beforehand. Dkt. 194 at 8-9. To the extent Defendants do not address sequencing in DHS's March 30 Memo, Br. 59, it is irrelevant—Plaintiffs' challenges are not limited to that Memo. *See id.* (addressing Defendants' "policy or practice" of third-country removals prior to adequate procedural protections); Appx.58-59, 62 (same).

Finally, contrary to Defendants' claim, Br. 57-58, Plaintiffs have standing to challenge this policy or practice. Failure to follow the statutory sequence causes a concrete and particularized injury to a legally protected interest in the ordered country-selection process that Congress conferred. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Brito*, 22 F.4th at 252-53. That sequence necessarily begins with, and is conditioned by, § 1231(b)(1) and (b)(2)'s "[s]ubject to paragraph (3)" reference, which operates as a backdrop to sequencing, imposing a

threshold constraint on DHS's authority and precluding removal to a country where the noncitizen faces persecution. When the government disregards that sequence, it deprives Plaintiffs of removal to a country earlier in the hierarchy (to which they may have a stronger connection), thereby creating a concrete risk of more harmful removal outcomes.

Defendants provide only an unsupported assertion that class members like Plaintiff D.V.D. who have not been granted protection from their designated country of removal cannot be removed to their designated countries. Br. 57-58. Importantly, class members have been removed to third countries without DHS first attempting removal to designated countries as required by statute, including Mexican, Vietnamese, and Laotian men deported to South Sudan and a Jamaican man deported to Eswatini despite a valid Jamaican passport. Appx. 290 ¶¶44-46, 331-32, 336; Ximena Bustillo, *The White House Is Deporting People to Countries They're Not From. Why?* NPR (June 1, 2025); *see also* Appx.214 ¶4 (Filipino man scheduled for deportation to the Philippines before DHS attempted to deport him to Libya).

**C.    The District Court Correctly Found Defendants' Policy Violates Plaintiffs' Due Process Rights.**

**1.    Plaintiffs are entitled to meaningful notice and opportunity to be heard prior to any third-country removal.**

The District Court's conclusion that class members have a right to

meaningful notice and an opportunity to be heard before any third-country removal

is well-grounded in the Due Process Clause, the INA, and implementing

regulations. Due process guarantees "timely and adequate notice" and "the

opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citation

modified). These protections apply in immigration proceedings. *Trump v. J.G.G.*,

604 U.S. 670, 673 (2025) (noncitizens must receive notice "within a reasonable

time and in such a manner as will allow [them] to actually seek . . . relief in the

proper venue"); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993). And they

specifically apply to class members, as "the Due Process Clause protects [a

noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693-94

(citation omitted).

Several principles govern what form of notice and opportunity to be heard is

sufficient. Regardless of prior removal proceedings, notice must be written, timely,

comprehensible (in a language the person understands), and provided to counsel, if

any. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)

(holding notice "must be such as one desirous of actually informing the [other

party] might reasonably adopt to accomplish it"); *id*. at 313 ("service of written

notice within the jurisdiction," is the "classic form of notice"); *Perez-Lastor v. INS*,

208 F.3d 773, 778 (9th Cir. 2000) ("If [a noncitizen] does not speak English,

deportation proceedings must be translated into a language the [noncitizen]

47

understands."); *Abdullah v. INS*, 184 F.3d 158, 164-65 (2d Cir. 1999) (agency must provide noncitizen claiming persecution interpretation in removal proceedings); 8 C.F.R. § 292.5(a) (requiring notice to counsel where regulations require notice to noncitizens). As for timing and content, the Supreme Court recently held that "notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster." *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025).

Courts recognized the need for adequate notice in third-country removal cases before Defendants' new policy. *See, e.g.*, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (holding failure to timely inform a noncitizen of potential third-country removal "violated a basic tenet of constitutional due process: that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."); *Kossov v. INS*, 132 F.3d 405, 408-09 (7th Cir. 1998) (rejecting as "fail[ing] miserably" the government's contention that last-minute notice at a hearing sufficed); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009-10 (W.D. Wash. 2019) (requiring "sufficient notice of a [third country] that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation"); *see also supra*, p.17 (noting Defendants' prior concessions that third-country removals require advance notice).

