No. 26-1212

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

D.V.D.; M.M.; E.F.D.; O.C.G.,

Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE
MULLIN, Secretary, U.S. Department of Homeland Security (DHS);
PAMELA J. BONDI, United States Attorney General, ANTONE
MONIZ, Superintendent of the Plymouth County Correctional Facility,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Massachusetts

_____

**REPLY BRIEF FOR APPELLANTS**

_____

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH E. WELCH
*Counsel to the Assistant
Attorney General*

MATTHEW P. SEAMON
*Acting Assistant Director*

MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of
Justice, Civil Division
Office of Immigration
Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................1

ARGUMENT.................................................................................2

    I.  The District Court Lacked Jurisdiction. ..........................................2

       A.  The nationwide declaratory judgment and universal vacatur
          violated 8 U.S.C. §1252(f)(1)...........................................................2

       B.  Plaintiffs' claims are barred by 1252(g). ........................................6

       C.  Plaintiffs' claims are barred by the Foreign Affairs Reform and
          Restructuring Act...........................................................................11

       D.  Section 1252(a)(5) and (b)(9) Bar Plaintiffs' Claims.....................14

    II.  Plaintiffs' Claims Fail on the Merits..............................................18

       A.  Plaintiffs' Statutory Claim is Meritless. .....................................19

       B.  The District Court's Due Process Holding Was Error................25

       C.  Classwide Relief Was Improper....................................................33

       D.  The District Court's Order Does Not Require DHS to Provide
          Evidentiary Hearings Prior to Removal to a Third Country. .....38

CONCLUSION ............................................................................39

CERTIFICATE OF COMPLIANCE ........................................41

i

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*A.A.R.P. v. Trump,*
 605 U.S. 91 (2025) (per curiam) ........................................................ 29

*Aguilar v. ICE,*
 510 F.3d 1 (1st Cir. 2007) ................................................................ 15

*American Hosp. Ass'n v. NLRB,*
 499 U.S. 606 (1991) ........................................................................ 30

*Arevalo v. Ashcroft,*
 344 F.3d 1 (2003) ............................................................................ 26

*Bazile v. Garland,*
 76 F.4th 5 (1st Cir. 2023) ................................................................ 28

*Benham v. Lenox Sav. Bank,*
 292 F.3d 46 (1st Cir. 2002) .............................................................. 33

*Biden v. Texas,*
 597 U.S. 785 (2022) .......................................................................... 5

*Camarena v. Dir., ICE,*
 988 F.3d 1268 (11th Cir. 2021) ............................................... 7, 9, 10

*Carey v. Piphus,*
 435 U.S. 247 (1978) ........................................................................ 26

*Clark v. Martinez,*
 543 U.S. 371 (2005) ........................................................................ 23

*DaimlerChrysler Corp. v. Cuno,*
 547 U.S. 332 (2006) ........................................................................ 21

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.,*
 972 F.2d 453 (1st Cir. 1992) ............................................................ 33

*DHS v. Regents of the University of California,*
 591 U.S. 1 (2020) ........................................................................ 8, 11

*DHS v. Thuraissigiam,*
 591 U.S. 103 (2020) ........................................................................ 35

*E.F.L. v. Prim,*
   986 F.3d 959 (7th Cir. 2021) ...................................................... 8, 9, 10

*Figueroa v. Rivera,*
   147 F.3d 77 (1st Cir. 1998) .............................................................. 39

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,*
   554 U.S. 33 (2008) ............................................................................. 3

*Foster v. Townsley,*
   243 F.3d 210 (2001) .......................................................................... 9

*Garland v. Aleman Gonzalez,*
   596 U.S. 543 (2022) ................................................................... 3, 4, 6

*Gomez-Abrego v. Garland,*
   26 F.4th 39 (1st Cir. 2022) ............................................................. 28

*Hamama v. Adduci,*
   912 F.3d 869 (6th Cir. 2018) ....................................................... 9, 17

*Heckler v. Campbell,*
   461 U.S. 458 (1983) ........................................................................ 30

*Ibarra-Perez v. United States,*
   154 F.4th 989 (9th Cir. 2025) ......................................................... 10

*INS v. St. Cyr,*
   533 U.S. 289 (2001) .......................................................................... 8

*Khouzam v. Att'y Gen. of U.S.,*
   549 F.3d 235 (3d Cir. 2008) ........................................................... 32

*Kong v. United States*
   62 F.4th 608 (1st Cir. 2023) ........................................................... 10

*Kiyemba v. Obama,*
   561 F.3d 509 (D.C. Cir. 2009) ........................................................ 31

*Lujan v. Nat'l Wildlife Fed'n*
   497 U.S. 871 (1990) ........................................................................ 21

*Manguriu v. Lynch,*
   794 F.3d 119 (1st Cir. 2015) ........................................................... 17

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ................................................................. 16

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ...................................... 27, 28, 30, 35

*McNary v. Haitian Refugee Ctr.*,
   498 U.S. 479 (1991) ................................................................. 13

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
   583 U.S. 366 (2018) ................................................................... 3

*Morley Const. Co. v. Maryland Cas. Co.*,
   300 U.S. 185 (1937) ................................................................. 39

*Munaf v. Geren*,
   553 U.S. 674 (2008) ................................................................. 31

*Nielsen v. Preap*,
   586 U.S. 392 (2019) ................................................................... 5

*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................... 17, 28

*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ................................................................. 37

*Patel v. Garland*,
   596 U.S. 328 (2022) ................................................................... 8

*Rauda v. Jennings*,
   55 F.4th 773 (9th Cir. 2022) ................................................. 8, 9

*Reno v. Catholic Social Services, Inc.*,
   509 U.S. 43 (1993) ................................................................... 13

*Sadychov v. Holder*,
   565 F. App'x 648 (9th Cir. 2014) ........................................... 17

*Silva v. United States*,
   866 F.3d 938 (8th Cir. 2017) ................................................... 9

*Sustainability Inst. v. Trump*,
   165 F.4th 817 (4th Cir. 2026) ................................................. 16

*Tazu v. Att'y Gen. U.S.*,
   975 F.3d 292 (3d Cir. 2020) ........................................................ 9, 10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................ 21, 37

*Trump v. J.G.G.*,
   145 S. Ct. 1003 (2025) (per curiam) ................................................ 29

