**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN DOE,<br><br>Petitioner,<br>v.<br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, *et. al*,<br><br>Respondents. | No. 1:26-cv-14088-ADB |

**RESPONDENTS' RESPONSE TO PETITIONER'S AMENDED PETITION**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner John Doe's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") and Amended Petition for Writ of Habeas Corpus ("Amended Petition"). ECF No. 1, 14.

## INTRODUCTION

Petitioner is subject to a final order of removal from the United States and U.S. Immigration and Customs Enforcement ("ICE") is detaining Petitioner for the purpose of effectuating such removal. As such, ICE contends that his detention is supported by the Immigration and Nationality Act ("INA") and does not violate the regulations or the Constitution.

## BACKGROUND

### A. Facts as Alleged in the Amended Petition.

Petitioner is not a citizen or national of the United States but is a native and citizen of Peru. ECF No. 14-8. On or about June 3, 2023, Petitioner illegally entered the United States at or near San Luis, Arizona, at which time he was not inspected by an immigration officer and did not

possess a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. *See id*. U.S. Customs and Border Protection issued Petitioner a Notice to Appear on the same day charging him as inadmissible under Section 1182(a)(7)(A)(i)(I). *See id*. Petitioner was released from custody at this time. *See id*. (demonstrating the Petitioner's address in Herndon, Virginia); *see also* ECF No. 14, ¶ 19.

Petitioner was subsequently placed in removal proceedings on July 7, 2023. *See* ECF No. 14-8 (bearing the "uploaded on" date and timestamp). On May 1, 2025, an Immigration Judge ("IJ") in the Annandale Immigration Court ordered Petitioner removed to Peru but withheld such removal under the Convention Against Torture ("CAT"). ECF No. 14-2. The order became administratively final on June 2, 2025, after the Department of Homeland Security's opportunity to appeal expired. *See id*. at 4. Petitioner did not have any encounters with ICE after the IJ's decision and prior to his most recent encounter. *See* ECF No. 14-1, ¶¶ 10-12. In light of the lack of encounters between ICE and Petitioner during this time, Petitioner was not issued a Form I-220B, Order of Supervision ("OSUP"). *See* ECF No. 14, ¶ 21. ICE detained Petitioner on or about July 22, 2026, and he remains detained at Plymouth County Correctional Facility, in Plymouth, Massachusetts. ECF No. 14-1, ¶ 13.

**B. <u>ICE's Declaration.</u>**

ICE's Acting Unit Chief of the Removal Management Division, Removal International Operations for Africa attests that the Central African Republic has entered into an arrangement with the Department of State to accept certain aliens under final orders of removal from the United States. Exhibit 1, ¶ 4; *see also* Exhibit 2, May 4, 2026, Deputy Secretary of State Letter. The Central African Republic has accepted the Petitioner for third-country removal as per [the agency's] prior elevation request pursuant to this arrangement. Exhibit 1, ¶ 5. The Central African

Republic provided diplomatic assurances that aliens removed from the United State pursuant to this arrangement will not be subjected to persecution or torture in the Central African Republic nor in any country they may be further transferred to. Exhibit 1, ¶ 6. On May 4, 2026, the Department of State determined that these diplomatic assurances were credible and reliable. *Id.*, *see also* Exhibit 2.

Petitioner's acceptance by the Central African Republic and placement on the manifest for this charter serves as the travel document in the Petitioner's removal. Exhibit 1, ¶ 7. ICE intends to remove the Petitioner to the Central African Republic absent any temporary restraining order or stay on or about September 24, 2026. *Id.*, ¶ 8. ICE will follow the March 30th, 2025 memorandum of former DHS Secretary Kristi Noem, *Guidance Regarding Third Country Removals*[1], to effectuate the Petitioner's removal. *Id.*, ¶ 9.

### C. **Procedural History.**[2]

Petitioner filed A Petition for Writ of Habeas Corpus on September 4, 2026. ECF No. 1. On September 8, 2026, this Court entered an Order concerning Service of Petition and Stay of Transfer or Removal requiring, in part, that Respondents provide 48 hours' notice of Petitioner's movement out of the District and that he shall not be deported, removed, or otherwise transferred outside of the United States until further order from the Court. *See* ECF No. 5 at 4. On September

---

[1] As discussed more *infra*, this declaration was executed prior to the First Circuit's decision in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212, 2026 WL 2797801, at *1 (1st Cir. Sept. 18, 2026).