48

As for the opportunity to be heard, due process requires individualized hearings to assert statutory protection claims in which noncitizens can present evidence and witnesses before a neutral adjudicator. *See, e.g., Goldberg*, 397 U.S. at 268. Specifically, the withholding statute requires the "trier of fact," i.e., the IJ, to "determine whether the [noncitizen] has sustained [their] burden of proof, and . . . make credibility determinations." 8 U.S.C. § 1231(b)(3)(C). This language— which cross references the asylum statute's detailed burden and credibility provisions—and its implementing regulations unambiguously mandate an individualized hearing before an IJ. *See generally* 8 U.S.C. § 1229a; *see also* 8 C.F.R. §§ 208.16(a) (requiring a USCIS officer to refer withholding cases to an IJ to make final eligibility determinations), 1208.16(a) (same).

Likewise, CAT eligibility must be determined after an evidentiary hearing before an IJ. *See* 8 C.F.R. §§ 208.16(c)(2), (c)(3); 1208.16(c)(2), (c)(3); FARRA § 2242(a); General Comment ¶¶12-14. Notably, FARRA underscores the need for such a hearing by channeling review of individual CAT "determination[s]" to a PFR. FARRA § 2242(d); *see also id*. § 2242(a) (establishing U.S. policy prohibiting removal where "there are substantial grounds for believing *the person* would be in danger of being subjected to torture") (emphasis added); 8 C.F.R. §§ 1208.16(c)(4), 1208.17(b)(1); *see also generally* 8 U.S.C. § 1252(a)-(b).

49

**2.    The March 30 and July 9 Guidance are unlawful.**

### a.    *Diplomatic assurances are insufficient to safeguard Plaintiffs' rights to seek protection from persecution and torture.*

Defendants' policy ignores these requirements for individualized determinations and instead relies on blanket diplomatic assurances, providing no notice or an opportunity to be heard on both withholding and CAT claims. It also disregards that the agency's own regulations limit diplomatic assurances to termination of CAT grants, foreclosing them as an option in the context of withholding. *See* 8 C.F.R. §§ 208.18(c)(1), 1208.18(c)(1).

Blanket assurances cannot guarantee protection against persecution or torture by *non-state* actors. *See Paye v. Garland*, 109 F.4th 1, 11-12 (1st Cir. 2024) (recognizing non-state actors can be persecutors for purposes of withholding); *Escobar v. Garland*, 122 F.4th 465, 481 (1st Cir. 2024) (similar, for CAT). And even with respect to state actors, removals under this policy have led to indefinite detention and exposure to torture in countries such as South Sudan, El Salvador, Eswatini, and Ghana. And in too many cases, individuals have been subsequently sent to third countries where an IJ already found they are likely to be persecuted or tortured, resulting in chain refoulement, imprisonment without access to counsel, and other serious harms. *See, e.g.*, Eileen Sullivan et al., *Trump Wants to Make Deportation Deals. Autocrats Are Ready to Listen*, N.Y. Times (Apr. 4, 2026);

Appx.251-52, 329, 333, 337, 341, 345-59, 361-62, 365, 372, 377, 441, 443; *"You Have Arrived in Hell": Torture and Other Abuses Against Venezuelans in El Salvador's Mega Prison*, Hum. Rts. Watch & Cristosal (Nov. 12, 2025); *D.A. v. Noem*, 800 F.Supp.3d 43, 46-48 (D.D.C. 2025); Gerald Imray, *Court Rules in Favor of 4 Men Deported by the US to Africa and Denied Lawyer Meetings for 9 Months*, AP News (Apr. 10, 2026); *see also* Amici Brief of Center for Gender and Refugee Studies et al. These outcomes reflect the glaring inadequacy of blanket diplomatic assurances, as the countries most willing to provide them are led by "strongmen, autocrats, and human rights abusers," i.e., places where IJs have found that individuals face credible risks of torture or persecution. Sullivan et al*., supra*; *see also* Appx.466 (Senate Foreign Relations Committee Minority Report addressing "questionable deals" with "corrupt and unstable foreign governments").

Defendants claim that courts may not "second-guess" such assurances in either substance or scope, given their "foreign policy" ramifications." Br. 61 (quoting *Munaf v. Geren*, 553 U.S. 674, 702 (2008)). But as the District Court correctly found, Add.71-73, neither *Munaf* nor *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009), involved blanket assurances in immigration cases, nor do they address CAT. *See* Add.71-72 (noting *Munaf* was "careful to clarify that no [CAT] claim had been raised" and *Kiyemba* concluded the petitioners "could not raise

51

CAT claims in habeas").[12] Unlike in those cases, the executive here has not "determine[d] a country will not torture or persecute" a *particular* person, so whether such a determination would be "conclusive" is not at issue. Br. 60.