*Tsering v. U.S. Imm. & Customs Enf't.*,
   403 F. App'x. 339 (10th Cir. 2010) ...................................................... 9

*Vargas Panchi v. Garland*,
   125 F.4th 298 (1st Cir. 2025) .......................................................... 28

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011) ................................................................... 34

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ................................................................ 24, 35

## Statutes

5 U.S.C. §706 ........................................................................... 5
8 U.S.C. §1226 ......................................................................... 9
8 U.S.C. §1231 ................................................................... *passim*
8 U.S.C. §1252 ................................................................... *passim*
8 U.S.C. §1255a ....................................................................... 13
FARRA §2242 ................................................................ 11, 13, 14, 25

## Other

8 C.F.R. §208.16 ...................................................................... 25
8 C.F.R. §208.17 ...................................................................... 25
8 C.F.R. §1208.18 ................................................................. 30-31
8 C.F.R. §1240.12 ...................................................................... 7
Federal Rule of Appellate Procedure 32 ............................................... 41

## INTRODUCTION

This Court should reverse the district court's universal vacatur and classwide declaratory judgment, both of which usurp the Executive Branch's authority to execute valid removal orders to third countries. Plaintiffs disregard multiple jurisdictional bars, fail to establish that DHS's procedures are constitutionally inadequate, and provide no legal basis for the additional procedures invented by the district court for a class that includes many aliens who lack entitlement to procedures beyond those provided by the political branches.

Plaintiffs reprise the district court's atextual arguments for evading the bars Congress enacted to restrict judicial review. Most egregiously, even though the district court indisputably "restrain[ed] the operation" of third-country removals on a behalf of a nationwide class, 8 U.S.C. §1252(f)(1), necessitating a stay by this Court, Plaintiffs insist that §1252(f)(1) does not apply because the Court merely "vacate[d] and set aside" the DHS Guidance and did not technically *enjoin* the Government from following it. But the bar is not limited to orders styled as injunctions, and Plaintiffs do not meaningfully dispute that the order's whole point, and its practical effect, is to restrain the operation of third

1

country removals under 8 U.S.C. §1231(b) on a classwide basis. Plaintiffs fare no better in arguing that the declaratory judgment does not run afoul of the other jurisdictional bars the district court trampled—both those that generally strip jurisdiction over freestanding suits arising from actions taken to execute removal orders and those that preclude challenges specifically to the government's implementation of CAT.

The Court should reverse even if it reaches the merits. Plaintiffs fail to distinguish their statutory and due process claims, to apply the correct legal standard to each, to specify the relief they seek, and to identify the class members purportedly entitled to relief under their various legal theories. Properly understood, the applicable statutes and the Constitution permit the procedures in the DHS Guidance. And the highly specific, individualized circumstances the district court and Plaintiffs use to justify their position cannot be addressed in this sprawling class action.

## ARGUMENT

### I.  The District Court Lacked Jurisdiction.

#### A. The nationwide declaratory judgment and universal vacatur violated 8 U.S.C. §1252(f)(1).

Plaintiffs assert that because §1252(f)(1) does not include the words

"vacate or set aside," or "declare," the relief ordered below complies with the statute. Pl.Br.30-31. But Congress need not list every conceivable action verb to make a jurisdictional bar effective. Plaintiffs also point to §1252(f)(1)'s title, "Limit on injunctive relief," but "section headings cannot limit the plain meaning of a statutory text," and §1252(f)(1) is inescapably broader than injunctions. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018); *see also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008). Indeed, the Supreme Court already interpreted the statute to mean that courts "enjoin or restrain" the operation of a covered statute when they "require officials to take actions that (in the Government's view) are not required by [the statute] and to refrain from actions that (again in the Government's view) are allowed by [the statute]." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022). Here, the district court's vacatur clearly directs officials to "refrain" from following the DHS Guidance, which is how DHS operates §1231(b) and is (in the government's view) allowed by the statute.

In response, Plaintiffs argue that vacatur doesn't violate §1252(f)(1) because it "acts upon the agency action, not on the officials who implement it." Pl.Br.33-34. Plaintiffs appear to place much emphasis on

3

the Supreme Court's references to agency "officials" in *Aleman Gonzalez*. 596 U.S. at 549-551, but nothing about §1252(f)(1) suggests that it is limited to orders against agency *officials*. As the Supreme Court explained, it is the "government's operation" of a covered statute (*i.e.*, agency action) that is protected from non-individualized judicial interference, not just agency *officials'* implementation of the law. *Id.* at 544 (reversing the injunctions because they "interfere with the Government's efforts to operate §1231"). Put differently, relief vacating the guidance effectively requires officials to cease applying the guidance; surely Plaintiffs would vigorously assert non-compliance with the district court's order if DHS officials continued applying the vacated guidance. So their claim that the vacatur does not "require" officials to do anything is implausible.

Similarly, the district court's declaration that class members have the right to meaningful notice and opportunity to raise a country-specific fear claim before removal to any third country is clearly intended to "require" officials to take actions that (in the government's view) are not required by the statute. Because the court's relief "thus interfere[s] with the Government's efforts to operate §1231[b]," *id.*, on a classwide basis,

4

it violates §1252(f)(1)'s prohibition on non-individualized relief.

Plaintiffs cite dicta from *Nielsen v. Preap*, 586 U.S. 392 (2019), to argue that the Supreme Court already held that declaratory relief cannot run afoul of §1252(f)(1). Pl.Br.31-32. They similarly state that the Supreme Court reached the merits in *Biden v. Texas* because the Court concluded that declaratory relief remained available. *Id.* 32. But this misreads the Court's opinions. In *Texas,* after asking the parties to brief "whether [§1252(f)(1)'s] limitation extends to other specific remedies, such as declaratory relief and relief under section 706 of the APA," the Court declined to express a view on those questions. 597 U.S. 785, 801 n.4 (2022). The Court could avoid those questions and reach the merits because §1252(f)(1) limits the authority to grant relief but does not concern subject matter jurisdiction over *claims*, and regardless, §1252(f)(1) does not apply to the Supreme Court. *Id.* at 800-01. And, as Plaintiffs concede, the Court in *Aleman Gonzalez* pointedly declined to decide whether §1252(f)(1) reaches "any other form of relief that is 'practically similar to an injunction,' including class-wide declaratory relief." Pl.Br.31-32 (citing *Aleman,* 596 U.S. at 551 n.2). Plaintiffs do not explain why the Court would twice explicitly decline to resolve the issue

5

in 2022 if *Preap* had already resolved it in 2019.