[2] Respondents note that various motions to proceed under pseudonym and for appearance by student attorneys were filed by Petitioner and subsequently granted by this Court. *See* ECF No. 4, 8, 9-12.

16, 2026, Petitioner filed the Amended Petition challenging his detention under the statute, regulations, and the Constitution. *See* ECF No. 14.

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948).

## ARGUMENT

### A. ICE is authorized to detain Petitioner.

#### 1. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231.

ICE's authority to detain Petitioner stems from Section 1231. 8 U.S.C. § 1231(a)(1)(A) directs ICE to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period." The removal period begins on the "date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final order alien.

If the 90-day removal period expires, ICE can either release an alien pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section

1231(a)(6). Per Section 1231(a)(6), ICE may detain beyond the removal period for three categories of aliens:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

*See Johnson v. Guzman Chavez*, 594 U.S. 523, 528-29 (2021).

Petitioner falls within the scope of Section 1231(a)(6) because he is inadmissible under Section 1182(a)(7)(A)(i)(I) due to his entry without inspection and lack of possession of a valid entry document. *See Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 11 (D. Mass. 2024) (Agreeing that petitioner's "detention is authorized by § 1231(a)(6)" as such "finding comports with the text of the statute as well as with recent Supreme Court precedent."); *Thai v. Hyde,* No. CV 25-11499-NMG, 2025 WL 1655489, at *2 n.1 (D. Mass. June 11, 2025) (Explaining that Section 1231(a)(6) allows for detention and removal of an alien who is inadmissible under this provision even when the removal period "has long since expired."); *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 (D. Mass. 2017) (Finding ICE "has statutory authority" under Section 1231(a)(6) to arrest and detain an inadmissible alien beyond the removal period.)

Petitioner argues that he cannot be detained under Section 1231(a)(6) because he was not detained during the 90-day removal period whereafter such detention was continued. *See* ECF No. 14 at 6-9. Petitioner relies on *Rodriguez v. Moniz*, to support his argument. *See id.* (citing to No. CV 26-13241-BEM, 2026 WL 2123649, at *1 (D. Mass. July 23, 2026) (and collecting cases)). Respondents acknowledge, but respectfully disagree with, those decisions. Other Courts around the country have also rejected the reading of the statute that Petitioner asks this Court to adopt. For

example, in *Lin v. Francis*, the District Court disagreed with the alien and reasoned that because there was a valid final order of removal, ICE "had statutory authority [under 8 U.S.C. § 1231(a)(6)] to detain Lin without notice when it encountered Lin" 12 years after his removal order. 25-cv-100001 (PAE), 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025) at *3.; *see also Romero v. Noem*, No. 26-CV-01844 (MMG), 2026 WL 775847, at *5 (S.D.N.Y. March 19, 2026) (citing to *Lin* and noting that the alien was "inaccessible to ICE" when he became subject to removal.); *Guevara v. LaRose*, 2026 WL 412479, *2 (S.D. Cal. Feb. 13, 2026) ("Once DHS had a final order of removal ordering that Petitioner be removed to his native country of El Salvador, it was no longer required to allow him to be released on his own recognizance. At this point, it was not a violation of due process, either substantive or procedural, for Respondents to detain Petitioner without notice so that the removal order could be carried out."). Petitioner admits that he was not detained when the IJ ordered him removed to Peru but withheld such removal under the CAT and that he had no further interactions with ICE until his most recent encounter. *See* ECF No. 14-1, ¶¶ 10-12. As Petitioner was likewise "inaccessible" to ICE when the removal order became administratively final, Section 1231 does not bar ICE from detaining him for post-removal-order purposes in the first instance after the removal period expires.

"The government's failure to detain the [alien] during the removal period or immediately thereafter does not eliminate the [g]overnment's ability to detain [the alien] [without notice] for the purpose of enforcing that removal order at this time [i.e., years later]". *Piao v. Lyons*, No. 25-cv-1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025). Like *Piao*, Petitioner was ordered removed after a full hearing on the merits of his application for relief and was not detained during the removal period. *See id*. The *Piao* Court noted that the Supreme Court has been silent on *when* ICE's power to detain aliens ordered removed must be exercised, and likewise, this Court should

not read more into the statute than Congress intended for. *See id*,; *see also Lin v. United States*, No. CIV.A. 5:07-CV-26, 2007 WL 951618, at *3 (S.D. Tex. Mar. 28, 2007) (Explaining that "the government now seeks to enforce removal orders issued some time ago, and there is nothing in § 1231 to indicate that the Attorney General cannot enforce those removal orders "late.").