Defendants do not refute the District Court's conclusion that *Munaf* and *Kiyemba* are distinguishable. *Compare* Br. 60-62, *with* Add.71-73. Nor do they offer any rebuttal to the District Court's determination that their so-called "rule of non-inquiry" argument fails in the immigration context. Add.72-73 (discussing *Khouzam*). In *Khouzam*, the Third Circuit explained that the rule of non-inquiry traditionally applies only in the extradition context, not immigration, and noted it was an open question whether it would even apply there if a noncitizen raised a CAT claim. Add.73 (quoting 549 F.3d at 253-54).

Even where diplomatic assurances are permitted (in the CAT termination context), they must be individualized. Both FARRA and CAT regulations employ "a definite article with a singular noun." *See Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also* Oversight of the USA PATRIOT Act: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 10, 42 (2005) (testimony of Attorney

---

[12]    *Munaf* involved the transfer of two criminal defendants within Iraq for prosecution, reasoning that "[t]hose who commit crimes within a sovereign's territory may be transferred to that sovereign's government for prosecution." 553 U.S. at 700. *Kiyemba*, for its part, involved the "transfer of wartime [noncitizen] detainees," 561 F.3d at 519 (Kavanaugh, J., concurring), and addressed the use of *individualized* diplomatic assurances after an assessment of "whether a particular country is likely to torture a particular detainee," *id.* at 514.

General Alberto Gonzales that "each case" involving assurances "is very fact-specific"); Appx.125 (2008 testimony of State Department Legal Advisor John Bellinger explaining assurances are appropriate only where directed to "a particular individual" and where the U.S. government has "secur[ed] explicit, credible assurances that the individual will not be tortured"); Add.68-69 (holding FARRA and regulations require individual assurances).

Finally, Defendants erroneously claim the District Court issued a substantive due process ruling, Br. 61-62, but its analysis focused on procedural deficiencies: no notice, no opportunity to challenge diplomatic assurances, and no administrative record for review, Add.50-75. Defendants also claim that diplomatic assurances should be challenged via a PFR, Br. 62, but as the District Court found, "Defendants have adopted a policy that blocks the creation of (and thus the review of) an administrative record on which such claims could be based." Add.69 n.92. Plaintiffs did not file this action to avoid the PFR process; they filed it to *gain* access to that process, and the administrative process that precedes it.

b. ***Defendants' "notice" and screening process is constitutionally inadequate.***

Defendants dismiss as "conclusory" the District Court's finding that the remainder of their third-country removal policy—where no diplomatic assurances are involved—is "facially inadequate" and "not appropriate to the nature of the case." Br. 63 (citation modified). The District Court, however, grounded its

53

conclusion in the constitutional deficiency inherent in a process where, "[o]n as little as 24 hours' notice (or six hours' notice in 'exigent circumstances'), a noncitizen is expected to demonstrate full entitlement to their fear-based claim or, in other words, what would be expected of them in a full hearing on the merits." Add.64 n.86. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see also J.G.G.*, 604 U.S. at 673; *Gaffney v. Silk*, 488 F.2d 1248, 1250 (1st Cir. 1973). "[N]otice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster." *A.A.R.P.*, 605 U.S. at 95. Indeed, most class members cannot communicate with counsel in this short time, much less gather the evidence needed to demonstrate a viable protection claim. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 30 (1st Cir. 2021). *Cf. Goldberg*, 397 U.S. at 270-71.

CAT and withholding claims often involve extensive evidence—declarations, testimony, expert affidavits, and country conditions materials. *See, e.g., G.P. v. Garland*, No. 21-2002, 2023 WL 4536070, at *2 (1st Cir. July 13, 2023). It is impossible to compile and present evidence to meet this heightened

54

standard within hours.[13] That process plainly fails to provide "sufficient time and information to reasonably be able to contact counsel, file [supporting materials], and pursue appropriate relief." *A.A.R.P.*, 605 U.S. at 95.