Finally, Plaintiffs cite the *Aleman Gonzalez* dissent to argue that §1252(f)(1) could leave many aliens "with no practical remedy whatsoever against clear violations by the Executive Branch." 596 U.S. at 572 (Sotomayor, J., dissenting in part). But Congress clearly set out to restrict judicial review in lower courts, and it avoided Plaintiffs' parade of horribles by preserving lower-court review in individual cases and preserving the Supreme Court's review. The relief below violates §1252(f)(1) and should be reversed on that basis alone.

### B. Plaintiffs' claims are barred by 1252(g).

Section 1252(g) also squarely bars review of Plaintiffs' claims. Plaintiffs' defense of the district court's creation of "discretionary" and "policy challenge" exceptions to the phrase "any cause or claim" rewrites the statute's plain text by misreading Supreme Court precedent—which in fact supports Defendants.

First, Plaintiffs contend that their "nondiscretionary" exception does not depend on the merits of their claim. Rather, Plaintiffs contend that they need only *allege*—not *prove*—that DHS is violating the law to evade §1252(g). Courts of appeals have consistently rejected such evasive

techniques. *See infra* 8. As the Eleventh Circuit aptly noted, courts lack "jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order." *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021).

Next, Plaintiffs fail to grapple with §1252(g)'s text. Nowhere do Plaintiffs explain how a suit challenging the removal of aliens to third countries is not one "arising from" the Government's "action" to "execute removal orders against an[] alien." 8 U.S.C. §1252(g). The closest they come is to suggest in a footnote that they do not challenge the execution of their removal orders because they do not have a removal order *to a third country*. Pl.Br.35 n5. That is incorrect. All class members have removal orders that can be executed to a third country, because §1231(b)(2) and 8 C.F.R. §1240.12(d) authorize removal to third countries even when not expressly specified in the removal order.

Like the district court, Plaintiffs say §1252(g) is somehow limited to "discretionary decisions" and does not apply to "policy challenges," thereby exempting their challenge to the DHS Guidance. Pl.Br.35. But as multiple courts of appeals have recognized, "the distinction between DHS's 'discretionary decisions' and its 'legal authority' to execute

7

removal orders is illusory," wholly unmoored from the statutory text. *E.F.L.* v. *Prim*, 986 F.3d 959, 965 (7th Cir. 2021); *see also, e.g.*, *Rauda* v. *Jennings*, 55 F.4th 773, 778 (9th Cir. 2022). And merely calling a challenge a "policy challenge" collateral to the execution of a removal order does not transform it into the challenge presented in *DHS v. Regents of the University of California*, 591 U.S. 1 (2020). Def.Br.49-50.

Plaintiffs' attempt (at 36-37) to root their atextual position in *AADC* is unavailing. There, in describing §1252(g), the Court explained that it made sense for Congress to single out three acts that involved executive "discretion." *Id.* at 483-84. But at no point did the Court, as Plaintiffs audaciously claim, "expressly h[o]ld that §1252(g) does not bar challenges to mandatory, nondiscretionary decisions or actions." Pl.Br.36. Nor would it have, because the alien plaintiff in *AADC* raised a constitutional challenge just as Plaintiffs do here. *Id.* at 479. The footnote in *INS v. St. Cyr,* 533 U.S. 289, 311 (2001), likewise offers Plaintiffs no help: it just refers back to *AADC*. And the Supreme Court has since expressly declined to read a discretionary limit into the word "any" in another provision of §1252. *Patel v. Garland,* 596 U.S. 328, 338 (2022).

Plaintiffs also ignore that Congress crafted *other* review bars that

8

shield only discretionary judgments—including in §1252—but chose not to use similar language in subsection (g). *See, e.g.,* 8 U.S.C. § 1252(a)(2)(B)(ii), *id.* §1226(e). That is why other circuits have widely rejected attempts to limit this bar to discretionary actions, even when an alien pressing a constitutional claim seeks to pause removal while he seeks other immigration relief. *See, e.g., Rauda,* 55 F.4th at 778; *Camarena,* 988 F.3d at 1274; *E.F.L. v. Prim,* 986 F.3d at 964-65; *Tazu v. Att'y Gen. U.S.,* 975 F.3d 292, 297 (3d Cir. 2020); *Hamama* v. *Adduci,* 912 F.3d 869, 874-77 (6th Cir. 2018), *cert. denied,* 141 S. Ct. 188 (2020); *Silva v. United States,* 866 F.3d 938, 941 (8th Cir. 2017); *Foster v. Townsley,* 243 F.3d 210, 214 (2001); *Tsering v. U.S. Imm. & Customs Enf't.,* 403 F. App'x. 339, 342-43 (10th Cir. 2010).

These cases cannot be distinguished. In *Rauda* and *Hamama,* the alien plaintiffs sought to "enforce" the same protections against torture as Plaintiffs do here to prevent their removal while they litigated fear claims that allegedly could not have been raised earlier. *Rauda,* 55 F.4th at 776 (describing how the plaintiff moved to reopen his proceedings to pursue his CAT claim); *Hamama,* 912 F.3d at 873 (describing how the plaintiffs sought a stay while they asserted fear claims). And in *Tazu,*

*Camarena,* and *E.F.L.,* the plaintiffs sought to "enforce" a regulation or statute that they claimed created a procedural due process right to remain in the United States temporarily. *Camarena,* 988 F.3d at 1272-73; *E.F.L.,* 986 F.3d at 962; *Tazu,* 975 F.3d at 295-96.

*Ibarra-Perez v. United States,* 154 F.4th 989 (9th Cir. 2025) (cited at Pl.Br.38) does not move the needle; it is not binding on this Court, conflicts with the Ninth Circuit's decision in *Rauda,* is unpersuasive, addressed *tort* claims, and is not yet final. Petition for Rehearing En Banc, *Ibarra-Perez v. United States*, No. 24-631 (9th Cir. Mar. 12, 2026).