Put another way, the plain text of Section 1231 does not require prior "removal-period" detention as a pre-requisite to detaining an alien subject to a final order of removal. The statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6) (Emphasis added.) The statute's operative clause — "may be detained beyond the removal period" – does not expressly condition detention authority on the alien having been physically detained during the preceding 90-day removal period. The cases cited by Petitioner import a prerequisite that Congress did not and a premise which has been rejected by other courts. Under standard canons of statutory construction, this Court should not add words to a statute that Congress chose to omit. *See generally, Lopez-Soto v. Hawayek*, 175 F.3d 170, 172 (1st Cir. 1999) ("We start our search for the meaning of the words that Congress wrote with an appraisal of the statutory text and structure, mindful that if the plain language of the statute points unerringly in a single direction, an inquiring court ordinarily should look no further."). The word "may" is permissive and grants discretionary authority; it does not restrict the class of aliens to whom the authority applies. Ultimately, because Petitioner was not detained until recently, and did not seek judicial review, the removal period commenced on the date that the removal order became administratively final. The removal period has since

expired and, therefore, Petitioner's current detention was squarely within § 1231(a)(6)'s post-removal-period detention authority, and well within the statute's permissive phraseology.

**2. Petitioner has not shown ICE Violated the Applicable Regulations.**

Petitioner's claims of violations of the regulations at 8 C.F.R. §§ 241.4 and 241.13 are also not cognizable. As an initial matter, the plain language of 8 C.F.R. §§ 241.4 and 241.13 demonstrate that these regulations do not apply to aliens who are detained for post-order detention for the first time after the removal period has expired. *See* 8 C.F.R. § 241.4 (a) ( ICE "may continue an alien in custody beyond the removal period . . . pursuant to the procedures described in this section."); *see also* 8 C.F.R. § 241.13(a) ("This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.").

To support his theory that aliens who were not detained during the removal period, and therefore, not released on an OSUP are entitled to the regulatory procedures at 8 C.F.R. §§ 241.4(l) and 241.13(i)(2) Petitioner cites to *Rodriguez v. Moniz.* 26-13241-BEM, 2026 WL 2123649, at *2 (D. Mass. July 23, 2026). However, that court's holding that detention violated 8 C.F.R. §§ 241.4(l)(2) and 241.13(i)(2) is incorrect because those regulations, by their own terms, do not apply to first-time detainees who were never previously detained during the removal period, and released on an OSUP. Where the alien was not released on supervision following the issuance of his final removal order, and thus the regulations regarding the revocation of supervision are inapplicable. *Gualpa-Mizhquiri v. Francis*, No. 26-CV-00156 (JAV), 2026 WL 396081 (S.D.N.Y. Feb. 12, 2026) (analogizing to *Lin*, 2025 WL 3751855, at *4). Section 241.4(l) addresses

"Revocation of release" and applies to "any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release." The regulation's framework presupposes that the alien was previously detained, underwent custody review under 8 C.F.R. § 241.4, was released under an OSUP, and is now being returned to custody. The most basic reading of the regulation is that it is a revocation-of-release provision, not an initial-detention provision.

Likewise, Section 241.13(i)(2) addresses "Revocation for removal" and provides that ICE may revoke an alien's release under 8 C.F.R. § 241.13 and return the alien to custody if, on account of changed circumstances, the ICE determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Section 241.13's scope is explicitly limited to "those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at Section 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R § 241.4(b)(4). Thus, ICE did not violate 8 C.F.R. § 241.4(l) or its parallel regulation at 8 C.F.R. § 241.13(i) when it arrested and detained Petitioner because those regulations simply did not apply to him.

Accordingly, Petitioner has not shown that ICE's detention of him violates the regulations.

**3. Petitioner's detention does not offend the Constitution.**

Petitioner claims that his detention violates the Fifth Amendment's Due Process Clause because his detention serves a legitimate government purpose and he has not shown that there is no good reason to believe that removal will not occur in the reasonably foreseeable future.