Moreover, noncitizens who fail the screening can be deported without administrative appeal or judicial review. There is no appeal to an IJ, much less the BIA, and no pathway to judicial review, even though Congress provided such review for CAT determinations given the life-or-death stakes. *See Nasrallah*, 590 U.S. at 586 ("[I]t makes some sense that Congress would provide an opportunity for judicial review [of CAT claims] . . . ."). Courts repeatedly have found this aspect of the policy likely unlawful. *See, e.g.*, *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *8 (E.D. Cal. Nov. 6, 2025); *Cruz-Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025); *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025); *Sagastizado-Sanchez v. Noem*, 802 F.Supp.3d 992, 1012 (S.D. Tex. 2025).[14]

Defendants speculate that the District Court "presumably" would require

---

[13]    DHS itself has found "no evidence" that heightened-screening standards "resulted in more successful screening out of nonmeritorious claims." Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 87 Fed. Reg. 18078, 18092 (Mar. 29, 2022).

[14]    Even where noncitizens pass the screening, DHS may bypass IJ review by selecting another third country for removal—requiring the noncitizen to re-start the process. Add.64.

processes like those imposed in the PI. Br. 63. But the District Court dissolved the PI and did not reinstate those measures at summary judgment. Add.82-83. Defendants' objection that those processes relied on a "tainted and misguided *Mathews* analysis," Br. 63-64, is therefore irrelevant. Notably, the PI process was largely informed by proposals Defendants themselves suggested, Appx.211 n.46, and ordered after Defendants either failed to provide the court with viable alternatives, Appx.212 n.49, or violated the PI, Appx.248. What is certain, however, is that in practice, Defendants' "notice" and screening procedures do not provide meaningful notice nor opportunity to raise fear-based claims. *See generally* Amici Brief of Florence Project et al.; Appx.89-91.

### 3. All class members have the same basic due process rights.

Defendants erroneously invoke the entry-fiction doctrine to argue that class members lack the due process rights recognized by the District Court. Br. 64-66. This argument depends on three mistaken assumptions. First, Defendants claim that some class members are entitled only to rights expressly provided by Congress or the executive. But the Supreme Court has rejected this view. In *Zadvydas*, the Court reaffirmed that "the Due Process Clause protects [a noncitizen] subject to a final [removal] order," as "once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

56

unlawful, temporary, or permanent." 533 U.S. at 693-94; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (additional rights apply to all within the United States, regardless of entry legality).

Defendants rely on *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), claiming it limits due process for class members who have not been admitted. Br. 64-66. There, the petitioner—whom DHS immediately apprehended within 25 yards of the border—sought habeas review of his expedited removal order and denial of a credible fear interview. 591 U.S. at 115. But Defendants err in conflating persons who have not been admitted with those who are "at the threshold of initial entry," *Id*. at 107, and thus subject to the entry-fiction. *See also id.* at 140 (explaining that a noncitizen "who is detained shortly after unlawful entry cannot be said to have 'effected an entry'" in contrast to those discussed in *Zadvydas* who have entered, "whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693-94). Defendants effectively urge this Court to disregard *Zadvydas* and adopt a novel interpretation that would deny due process rights to anyone who entered unlawfully.

Moreover, *Thuraissigiam* concerned only rights "regarding admission" and the "plenary authority to decide which [noncitizens] to admit." 591 U.S. at 139-40. Here, Plaintiffs' claims do not challenge their removal orders or their removal proceedings, so their claims in no way implicate admissibility. Add.58 (citing

*Guzman Chavez*, 594 U.S. at 536); *id.* (only after admissibility is resolved and a removal order is entered can withholding of removal or CAT relief issue). Unlike the petitioner in *Thuraissigiam*, Plaintiffs seek protections post-entry, not a new opportunity to apply for admission. *Velasques Rincon v. Hyde*, 801 F.Supp.3d 101, 110-11 (D. Mass. 2025).[15]

Finally, Defendants incorrectly assume that neither the INA nor FARRA provides the protections Plaintiffs seek. In fact, the INA provides protections, including hearings, for withholding claims, while FARRA, its implementing regulations, and international law provide comparable protections for CAT claims. These statutory schemes require meaningful notice and opportunity to be heard, an issue Defendants fail to address. Even under Defendants' own theory, all class members' due process rights include "whatever the procedures authorized by Congress." Br. 64 *citing Thuraissigiam*, 591 U.S. at 139.