Plaintiffs once again rely (at 38-39) on *Kong v. United States,* 62 F.4th 608, 616-17 (1st Cir. 2023). But *Kong* turned on the Court's determination that Kong challenged his *detention,* not his *removal.* It is thus of no help to Plaintiffs, who seek procedures that would interfere with actions "integral to the act of executing a removal order," *id.* Indeed, for many class members, removal to a third country is the *only* way their removal orders may be executed.[1]

---

[1] Plaintiffs' contention (at 40) that they have not "sought a stay of removal" should fool no one. *See, e.g.*, ECF 7 at 14, 20 (seeking to "stop deportation," "stay[] removal," and "enjoin…removal").

10

Plaintiffs' defense of the district court's novel, "policy challenge" exception to §1252(g) based on *Regents*, 591 U.S. at 1, likewise fails. Because DACA was "more than just a non-enforcement policy," and "access to the[] types of benefits" DACA conveyed "is an interest Courts are often called upon to protect," the fact that a narrow aspect of the program related to removal orders did not mean the broader APA challenges raised there fell within §1252(g)'s scope. *Id.* Plaintiffs' challenge, meanwhile, begins and ends with the execution of their removal orders. There is simply no narrow construction of either the exceptions the district court found that would not render §1252(g) meaningless; as many other courts of appeals have done in this arena, this Court should reverse.

## C. Plaintiffs' claims are barred by the Foreign Affairs Reform and Restructuring Act.

Independently, the district court lacked jurisdiction as to Plaintiffs' CAT claims under FARRA §2242(d). Plaintiffs argue that FARRA's restrictions on judicial review do not apply because they do not raise any cause or claim "under" CAT or FARRA. That's new. Mere months ago, before this same Court, they argued the opposite—that §1252(f)(1) did not preclude the district court's preliminary injunction in this case

11

precisely because their claims *did* "arise under" under CAT and FARRA. Pl.Br.25, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. Nov. 19, 2025) (arguing that §1252(f)(1) "does not bar the injunctive relief sought under FARRA"); *id.* at 27 (asserting that the "PI enforces FARRA and CAT procedures"); *id.* at 30 (describing their claims as "claims under FARRA").

Regardless, Plaintiffs' FARRA arguments fail. Plaintiffs first argue that they do not challenge the regulations adopted to implement CAT and instead "seek to enforce them." Pl.Br.45. But Plaintiffs have never identified what regulation they believe requires the relief the district court ordered. Nor could they, because the CAT implementing regulations simply do not mandate any specific procedures in the context of third country removals. In reality, Plaintiffs' grievance is that the government has not promulgated regulations to require a new round of proceedings before an IJ prior to removal to a third country. But a challenge to what the regulations do *not* contain is still a "challenge to the regulations" as assuredly as a challenge to what the regulations *do* contain.

Plaintiffs next argue that FARRA's claim-channeling and jurisdiction-stripping provisions apply only to judicial review of

12

individual applications for CAT protection, not "general collateral challenges to unconstitutional practices and policies." Pl.Br.46. The text forecloses that argument by broadly limiting "jurisdiction to consider or review claims raised under [CAT], or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal." FARRA §2242(d).

Plaintiffs also rely on *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479 (1991), but *McNary* involved a different statute that channeled judicial review of "*a determination* respecting *an application* for adjustment of status." 498 U.S. at 491 (emphasis added). *McNary* concluded that the statute's "reference to 'a determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions," so it only channeled review of "an individual application" for protection. *Id.* at 492.[2]

But §2242(d) uses different language. It does not apply solely to *a singular determination* respecting *an application* for protection under

---

[2] The same is true of the other case Plaintiffs cite, *Reno v. Catholic Social Services, Inc.*, which involved "determination[s] respecting an application for adjustment of status," 8 U.S.C. §1255a(f)(1), and specified that "a denial" of such adjustment may be reviewed "only in the . . . review of an order of deportation" in the courts of appeals. 509 U.S. 43, 53-54 (1993).

CAT. Instead, it broadly limits judicial review of both "claims raised under" CAT and "any other determination made with respect to *the application* of" the United States' "policy not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." FARRA §2242(a), (d). The references to "the application" of the CAT "policy" make clear that, unlike the statute at issue in *McNary*, FARRA's limitation on review encompasses challenges to general agency practices and policies and is not limited to individual applications. The jurisdictional bar is so all-encompassing that Congress needed to expressly except individual claims brought in a petition for review. FARRA §2242(d). Accordingly, §2242(d) clearly deprived the district court of jurisdiction to review Plaintiffs' CAT-related claims, which are a challenge to Defendants' application of the CAT "policy" in the third-country removal context and not raised in a petition for review.

### D. Section 1252(a)(5) and (b)(9) Bar Plaintiffs' Claims.

Plaintiffs likewise fail to escape §1252(a)(5) and (b)(9), which bar federal district courts from reviewing any suit "arising from an[] action

14

taken or proceeding brought to remove an alien," 8 U.S.C. §1252(b)(9)—instead establishing courts of appeals considering a petition for review of a removal order as the "sole and exclusive" forum for such a claim. *Id.* §1252(a)(5).

Plaintiffs insist that their claims fall outside this bar but fail to grapple with the statutory text. Citing only §1252(a)(5), Plaintiffs argue (at 41) that because their claims arose after their removal proceedings ended, neither section bars their claims. That argument is inconsistent with *Augilar* in which this Court said:"nothing in the statute limits its reach to claims arising from extant removal proceedings …" *Aguilar v. ICE,* 510 F.3d 1, 10 (1st Cir. 2007). It is also inconsistent with the statute's text because it would render the word 'action' superfluous and effectively excise it from the statute." *Id.* Where the claim can "effectively be handled through the available administrative process," §1252(b)(9) bars district court review. *Id.* at 11.

Plaintiffs' reliance on *Ibarra-Perez,* in which the government has petitioned for rehearing en banc, does nothing for their argument. That an alien may not be able to rapidly obtain a preferred remedy—like a preliminary injunction or stay of removal—or that immigration judges

15

may have discretion over whether to grant the motion to reopen does not change that analysis. This Court is bound by *Aguilar,* which dictates that claims that can be raised through the administrative process *must* be raised *only* through the administrative process. And that is plainly correct. *See Sustainability Inst. v. Trump*, 165 F.4th 817, 828 n.7 (4th Cir. 2026); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) ("[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter.").