As explained by the Supreme Court, when evaluating "reasonableness," the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, ICE contends it does. Stated by another session of this Court, "detention under § 1231(a)(6) is presumed to be constitutionally valid for a period of up to six months." *Hernandez Martinez*, 2025 WL 3719841, at *2 (Because petitioner "has been detained for less than two weeks … [s]uch relatively brief detention does not violate his right to due process under the United States Constitution."). *See also Thai,* 788 F. Supp. at 61 ("[s]ome period of detention prior to deportation is constitutionally valid."); *D'Ambrosio,* 793 F. Supp. 3d at 278 n.8 (Explaining that "petitioner has been detained for less than six months, rendering his detention under § 1231 presumptively valid at this time."); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335 ("as petition has been detained for approximately two months as of this date, the length of his detention does not offend due process.").

To set forth a Constitutional violation for section 1231 detention, an individual must satisfy the *Zadvydas* test. 533 U.S. at 701. In *Zadvydas*, the Court held that ***post-final-removal-order*** detention for six months is "presumptively reasonable." *Id.* at 701 (emphasis added). Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. Only after the alien makes this initial showing is the government required to "respond with evidence sufficient to rebut that showing." *Id.*

With Petitioner detained under Section 1231 approximately two months his claim challenging the constitutionality of his post-final order detention is premature and fails. *See Thai,* 788 F. Supp. at 61 (Explaining that "to the extent petitioner suggests that the duration of his

detention violates his due process rights, such an argument is unavailing" as his detention for 17 days was "far short of the six-month period which is presumptively constitutional under *Zadvdyas*."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Lamotte v. Holder*, No. CIV.A. 13- 10582-RGS, 2013 WL 1629135, at *2 (D. Mass. Apr. 9, 2013) ("Under this formulation, an alien being held pursuant to Section 1231(a)(6) cannot assert a *Zadvydas* due process claim if he has been detained for less than six-months.").

As the Supreme Court explained in *Zadvydas*, judicial review of habeas petitions involving detention of individuals with final orders of removal "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive [ICE] efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Stated further, the Court explained that "principles of judicial review in this area recognize primary Executive Branch responsibility" and "counsel judges to give expert agencies decision-making leeway in matters that invoke their expertise." *Id.* Per the *Zadvydas* Court, such principles "require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue". *Id.*

As such, this Court should "grant the Government appropriate leeway when its judgments rest upon foreign policy expertise" and provide additional time to ICE to move forward with effectuating Petitioner's final order of removal with deportation to the Central African Republic. *See* Exhibits 1-2. Respondents acknowledge the First Circuit's decision on Friday September 18, 2026, and after the execution of ICE's declaration, affirming in part the District Court's decision. *D.V.D. v. U.S. Dep't of Homeland Sec*, 2026 WL 1102937 (1st Cir. Feb. 20, 2026), and *aff'd in*

*part*, No. 26-1212, 2026 WL 2797801 (1st Cir. Sept. 18, 2026).[3] In any event, Petitioner can file a new action if he remains detained once he reaches six-months of detention as contemplated by *Zadvydas* and in the event his prospective removal to the Central African Republic runs afoul of the *D.V.D.* litigation.

Petitioner remains able to challenge his detention and seek release through the regulatory provisions that apply for individuals detained with final orders of removal if ICE is unable to effectuate removal in the near future. Courts routinely conclude that such regulations are permissible to protect individual's Constitutional rights while detained. *See e.g., Thai,* 788 F. Supp. 3d at 61 ("The constitutional validity of § 241.4 has not been disputed and, in fact, other courts have routinely denied due process challenges where ICE has met its regulatory obligations."); *Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (Collecting cases supporting conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process.").

[3] Notably, the First Circuit has not issued mandate in *D.V.D*. and the stay issued by the First Circuit of Judge Murphy's decision remains in effect. As such, it is ICE's position that until mandate issues, the Third Country Policy may be relied upon and the agency may remove Petitioner to the Central African Republic, absent the prohibition on removal in this Court's service order.

Petitioner's detention is fully permissible and does not violate the Fifth Amendment's Due Process Clause and therefore his claim for release must be rejected.

## CONCLUSION

For the above reasons, the Petition should be denied.

Dated: September 22, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Erica McMahon*
Special Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3271
Email: Erica.McMahon@usdoj.gov

## CERTIFICATE OF SERVICE

I, Erica McMahon, Special Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated: September 22, 2026

By: */s/ Erica McMahon*
Special Assistant United States Attorney