Accordingly, the Court should affirm that class members are uniformly "persons" within the United States entitled to procedural due process rights under

---

[15]    Defendants' remaining authorities, Br. 64-65, only reinforce the conclusion that the entry-fiction doctrine does not apply. *See* Add.55-59 (distinguishing *Kaplan v. Tod,* 267 U.S. 228 (1925), *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), *Landon v. Plasencia*, 459 U.S. 21 (1982), and *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892)). *Wong Yang Sung v. McGrath* confirms that where Congress provides specific procedures protecting noncitizens from removal to dangerous countries, procedural due process applies. 339 U.S. 33, 49 (1950) ("The constitutional requirement of procedural due process of law . . . permeates every valid enactment of [Congress].").

the Fifth Amendment. Add.59 (citation omitted).

### 4. The District Court properly identified the due process interest at issue.

Defendants claim the District Court misidentified the liberty interest involved, Br. 66-67, but it recognized the life-or-death interest in protection from persecution and/or torture. Add.61 (quoting *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922)). Procedural safeguards—notice, hearing, and opportunity to present claims—are required to protect this interest. *Meachum v. Fano*, 427 U.S. 215, 226 (1976) (providing that, for statutory rights to be meaningful, "the minimum requirements of procedural due process . . . must be observed"); *Califano*, 442 U.S. at 693 ("[T]his Court has been willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary.").

Defendants claim that, having identified the liberty interest as "not being removed to a country where [the noncitizen] will be tortured, it does not follow that they have a liberty interest in *applying* for or *asserting* that relief on their own terms." Br. 67. This underscores Defendants' position on removals that "as long as the Department doesn't already know that there's someone standing there waiting to shoot him, . . . that's fine." Add.3; Appx.601-03. Yet, in *A.A.R.P.* and *J.G.G.*, the Supreme Court held that before removal, noncitizens "must receive notice that they are subject to removal under the [Alien Enemies Act (AEA)] within a reasonable time and in such a manner as will allow them to actually seek habeas

59

relief " *A.A.R.P.*, 605 U.S. at 95; *J.G.G.*, 604 U.S. at 673 (same). Even where the AEA provides no specific procedures, due process requires meaningful notice and an opportunity to contest removal—a principle directly applicable here.

Finally, contrary to Defendants' assertion, Br. 68, the District Court correctly found that Defendants' policy creates widespread risk of persecution and torture, "extinguish[ing] valid challenges to third-country removal before those challenges can be raised." Add.74; *see also* Add.63-74 (explaining, at length, how claims cannot be raised in prior proceedings, how Defendants' policy provides no notice or does not ask about fear, and that even with notice, removal follows mere hours later).

## D.    The District Court Appropriately Certified the Class.

The District Court did not abuse its discretion in certifying the class. Rather, it correctly recognized that Plaintiffs present "a policy or practice that impacts all putative class members: failing to provide meaningful notice and opportunity to present a fear-based claim before executing removal to a third country." Appx.201. That uniform procedural failure presents a common legal question requiring a single resolution.

Defendants contend that Plaintiffs failed to satisfy the commonality and typicality requirements under Rule 23. Br. 69-74. But Defendants focus exclusively on Plaintiffs' constitutional claims and ignore their underlying

60

statutory claims, namely, that Defendants' policy and practice violate their statutory and regulatory rights to seek protection under the INA and FARRA. *Id.* Defendants failed to brief Rule 23 as to Plaintiffs' statutory claims and have therefore waived those arguments. In any event, both the statutory and due process claims arise from the same uniform policy and are appropriate for class treatment.

Commonality is satisfied when the "common contention" is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Here, Plaintiffs challenge a common policy or practice: Defendants' failure to provide noncitizens who have final removal orders with meaningful notice and opportunity to present a fear-based claim prior to deportation to a third country. *See* Appx.58-59, 62 ¶¶102-07. Defendants concede that "all class members purport to challenge the Guidance," Br. 72, but incorrectly assert that this shared challenge cannot be resolved in one stroke. It can: the legality of a uniform policy that fails to provide meaningful procedural protections is a question with a common answer for the entire class which courts may assess notwithstanding variation in individual outcomes.

The District Court correctly identified "'a single alleged practice'—Defendants' system-wide policy or practice of designating [noncitizens] for removal to a third country without first providing those [noncitizens] notice and an

61

opportunity to apply for protection from removal to that country—'that provides the basis for every class member's injury.'" Appx.196 (citations omitted). That conclusion directly answers Defendants' contention that individualized inquiries predominate: the injury is the denial of process itself, not the ultimate merits of any protection claim.