Plaintiffs do not dispute that some class members have had their proceedings reopened to assert third-country removal claims which, under this Court's precedent, bars this Court from exercising jurisdiction over those class members' claims and demonstrates that Plaintiffs' argument that they lack access to administrative review of their fear

claims is overstated.[3] "Easy" or "convenient" is not the standard espoused in §1252(b)(9) or by this Court.[4]

Moreover, it is simply untrue that district court review must be available because no administrative process is conveniently available to Plaintiffs. Congress has provided aliens with a motion-to-reopen process should CAT claims arise after immigration proceedings conclude. *See, e.g., Hamama*, 912 F.3d at 876; *cf. Nken v. Holder*, 556 U.S. 418, 435 (2009) ("Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return."). Plaintiffs may wish that these procedures were even more generous. But that policy objection cannot vest the district court with jurisdiction in the teeth of Congress's contrary decision.

---

[3] Defendants have challenged Plaintiffs' allegations regarding the ability to file motions to reopen. *See, e.g.,* ECF No. 231 at 11-12. This court can also take judicial notice of the administrative decisions granting class members' motions to reopen. *Manguriu v. Lynch*, 794 F.3d 119, 121 (1st Cir. 2015).

[4] Plaintiffs argue aliens do not have a right to assert fear claims regarding countries "nobody is trying to send them to." Pl.Br.42 (citing *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014)). But the frequency of third-country removal makes it speculative to suggest, absent express assurance from DHS, that "nobody is trying to send" an alien to a third country.

## II.    Plaintiffs' Claims Fail on the Merits.

Throughout this case, Plaintiffs have repeatedly failed to distinguish their statutory and due process claims, apply the correct legal standard attendant on each claim, clarify the specific relief they seek, and identify the members of their class that are purportedly entitled to relief under their distinct legal theories. Both Plaintiffs' and the district court's merits analysis suffer from the same fundamental legal error: it starts with the desired legal outcome and works backwards to construct a legal analysis that justifies that pre-ordained conclusion. Worse still, Plaintiffs' brief goes beyond the errors committed by the district court by (1) mischaracterizing the district court's order as requiring an "evidentiary hearing" before an immigration judge although the district court limited its order to requiring notice and opportunity to "raise" a fear claim and (2) asserting that "FARRA, its implementing regulations, and international law" requires the government to provide a full evidentiary hearing.

But the procedures provided by DHS's Guidance are lawful under both statutory and constitutional law. That Plaintiffs and the district court plainly prefer different procedures as a policy matter is irrelevant.

18

And the highly specific and individualized circumstances the district court and Plaintiffs use to justify their position, regardless of their merit, cannot be addressed in this nationwide class action.

### A. Plaintiffs' Statutory Claim is Meritless.

Plaintiffs' statutory argument (at 49-56) is three-fold. First, Plaintiffs contend (at 49) that the district court's declaration with regard to Section 1231(b)(2)'s sequencing requirements was proper without pointing to any allegation in their complaint demonstrating an injury for the named Plaintiffs or class. Second, Plaintiffs argue (at 50) that the withholding-of-removal statute (§1231(b)(3)) requires the government to provide aliens with evidentiary hearings prior to third-country removal, even though the statute says no such thing. Third, Plaintiffs assert that FARRA, its implementing regulations, and international law (at 50-51) require the same—even though the district court properly rejected that argument.

### i.   *The District Court Erred by Issuing a Declaration Regarding Section 1231(b)(2).*

The district court had no basis to issue a declaration regarding the sequencing provisions of §1231(b)(2). Plaintiffs cannot fairly claim that their complaint challenged any policy or practice related to the

§1231(b)(2)'s sequencing requirements. They never alleged in their complaint that DHS violated the sequencing provisions for any named class representative or even any individual absent class member—let alone identified or challenged a policy or practice of violations applicable to the class a whole. The DHS Guidance is not such a policy: Plaintiffs concede that the guidance "applies only after sequencing occurs." Pl.Br.54. The complaint's general allegation that Defendants are violating the INA and Section 1231(b)(2) referred to Defendants' policy regarding effectuating third-country removals once a country was identified—not the procedures for selecting a country for removal. Plaintiffs are thus wrong (at 54) that "proper sequencing is necessarily part of the agency action [DHS Guidance] challenged" and that they thus necessarily challenged it. By analogy, the guidance also "applies only after" (Pl.Br.54) a *removal order* is entered, but that does not mean that Plaintiffs can belatedly claim to challenge procedures for entering removal orders. To the extent Plaintiffs claim their challenge sweeps beyond the DHS Guidance, they have identified no other agency action they challenge, and "systemic improvement" of DHS's administration of third-country removals, unmoored from a discrete agency action, is

20

anathema to the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990).

Regardless, Plaintiffs utterly fail to identify a class representative who has suffered or will imminently suffer an alleged violation of the sequencing statute, let alone demonstrate that all members of the class are likely to suffer such an injury. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing separately for each form of relief sought"). They do not contend, even now, that any named plaintiff could be removed to his home country—a pre-requisite to demonstrating an injury from the alleged violation of Section 1231(b)(2)'s sequencing provisions. *See* Pl.Br.46 (failing to allege D.V.D. can be removed to home country). Whether Plaintiffs could have attempted to cure this threshold issue below is of no consequence. They did not.

Plaintiffs are wrong on the merits, too. Pl.Br.53-54 & n.11. Each sequencing provision involves discretion committed to the Executive Branch's judgment. Section 1231(b)(2)(C) permits disregarding an alien's

21

country designation if it "decides that removing the alien to the designated country is prejudicial to the United States. Section 1231(b)(2)(D)(i) permits disregarding another country if the country "does not inform the [Secretary]" it will accept the alien "in a time the [Secretary] decides is reasonable." And §1231(b)(2)(E)(vii) permits disregarding the countries listed in (i)-(vi) if "impracticable, inadvisable, or impossible." Plaintiffs make no argument about the first and third criteria, and they are wrong (Pl.Br.44 n.11) that the second criteria turns solely "on factual findings," as courts cannot second-guess the Executive Branch's evaluation of either the contents or timeliness of its communications with foreign governments.