Defendants contend that the District Court erred by failing to distinguish between admitted and non-admitted noncitizens. Br. 69-70. But that distinction does not defeat commonality: All class members have final removal orders and are entitled to statutory protection against removal to countries where they face persecution or torture. They also all possess due process rights. *See supra,* Section VII.C. In *Zadvydas*, when similarly addressing individuals with final orders of removal, the Supreme Court plainly reaffirmed that "once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693. Thus, Defendants' reliance on entry-fiction cases, Br. 64-65, is misplaced because this class consists of individuals with final removal orders inside the United States, not applicants stopped at the border. Moreover, the statute—requiring meaningful due process protections—cannot be interpreted differently for different groups of noncitizens. *Clark*, 543 U.S. at 380.

62

Defendants are also wrong that due process claims cannot be litigated on a classwide basis. Br. 70-71. Although due process is flexible, the relevant question—whether Defendants' policy provides constitutionally sufficient notice and opportunity to be heard—applies to all class members. As the District Court explained, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Appx.196 n.35 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); citing *Mullane*, 339 U.S. at 314).

Where a policy is procedurally deficient, the *Mathews* balancing test provides a classwide answer. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 456-58, 461 (1st Cir. 2009) (remanding to certify a Rule 23(b)(2) class challenging, inter alia, a lack of notice); *Connor B. ex rel. Vigurs v. Patrick*, 774 F.3d 45, 60-61 (1st Cir. 2014) (certified class must undertake the *Mathews* balancing test to establish a procedural due process violation); *Barrows v. Becerra*, 24 F.4th 116, 132, 141-43 (2d Cir. 2022) (upholding Rule 23(b)(2) class and finding defendants violated class members' due process rights under the *Mathews* test). The Supreme Court confirmed that classwide relief is appropriate for procedural due process violations. In *A.A.R.P.*, after finding the notice defendants provided "does not pass muster," the Court granted relief to a putative class. 605 U.S. at 95; *see also J.G.G.*, 604 U.S. at 673 (finding putative class challenge must be brought in district of confinement as habeas but not questioning the propriety of class treatment).

63

Defendants argue the class is "calamitously overbroad" because it includes "repeatedly imagine[d] hypothetical class members that do not resemble the named plaintiffs." Br. 71. But Defendants' overbreadth argument ignores that the Court relied on the record's established facts, including from Plaintiff O.C.G. Add.26-27, 60-61, 82. Moreover, the court's hypotheticals in its summary judgment order did not require imagination as the District Court was well aware of class members removed to South Sudan without notice, Add.12-13, attempted removals to places like Libya with any real notice, Add.10, and other such removals, like gay class members facing removal to countries that criminalize homosexuality, *see, e.g.*, *Kumar*, 2025 WL 3204724. The relevant question is not whether every class member faces identical harm in the third country, but whether all are subjected to the same deficient process before any third country removal.

Defendants relatedly complain that the class improperly includes individuals who have not expressed fear of persecution and/or torture. Br. 71. But the policy itself prevents Defendants—and, indeed, class members themselves—from knowing whether class members have a basis for seeking protection from removal. Without meaningful advance notice of the third country and the opportunity to investigate, class members cannot assess or assert fear-based claims. If they are being removed to war-torn South Sudan, or if they are a gay man being removed to Uganda, they certainly have a basis to seek protection. But if instead they are being

64

removed to Canada, they may have no basis to seek protection. Under Defendants'

policy *all* class members are denied meaningful notice and an opportunity to apply

for protection. This constitutes a concrete procedural injury even if some

individuals would not ultimately apply for protection. Courts recognize that the

denial of required procedures can be an injury, regardless of the ultimate merits of

the underlying claim. *Spokeo, Inc.*, 578 U.S. at 41-42; *Lujan v. Defenders of

Wildlife*, 504 U.S. 555, 572 n.7 (1992); *Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir.

2021).

Defendants argue that because Plaintiffs O.C.G., E.F.D., and M.M., unlike

Plaintiff D.V.D., have been granted protection from removal to their country of

origin, they lack standing to allege that DHS might violate the sequencing

requirement in 8 U.S.C. § 1231(b)(2). Br. 73. But each named Plaintiff faces the

same risk: removal to a third country without meaningful notice or an opportunity

to seek protection. That shared risk is sufficient to establish standing. The statutory

framework further confirms that sequencing requirements are intertwined with

protection obligations. *See supra*, Section VII.B. The statute and regulations

expressly subject *all* sequencing—including third-country removals—to the

qualification that a person may not be removed to a country where they may face

persecution or torture, meaning all class members have a legally cognizable

interest in lawful procedures. *See* 8 U.S.C. § 1231(b)(1), (b)(2) ("Subject to

65

paragraph 3 [§ 1231(b)(3)]"); 8 C.F.R. § 1208.17(b)(2) (noncitizen granted CAT "may be removed at any time to another country where he or she is not likely to be tortured"). Thus, Defendants err in asserting that some named Plaintiffs lack standing to present the sequencing claims, which are integrally intertwined with the framework established under § 1231(b)(1)-(3) and 8 C.F.R. §§ 208.17-.18, 1208.17-.18.