### ii.  The Withholding Statute Does Not Require Additional Procedures.

Plaintiffs are incorrect that they are entitled to a new round of removal proceedings because §1231(b)(2) provides that it is "subject to" § 1231(b)(3) (the withholding statute). Rather, §1231(b)(2) is "subject to" the withholding statute in the sense that aliens may not be removed to a country where the Attorney General has "decid[ed] that the alien's life or freedom would be threatened." 8 U.S.C. §1231(b)(2)(1), (b)(3)(A). It means nothing more and nothing less than that DHS is prohibited from

removing an alien to a country from which the alien has been granted withholding. The proviso thus clarifies that a grant of withholding continues to apply in a third-country removal scenario. But it says nothing whatsoever about what procedures must be applied when making withholding-of-removal determinations in a third-country removal scenario.

Plaintiffs have no response to Defendants' argument that because Section 1231(b)(3)(C) was added in 2005, *see* Pub. L. No. 109-13, Div. B, Tit. I, § 101(c), 119 Stat. 303, it obviously refers to proceedings under the existing withholding-of-removal regulations, which even the district court agrees do not apply to third country removals. Instead, Plaintiffs erroneously state (at 54) that Defendants claim "§1231(b)(3) does not apply to third-country removals" in an attempt to argue that Defendants' position runs afoul of *Clark v. Martinez,* 543 U.S. 371, 380 (2005). As explained, an alien granted withholding of removal to *any* country under §1231(b)(3)—not just the designated country or country listed on the removal order—cannot be removed to that country. Section 1231(b)(3) thus applies to third country removals; it just does not require the

23

procedures Plaintiffs claim.[5]

In all events, §1231(h) precludes Plaintiffs' attempt to ground additional procedures in §1231(b)(3), and they are wrong (at 52) that *Zadvydas* v. *Davis*, 533 U.S. 678 (2001), holds otherwise. Def.Br.60. In *Zadvydas*, aliens did not themselves seek to enforce any "right or benefit" under §1231, and the Supreme Court thus explained that §1231(h) "does not deprive an alien of the right to rely on [the habeas statute] to challenge detention that is without statutory authority," despite the government's attempt to invoke §1231 as the source of detention authority. *Id.* at 688. Nothing in *Zadvydas* suggests that §1231(h) would permit a plaintiff to assert rights supposedly grounded in §1231, contrary to the provision's unambiguous text.

### iii.    *Plaintiffs' Claim Arising Under FARRA Is Meritless.*

The district court correctly refused to rewrite FARRA and its implementing regulations to hold that Plaintiffs are entitled to relief, as a matter of statutory and regulatory construction Add.52. CAT is not a

---

[5] Curiously, Plaintiffs both fault Defendants (at n. 10, 66) for inferring that the district court would interpret its judgment to require the specific procedures it imposed in the preliminary injunction and argue that the order actually requires *more* procedures (an evidentiary hearing) than the preliminary injunction, Pl.Br.49.

self-executing treaty, so Plaintiffs cannot claim any justiciable right arising from the treaty itself. Section 2242(d)'s use of the word "determination" in the section concerning *limits* on judicial review is insufficient to require the procedures the district court has in mind—let alone the evidentiary hearing Plaintiffs urge. FARRA's implementing regulations plainly refer to applications for protection submitted during removal proceedings (§§208.16(c), 208.17), and clarify that nothing in the section should be construed as preventing removal to a third country (§208.16(f)). *See also* 8 C.F.R. §§208.17(b)(2), 1208.17(b)(2) (requiring immigration judge to inform alien that he can be removed "at any time" to another country where the alien is not likely to be tortured). There would be no reason for the regulations to note that protection under CAT is country-specific, such that an alien can be removed to third country, if the government had to start from the beginning each time it sought to remove an alien to a third country. This Court should reject Plaintiffs' invitation to avoid addressing their constitutional claim by affirming on this ground.

## B. The District Court's Due Process Holding Was Error.

Plaintiffs fail in their defense of the district court's due process

analysis.

First, the district court erroneously defined the relevant liberty interest as an interest in *"being able to assert* fear-based claims against third-country removal under FARRA." Add.53 (emphasis added). Plaintiffs have no liberty interest in *applying* for CAT protection; at most, Plaintiffs have an interest in not being removed to a country where they will be tortured. But a "right to seek relief is analytically distinct from a right to the relief itself." *Arevalo v. Ashcroft,* 344 F.3d 1, 15 (2003). A right to apply for relief may require DHS to consider an application for relief. *Id.* Conversely, a right to the relief itself requires procedures that seek to ensure that the alien will not be denied relief to which they are otherwise entitled. *Carey v. Piphus,* 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect" against "the mistaken or unjustified deprivation of life, liberty, or property.").[6]

Plaintiffs seem to concede that any liberty interest is tied to the relief itself—not some separate right to seek it. *See, e.g.,* Pl.Br.69

---

[6] Plaintiffs also assume (at 60) without explanation that they have a liberty interest in not being removed to a country that will remove them to a country where they will be tortured (so-called "chain refoulment"). They identify no source for such an interest, whether in FARRA, its implementing regulations, or any court decision.

26

(arguing that the district court "recognized the life-or-death interest in protection from persecution and/or torture"). Therefore, so long as the government's procedures sufficiently ensure, under the *Mathews* factors, that class members will generally not be removed to a third country where they will be tortured, those procedures are sufficient. There is no distinct right to *apply* for CAT protection. As Plaintiffs recognize, the point of CAT is to prevent removal of an alien to a place where he will be tortured—not to allow aliens to delay removal while they apply for CAT after they have already received a full panoply of process in removal proceedings.

Second, *Mathews* requires courts to balance the liberty interest at stake, the risk of erroneous deprivation, and the "administrative burden and other societal costs" the requested procedures would require. *Mathews v. Eldridge*, 424 U.S. 319, 345-47 (1976). Defendants' procedures, embodied in the DHS Guidance and combined with the procedures all class members received in removal proceedings and motion to reopen process, are sufficient under these factors when the liberty interest (if any) is properly defined. The risk of erroneous deprivation is exceedingly low. Considering the high bar— both in terms

27

of the definition of torture and more-likely-than-not standard—Plaintiffs must meet to establish eligibility for CAT, it is highly unlikely that a class member will be removed to a country where it is more likely than not that he will be tortured.[7] Meanwhile, the cost of the additional procedures ordered by the district court—and particularly the evidentiary hearings Plaintiffs now urge—are high. *See Mathews,* 424 U.S. at 347 (noting the high administrative and financial cost of requiring evidentiary hearings). So is the cost of detaining (and thereby protecting the public from) the many dangerous criminal aliens DHS seeks to remove under the DHS Guidance. Finally, the public interest generally weighs in favor of executing removal orders and bringing an end to removal proceedings. *Nken v. Holder,* 556 U.S. 418, 436 (2009). Plaintiffs' arguments to the contrary (at 74-75), based primarily on "rare exceptions" instead of the "generality of cases," *Mathews,* 424 U.S. at 344,

---

[7] *See, e.g., Vargas Panchi v. Garland,* 125 F.4th 298, 310 (1st Cir. 2025) (Evidence of "widespread discrimination, poverty, and occasional violence" was not sufficient to establish a fear of persecution.); *Gomez-Abrego v. Garland,* 26 F.4th 39, 46 (1st Cir. 2022) (Evidence of "widespread violence and police corruption" not sufficient to prevail on CAT claim.); *Bazile v. Garland,* 76 F.4th 5, 16 (1st Cir. 2023) (Evidence that "danger and violence are endemic" is insufficient for a grant of CAT protection.).

are unpersuasive. Def.Br.79-80.

The Supreme Court's recent rulings regarding the Alien Enemies Act (AEA) are inapposite. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (per curiam); *A.A.R.P. v. Trump*, 605 U.S. 91, 95-96 (2025) (per curiam). The AEA and habeas corpus statute provide for judicial review of the Executive's AEA determinations, including "questions of interpretation and constitutionality" and "whether the person restrained is in fact an alien enemy[.]" Application, *Trump v. J.G.G.*, No. 24A931, at 18-20 (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163, 171 n.17 (1948)). The question in those cases was thus what notice was required under the statutory scheme. Here, by contrast, Plaintiffs ask this Court to create a new review process without a statute providing for review of CAT claims after removal proceedings have concluded. Plaintiffs fail to identify such a statutory entitlement or even to substantively address the *Mathews* factors. Instead, they assume, based on cases concerning different liberty interests and different statutes, that they are entitled to greater notice. Pl.Br.63-69. That is plainly insufficient.

Third, regardless, DHS's procedures are sufficient even if Plaintiffs have a cognizable liberty interest, and this is true whether DHS relies on

29

diplomatic assurances or notifies the alien of the country to which he will be removed. Plaintiffs argue that blanket diplomatic assurances are impermissible because CAT regulations refer to determinations about "*an* alien," in the singular. Pl.Br.60. But while decisions about CAT protection are ultimately about an individual alien, nothing requires revisiting every component of that determination on an individually tailored, case-specific basis—and even if something did, a credible blanket assurance suffices to establish, for each alien, that the country will not torture that alien. *See American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991); *see also, e.g., Heckler v. Campbell*, 461 U.S. 458, 467 (1983).

Plaintiffs argue (at 60) that diplomatic assurances "cannot guarantee protection against persecution or torture by *non-state* actors." Under *Mathews*, however, adequate procedures need not *guarantee* anything, but rather, must be generally sufficient on balance to protect the liberty interest. 424 U.S. at 344. Regardless, Plaintiffs' premise is wrong. CAT defines torture by a non-state actor to require government acquiescence—something for which blanket diplomatic assurances can account. 8 C.F.R. § 1208.18(a)(1) (requiring that torture be inflicted "by

or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity").

Plaintiffs try to distinguish *Munaf* v. *Geren*, 553 U.S. 674, 702 (2008), on the ground it involved individual assurances. Pl.Br.61-62. But nothing in *Munaf* turned on the scope of the assurances; it turned on the conclusion that federal courts are ill-equipped to "pass judgment on foreign justice systems" and consider for themselves the "sensitive foreign policy issues" bound up in this space. *Id.* That is the constitutional responsibility of the Executive. The federal courts thus do not have a freestanding power, at least absent specific statutory authorization, to "question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba* v. *Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009).

Here, nothing in the Due Process Clause or any statute gives the federal district courts the power to dictate to the Executive *how* it makes such a determination, any more than it gives them the power to second-guess *what* the Executive decides. If anything, the fact that courts are unable to second-guess the credibility of individual diplomatic assurances makes it even *less* likely that they can second-guess the

31

Executive Branch's assessment of the credibility of blanket assurances. It would be strange if an even more complex Executive Branch decision were more readily reviewable.

Plaintiffs rely on *Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 257 (3d Cir. 2008), to argue that due process requires that aliens be provided both notice and an opportunity to challenge the credibility and reliability of diplomatic assurances. Pl.Br.62. But *Khouzam* is inapposite because it arose in a completely different context. In that case, an alien was previously granted CAT protection from removal to his country of origin. DHS later sought to terminate that protection and remove the alien to his home country based on that country's diplomatic assurances. At most, *Khouzam* represents non-binding authority for the procedures governing *termination* of a prior grant of CAT protection based on diplomatic assurances. That is irrelevant here, because class members are not being removed to a country where the Government previously determined they were likely to be tortured. Moreover, the immigration laws are replete with examples where the Executive Branch's decisions are conclusive and unreviewable. Indeed, *Munaf* squarely holds that there are certain decisions in this context where the Executive provides the last word.

32

Plaintiffs fail to sufficiently explain why judicial review *must* be available here, but is permissibly absent for many other INA provisions.

Finally, Plaintiffs cannot rely on factual allegations in various news articles and exhibits they belatedly filed with their reply in support of their motion for summary judgment. Pl.Br.60-61. The government had no opportunity to respond to those filings, so the district court did "not rely on any of" them. Add.17; *see also* Appx.454-462 (Defendants' motion to strike). That evidence about the outcomes of certain third-country removals is irrelevant to this appeal—and if Plaintiffs sought to rely on it, they should have sought to develop and prove those facts below instead of moving for summary judgment before Defendants had even filed an answer. Appellate factfinding in this posture would be improper. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453, 463 (1st Cir. 1992); *Benham v. Lenox Sav. Bank,* 292 F.3d 46, 49 (1st Cir. 2002).[8]

### C. Classwide Relief Was Improper.

Plaintiffs' attempts to defend the overbroad class inadvertently strengthen Defendants' arguments.

---

[8] Plaintiffs' reliance on these improperly filed exhibits and other factual allegations in news sources throughout their brief is improper for the same reasons.

First, Plaintiffs argue that each member of the class challenges a "common policy or practice." Pl.Br.71. But it is not nearly enough to challenge a single policy if class members have different rights or bases for challenging the policy, such that some might lose even if other can prevail. Commonality requires a showing that the class members "have suffered the same injury" and press a "common contention" that will generate "common answers" across the entire class. *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011).

Plaintiffs defend the class's commonality with respect to their statutory claims, Pl.Br.70-71, but that is mystifying. The district court acknowledged, and Plaintiffs concede, that not every member of the class is even eligible to seek relief under §1231(b)(3). Add.52. Those ineligible class members are plainly distinct from the rest of the class. And with respect to CAT, even the district court correctly concluded that it would have to rewrite FARRA and its regulations in order to find a statutory entitlement to the relief Plaintiffs seek. Add.52; *see supra* at 24. Accordingly, Plaintiffs' statutory claims exacerbate rather than salvage the class's non-uniformity.

Plaintiffs' defense of the class with respect to their constitutional

claims fares no better. Plaintiffs reject the distinction between admitted and non-admitted aliens with the inapposite assertion that all class members are "'persons' … entitled to procedural due process rights." Pl.Br.68. That's a straw man. Defendants do not dispute that aliens have due process rights, but not all aliens have identical rights. As the Supreme Court has repeatedly held, aliens who have been admitted to the United States have different due process rights than "alien[s] seeking initial entry," whose due process rights are simply "[w]hatever the procedure[s] authorized by Congress." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020).[9] For that reason, class members are differently situated with respect to their due process claims. As *Zadvydas* recognized, "[a]liens who have not yet gained initial admission to this country ... present a very different question" for due-process purposes than "aliens who were admitted to the United States." 533 U.S. at 682.

Plaintiffs assert that the entry fiction does not apply "because this

---

[9] Plaintiffs' reference to *Clark v. Martinez* is inapposite in the due process context. *Clark* rejected the argument that the same statute could be interpreted differently for different individuals. But this has no bearing on what due process requires. A group of individuals may have the same liberty interest but be entitled to different procedures under due process because "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334.

class consists of individuals with final removal orders inside the United States, not applicants stopped at the border." Pl.Br.72. But the class undoubtedly includes many aliens who were never admitted to the United States and are thus subject to the entry fiction, such as (1) aliens who were stopped at the border, were never admitted, were placed in removal proceedings, and received a final removal order, and (2) individuals who received a final removal order, were previously removed from the country, returned, were stopped at the border, and had their removal order reinstated.[10]

Furthermore, Plaintiffs echo the district court's flawed reasoning that the entry fiction doesn't apply here because it pertains only to rights regarding *admission*, and Plaintiffs' claims relate to statutory withholding and CAT protection claims rather than admissibility. Pl.Br.67-68; Add.56-58. This is clearly wrong, for the reasons already explained. Def.Br.65-66.

Plaintiffs inadvertently admit another key commonality problem with the class: it includes individuals who do not have a fear of

---

[10] The class also includes aliens who were paroled into the United States and are generally treated as applicants for admission (*i.e.*, remaining on the threshold).

persecution or torture relating to a third country and will not seek withholding or CAT protection, meaning they face *no* risk of erroneous deprivation of those protections. Plaintiffs respond that the DHS Guidance prevents Defendants from "knowing whether class members have a basis for seeking protection from removal" and that "the denial of required procedures can be an injury," even if the "underlying claim" is meritless. Pl.Br.74-75. But that confuses class members whose CAT or withholding claims are *not meritorious* with class members who do not intend to make *any claim at all*, and it ignores that "[p]rocess is not an end to itself." *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983). Such class members have no liberty interest in further procedures—indeed, they have not been injured and lack standing to bring a claim in the first place. *TransUnion,* 594 U.S. at 431 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.").

Plaintiffs go on to concede that class members' interest in seeking withholding or CAT protection depends heavily on the country to which they are being removed. Pl.Br.74-75 ("If they are being removed to war-torn South Sudan, or if they are a gay man being removed to Uganda, they certainly have a basis to seek protection. But if instead they are

37

being removed to Canada, they may have no basis to seek protection."). This proves Defendants' point: the class includes individuals who are being removed to countries where they have no basis—and indeed, no intention—to seek protection.

### D. The District Court's Order Does Not Require DHS to Provide Evidentiary Hearings Prior to Removal to a Third Country.

Plaintiffs allege that the district court's order requires the government to provide an opportunity for an "evidentiary hearing" prior to removal to a third country. Pl.Br.49-50, 52, 59. The district court did no such thing. The words "evidentiary hearing" do not appear in the district court's order or judgment. Add.3-85. The court declared that class members have a right to "meaningful notice" and "meaningful opportunity to *raise* a country-specific claim against removal before removal to a third country" without more. Add.83, 85 (emphasis added). It can be inferred that, because the district court issued the same relief to all class members under the same theory as its preliminary injunction—Due Process Clause and CAT—the district court envisions sufficient "notice and opportunity" to resemble the preliminary injunction requirements which did not include an automatic right to an

evidentiary hearing. Appx.249 (requiring a reasonable fear interview, followed by moving to reopen proceedings if reasonable fear is determined, and a minimum of ten days for alien to file a motion to reopen with the immigration court if no reasonable fear is determined). Given the overlap between the district court's two decisions, there is no basis for Plaintiffs' contention that the district court's order requires an evidentiary hearing. Therefore, Plaintiffs would have needed to file a cross appeal. *Morley Const. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191 (1937) (describing the "inveterate and certain" rule that an appellee may not "in the absence of a cross-appeal … attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary"); *Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998) ("Because the appellees did not prosecute a cross-appeal, the argument that they seek to advance is not properly before us."). Since they have not, they have waived their ability to secure further relief from this Court.

## CONCLUSION

The Court should reverse.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney
General

SARAH E. WELCH
Counsel to the Assistant
Attorney General

MATTHEW P. SEAMON
Acting Assistant Director

/s/ *Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin
Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

40

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's extension thereof to 7,800 words because it contains 7,795 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and First Circuit Rule 32(a)(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Mary L. Larakers*
MARY L. LARAKERS

41