Defendants also attempt to conflate persons who are subject to expedited removal under § 1225(b)(1) with those subject to reinstatement under § 1231(a)(5). But these are separate removal schemes, and the class does not encompass persons subject to § 1225(b)(1).[16] As such, Defendants incorrectly assert that § 1252(e)(1)(A) applies. Br. 72. That provision is limited to actions seeking "declaratory, injunctive, or other equitable relief in any action *pertaining to an order to exclude* [a noncitizen] in accordance with [8 U.S.C. § 1225(b)(1)]." *Id.* (emphasis added). No class member seeks any relief "pertaining to" an expedited removal order under § 1225(b)(1). It is of no consequence that a reinstatement order *might* be predicated on a prior expedited removal order; the reinstatement order is the operative order under the class definition. Notably, § 1252(e)(1)(A) does not bar review of reinstatement orders that are based on expedited removal

---

[16]    The class is limited to individuals with removal orders under 8 U.S.C. §§ 1228(b), 1229a, and 1231(a)(5). Appx.188. Notably, DHS's policy applies only to noncitizens with removal orders under these sections. *See* Add.1.

66

orders, *see, e.g.*, *Bonilla v. Garland*, 23 F.4th 61, 64 (1st Cir. 2022), let alone Plaintiffs' claims, which are even further removed from any expedited removal order.

Defendants argue that vacatur of the March 30 Memo was improper because some class members are ineligible for withholding under § 1231(b)(3). Br. 73-74. But Defendants ignore that all class members remain eligible for CAT protection, and Defendants' policy applies to CAT applicants as well. Add.2. Moreover, while Defendants critique "universal" vacatur here because some class members are ineligible for withholding, that is how vacatur works. *See, e.g.*, *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 837-42 (2024) (Kavanaugh, J., concurring) (explaining that vacatur acts on the agency action and applies beyond the parties to a case); *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) (same).

Finally, the District Court properly certified a class containing future class members. Defendants conflate damages classes—where future members are often excluded due to unripe injuries—with Rule 23(b)(2) injunctive classes, which commonly include future members to prevent systemic harm. Future class members will be subject to the same policy and the same denial of notice and opportunity to be heard, satisfying both commonality and adequacy. *See, e.g.*, *Reid v. Donelan*, 17 F.4th at 4 n.1 (noting additional class members who had "vested

67

into the class" under class definition that include future class members); *Connor B.*, 774 F.3d at 49 (certified class included "children who have been (or will be) placed in [state] custody"); *Brito*, 22 F.4th at 245 (noting certification of subclasses of noncitizens who had yet to receive bond hearings); *Barrows*, 24 F.4th at 130-33 & n.54 (affirming class definition including future class members). Because the declaratory relief sought is uniform for both current and future class members—requiring constitutionally adequate notice before third-country removal—Rule 23(b)(2) is particularly appropriate.

## VIII.  CONCLUSION

The Court should affirm the District Court's judgment.

Respectfully submitted,

s/ *Trina Realmuto*

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
Olivia Callan
NATIONAL IMMIGRATION
    LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Anwen Hughes
HUMAN RIGHTS FIRST
121 W. 36th St., PMB 520
New York, NY 10018
(212) 845-5244
hughesA@humanrightsfirst.org

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT
    RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs-Appellants and Class Members*

CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's extension thereof to 15,600 words because it contains 15,600 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the type-face requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it has been prepared using Microsoft Word for Microsoft 365 in proportionally spaced 14-point Times New Roman font.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance

CERTIFICATE OF SERVICE

I, Trina Realmuto, hereby certify that on April 13, 2026, I caused this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the Court's appellate CM/ECF system. Defendants-Appellants' counsel are registered CM/ECF users and will be served via the Notice of Docket Activity through this Court's CM/ECF system.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance